**EXHIBIT 5**

**EPSTEIN
BECKER
GREEN**

LAURI F. RASNICK
TEL: 212.351.4854
FAX: 212.878.8754
LRASNICK@EBGLAW.COM

April 4, 2016



**VIA FACSIMILE AND FEDERAL EXPRESS**
Mr. Kevin J. Berry
District Director
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

      Re: Adriana Agostini v. EmblemHealth, Inc.,
           EEOC Charge No. 520-2015-02635

Dear Mr. Berry:

    We submit this position statement on behalf of EmblemHealth, Inc. ("EmblemHealth" or the "Company") in connection with the above-referenced Charge (the "Charge") filed by Adriana Agostini ("Charging Party").[1] In her Charge, Ms. Agostini, a former EmblemHealth employee, alleges that the Company discriminated against her because of her alleged disability (rheumatoid arthritis). Specifically, Ms. Agostini alleges that the Company failed to accommodate her request for a reasonable accommodation. She further complains that she was retaliated against for complaining about one of her managers.

    Ms. Agostini's claims are completely without merit. Ms. Agostini was never denied an accommodation. When she informed the Company that copying for periods of time while

---

[1] This Position Statement is written to assist the U.S. Equal Employment Opportunity Commission ("EEOC" or the "Commission") in its investigation of the Charge. Inclusion of information in this Position Statement does not constitute a waiver of any objections the Company may have to this or future discovery or information requests or to the introduction of evidence in this proceeding or any other proceeding. Further, this Position Statement reflects the Company's knowledge and understanding of the facts at this time. The Company expressly reserves the right to supplement or modify the information contained herein, as it may become aware of additional facts and information. In addition, the information provided herein, and all further submissions, if any, are strictly confidential and shall be used only for the determination of the Complaint. Any information and documentation provided are not to be communicated to anyone without the prior written approval of the undersigned counsel for the Company. Further, the fact that the Company has asserted certain defenses herein shall not constitute a waiver of any or all of its other defenses.

FIRM:35553179

P000203

Mr. Kevin J. Berry
April 4, 2016
Page 2

standing caused her pain, the Company agreed to purchase a chair to place near the copier and in the meantime she was not required to do work that was painful. Ms. Agostini's termination was not retaliatory or discriminatory. She was not selected for termination or layoff by the Company. Her termination was the result of being "bumped" out of her position by a fellow union worker who had been selected for a layoff, consistent with the applicable collective bargaining agreement requirements. Accordingly, and as set forth fully below, the Charge is completely without merit and should be dismissed in its entirety.

## RELEVANT BACKGROUND FACTS

### A. EmblemHealth

EmblemHealth is a health insurance company that provides affordable health coverage to its members in the New York metropolitan area. It comprises several affiliated companies, including HIP Insurance Company of New York, ConnectiCare of New York, Inc., and EmblemHealth Services Company LLC. In 2006, HIP Health Plan of New York ("HIP") and Group Health Incorporated ("GHI") affiliated as EmblemHealth companies. They have since been organizationally integrated into one company – EmblemHealth.

EmblemHealth is fully committed to providing equal employment opportunities for all employees and applicants. It also has a zero tolerance policy for discrimination and retaliation in the workplace. (A copy of the policy is attached as Exhibit A, *see* p. 3). This policy is reiterated in the collective bargaining agreement ("CBA") between EmblemHealth and the Office and Professional Employees International Union, Local 153 (the "Union"). The CBA provides that "EmblemHealth's management does not tolerate any form of discrimination on any basis listed above [including disability], or any other discriminatory conduct on the part of any of its employees. EmblemHealth's management wants and insists upon a workplace free from discrimination in every aspect and we will continue to take the strongest measures to achieve that objective." (Excerpts of the CBA are attached as Exhibit B, *see* Article XX.)

EmblemHealth is also fully committed to accommodating its employees with disabilities. The Company specifically advises its employees of its policy of providing equal opportunities to individuals with disabilities, and its goal of providing reasonable accommodations for all such employees. (A copy of the Company's Reasonable Accommodation Policy is attached as Exhibit C.) Further, to ensure that reasonable accommodation requests are appropriately considered, the Company has a reasonable accommodation committee which meets regularly and reviews reasonable accommodation requests and may engage in the interactive process as needed.

### B. Ms. Agostini's Employment

Ms. Agostini began her career as a Housekeeper at HIP in October 1998. After that time, she has held several clerical positions (related to the processing of mail) and a secretarial position in various departments at HIP. Prior to HIP's integration with GHI, Ms. Agostini's title

Mr. Kevin J. Berry
April 4, 2016
Page 3

was Senior Mailroom Specialist. In this job, she was responsible for opening and sorting incoming mail.

In September 2008, Ms. Agostini's title (which at that time had been Senior Mailroom Specialist) became Imaging Clerk, and she began working in the Utilization Document Control ("UDC") Department. The role of the 30-35 clerical employees in the UDC Department is to open and sort incoming mail, in order to prepare for scanning health care claims. Ms. Agostini's role as an Imaging Clerk was to sort the mail and prepare claims to be scanned. When GHI and HIP integrated into EmblemHealth, Ms. Agostini remained in the Imaging Clerk position but became an EmblemHealth employee as of November 19, 2009.

Ms. Agostini and the other clerical employees in the UDC Department directly reported to several supervisors, including Maria Vera, who shared in the distribution and assignment of work in the UDC Department and who, in turn, reported a manager. Managers report to the director of the UDC Department. In 2014, the time period relevant to this Charge, the Manager was Jane Magnan and the Director of the UDC Department was Alan Weishaupt.

At the time her employment with EmblemHealth ended on September 12, 2014, Ms. Agostini held the Imaging Clerk position and was Labor Grade D under the CBA.

C. **Ms. Agostini's July 29, 2014 Complaint about Leg Pain**

On July 29, 2014, Ms. Agostini was assigned to a special project that entailed the opening, re-sorting and preparing for scanning of health care claims that were mistakenly sent to incorrect business lines (referred to as "misdirects"). Special projects such as "misdirects" were regularly routed through the UDC Department and distributed among the clerical employees, including Ms. Agostini. Ms. Agostini often took on such projects as she regularly volunteered and even sought them out from her supervisors. Handling "misdirects" involves copying transfer cover sheets to affix to each claim, and as such may require extended periods of time at the copier. Ms. Agostini had not informed her supervisors of any limitation on her ability to stand or make copies and as noted, she regularly sought out special assignments. Nor would her supervisors have been privy to her FMLA request. At the time, FMLA leave was handled by Hartford, a third party administrator, which processed documentation and determinations related to FMLA.

On July 29, 2014, after completing all, or substantially all, of the project, Ms. Agostini went to go see Mr. Weishaupt. Mr. Weishaupt was not aware of Ms. Agostini's medical condition, was not aware of any limitation or impediment to her performing certain functions and had nothing to do with giving her the assignment earlier that day. When she went to see him, Ms. Agostini was distraught and told him that she was in pain from standing and making copies and that these issues were impeding her ability to work. Mr. Weishaupt indicated that if Ms. Agostini believed that her physical limitations would prevent her from being able to work, she should go to Human Resources to discuss disability or other options. Ms. Agostini did not request any accommodation at that time and Mr. Weishaupt categorically denies saying that any

Mr. Kevin J. Berry
April 4, 2016
Page 4

accommodation would be "up to him," which would have been utterly untrue in any case. Mr. Weishaupt would not have had the authority to refuse any reasonable accommodation request.

Immediately thereafter, Ms. Agostini went to EmblemHealth's Human Resources Department where she met with Lisa Butler, then Senior Human Resources Specialist. Ms. Agostini, who was visibly upset, told Ms. Butler that after standing at the copier for an extended period of time making copies, she had pain in her leg which caused her to have an anxiety attack. Ms. Agostini asked for time and privacy to call her therapist and Ms. Butler agreed. When Ms. Butler returned, Ms. Agostini was on the phone with her mother.

After Ms. Agostini got off the phone, Ms. Butler asked her if the work she had been doing at the time was part of her normal job duties. Ms. Agostini responded that it was, but that she was having difficulty with the project that day because her legs were bothering her. While Ms. Agostini did not ask for any particular accommodation, Ms. Butler suggested that Ms. Agostini consider seeking a reasonable accommodation and provided Ms. Agostini with a reasonable accommodation request form, on which Ms. Agostini could indicate the purpose of the request and the type of accommodation she needed to enable her to perform her job. Ms. Agostini was given the rest of the day off.

D. **Ms. Agostini's Request for Accommodation**

On August 1, 2014, Ms. Agostini returned to work and submitted to Ms. Butler an accommodation request form, dated July 30, 2014. Ms. Butler immediately forwarded the form to Jim Sable, Benefits and Leave Specialist, and a member of the reasonable accommodation committee, for consideration.

The submitted request form, which was completed by a psychotherapist, referenced "inflammation in arms, hands, shoulders and feet," and sought "the right to work in an environment that is calm and respectful...[and] without being put under severe pressure if she is experiencing medical flare ups." (A copy of the July 30, 2014 request form is attached as Exhibit D). The Company found it impossible to determine from the form what accommodation Ms. Agostini was requesting, let alone how the purported request would address the physical pain in her legs that she had complained about days earlier. Accordingly, Ms. Agostini was asked to submit a more specific request. In the meantime, however, the Company began to consider possible accommodations including obtaining a tall drafting chair to place by the copier. The process of selecting and ordering a tall drafting chair to place by each copier in the UDC Department began.

In addition, while the issue of an appropriate reasonable accommodation was being considered, Ms. Agostini was not being asked to handle copying projects that required extended periods of time standing.

On August 11, 2014, Ms. Agostini submitted an updated accommodation request form stating that Ms. Agostini had "generalized lower extremity pain secondary to rheumatoid arthritis" and should not stand for longer than 15-30 minutes at a time. The form also requested

Mr. Kevin J. Berry
April 4, 2016
Page 5

that a chair be provided. (A copy of Ms. Agostini's August 11, 2014 request form is attached as Exhibit E). As noted, the process of ordering chairs was already underway.[2]

### E. Ms. Agostini's Termination as the Result of "Bumping" Pursuant to a Layoff

On August 13, 2014, EmblemHealth announced a company-wide layoff. This layoff affected a number of EmblemHealth departments and was necessitated by a reduced work volume across various sectors of EmblemHealth. As part of the layoff, 45 positions were selected for termination. Ms. Agostini was not among the employees whose positions were selected for the layoff. The layoff was scheduled to take effect September 12, 2014. (A copy of the layoff announcement is attached as Exhibit F).

Pursuant to the layoff process set forth in the governing CBA, employees with seniority who would be otherwise terminated as a result of the layoff had the right to "bump" other employees, thereby displacing them from their positions. (*See* Exhibit B, Article XI). At the time of the layoff, Ms. Agostini had only been in the title of Imaging Clerk as a "sorter" for approximately six years and had seniority over only one other person in her title. In addition, the Imaging Clerk "sorter" role was a frequent bumping ground because the position entailed very little training. Unfortunately, even though neither EmblemHealth nor the UDC Department selected Ms. Agostini's position for the layoff, a fellow Union member who had bumping rights to Ms. Agostini's position chose to exercise those rights and bumped her. The Union informed the Company that Ms. Agostini would be bumped by a more senior employee, and a meeting was held to confirm that the bump was viable and in keeping with the terms of the CBA. Neither Ms. Agostini's supervisors and managers, nor Mr. Weishaupt, were involved in any way in the bumping process.

On September 11, 2014, the Company met with each individual whose position had been selected for layoff or who had been bumped pursuant to the CBA. Ms. Agostini met with Daniel Byrne, Vice President of Labor Relations, Diane McGuire, Lead Labor Relations Specialist, and Erica Kreiswirth, Lead Labor Relations Specialist, in the presence of Anthony Walters, Chief Shop Steward and Grace Admas-Cunningham, Assistant Chief Shop Steward for the Union.[3] Mr. Byrne advised Ms. Agostini of the upcoming layoff, and informed her that she had been bumped from her position and therefore her employment was being terminated. Ms. McGuire provided Ms. Agostini with a "bump" letter, dated September 11, 2014. (A copy of the "bump" letter is attached as Exhibit G).

Ms. Agostini also had the right to bump into another position pursuant to the CBA. As the CBA provides, she had the right to bump into the position she previously held or any position that she had the qualifications for and could satisfactorily perform. (*See* Exhibit B, Article XI).

---

[2] Given that just days later Ms. Agostini was bumped out of her position, the need for a chair at the copiers became moot.

[3] Ms. Agostini did not raise her medical condition during the meeting, nor was there any discussion of the accommodation being provided to her.

Mr. Kevin J. Berry
April 4, 2016
Page 6

Ms. Agostini was told – contrary to her assertions – that based on this CBA provision, Housekeeper was a position she could have bumped into if she chose to do so. She did not choose to do so and was therefore laid off. Ms. Agostini's employment with EmblemHealth was terminated effective September 12, 2014.

Pursuant to the CBA, Ms. Agostini, through the Union, could have filed a grievance asserting that the termination was improper, and if unsuccessful, the Union could have pursued the case further on behalf of Ms. Agostini by requesting binding arbitration on the issue of whether the Company had "just cause" for the termination. (*See* Exhibit B, Article XIII.) No grievance was filed. The Union could have also pursued arbitration if it believed that the Company had violated the CBA provision prohibiting disability discrimination. The CBA designates three arbitrators to act as impartial chairmen and provides that arbitrations shall proceed under the American Arbitration Association's Expedited Labor Arbitration procedures. The Union did not pursue arbitration.

## MS. AGOSTINI CANNOT SUSTAIN HER ALLEGATIONS OF DISCRIMINATION OR RETALIATION

**A.   Ms. Agostini Was Not Denied a Reasonable Accommodation or Otherwise Discriminated Against Because of Her Alleged Disability**

In her Charge, Ms. Agostini claims that the Company discriminated against her based on her disability, rheumatoid arthritis. Specifically, Ms. Agostini claims that she was assigned to stand for long periods of time, which caused her pain, and that Mr. Weishaupt, the UDC Director, refused to provide Ms. Agostini with a reasonable accommodation. None of these allegations are true.

As an initial matter, Ms. Agostini complains that because of her rheumatoid arthritis she was in pain due to a work assignment requiring her to stand and make copies. She asserts that EmblemHealth was somehow on notice that such an assignment would cause her pain due to her request for FMLA leave in January 2014. This is not the case – legally or factually. Ms. Agostini's FMLA request was submitted to a third party administrator, not a person at EmblemHealth who was responsible for overseeing her day to day job duties. Ms. Agostini's supervisors would not have been privy to the details of her FMLA request or medical condition. As such, the mere fact that Ms. Agostini requested FMLA leave is completely irrelevant – it neither provided information as to her medical condition nor to her need for any particular accommodation (other than, of course, leave, which she was provided).

It was not until July 29, 2014 that Ms. Agostini, for the first time, advised EmblemHealth that she may need a reasonable accommodation for copying due to her rheumatoid arthritis. As discussed above, Ms. Agostini regularly volunteered for such projects and they were given to her because she seemed to desire the work and could perform it well. There were no ill intentions involved in the assignments. No one wanted to cause her pain and when she raised the issue it was immediately addressed. While EmblemHealth thereafter tried to sort out exactly what type

of reasonable accommodation was appropriate, in the meantime and from July 29, 2014 forward, Ms. Agostini was not expected to perform work standing for more than 15 minutes. If she complained of pain, she could take a break or get another assigned duty. In addition, EmblemHealth agreed to provide the exact accommodation Ms. Agostini ultimately requested (*See* Exhibit E). The Company was in the process of ordering a drafting chair to place by the copier when Ms. Agostini was bumped. Thus, the only reason Ms. Agostini was not given the chair to use during copying was because she was bumped out of her job before the chair was ordered and arrived for use.

### B. Ms. Agostini Did Not Engage in Protected Activity

While Ms. Agostini claims in her Charge that she filed a complaint with the Company's Human Resources Department against Mr. Weishaupt for "harassment and disability discrimination," this simply is not true. At no time did Ms. Agostini make any complaint that she was being discriminated against based on a disability. On July 29, 2014 what Ms. Agostini was complaining about was that after she spent hours on a special project of copying she had leg pain which then resulted in her feeling anxiety. Ms. Agostini complained about this to Mr. Weishaupt and then again to Ms. Butler in Human Resources. Complaining about a job assignment which caused her pain is simply not protected activity.[4] In addition, Ms. Agostini did not complain of discrimination in any of her subsequent communications with Human Resources regarding her accommodation request.

During the September 11, 2014 meeting, Ms. Agostini expressed disagreement with the fact that she was being bumped. Ms. Agostini did not claim that the bump was discriminatory, nor did she complain of disability discrimination at any time during this meeting. Indeed, Ms. Agostini's medical condition and accommodation request were not mentioned at all during the September 11, 2014 meeting.

Because Ms. Agostini did not complain of disability discrimination, she did not engage in any protected activity. Accordingly, Ms. Agostini cannot sustain a claim of retaliation.

### C. Ms. Agostini Was Terminated Pursuant to the Bumping Process; It had Nothing to Do with Her Alleged Disability or Retaliation

The termination of Ms. Agostini's employment termination had nothing to do with her alleged disability or request for accommodation. Rather, her termination was the consequence of a fellow Union member bumping into her position through a fairly significant layoff that affected various sectors of EmblemHealth. This was not the Company's decision. Indeed, Ms. Agostini was one of 46 individuals impacted by the layoff.

---

[4] In fact, in her conversation with Ms. Butler, Ms. Agostini acknowledged that the assignment was part of her normal job duties. To the extent Ms. Agostini now claims the assignment of "misdirects" projects was discriminatory, such claim is belied by the fact that Ms. Agostini regularly volunteered for and sought out such projects from her supervisors.

Contrary to Ms. Agostini's assertions in the Charge, the bumping process followed the CBA procedures. While Ms. Agostini alleges that there were other Imaging Clerks with fewer years of seniority who were not bumped, this contention plainly misunderstands the various positions at EmblemHealth with the general title of Imaging Clerk. The "Imaging Clerks" were ranked by seniority *by their job functions* – sorters, scanners and transfer clerks. Ms. Agostini was a sorter and she was therefore ranked with the other Imaging Clerk sorters, of whom she was the second least senior. Thus, while it is possible that there were other people with the general title of Imaging Clerk who had less seniority than Ms. Agostini and were not bumped, none of those individuals performed the same sorting work as Ms. Agostini. With respect to those Imaging Clerks who performed sorting functions, Ms. Agostini was not the only person impacted by the layoff. <u>The one other individual over whom Ms. Agostini had seniority in the Department was bumped as well</u>.[5] The individuals who "bumped" into these Imaging Clerk sorter positions had greater seniority than Ms. Agostini.

Ms. Agostini also identifies multiple positions that she claims were in the same or lower classification and that Ms. Agostini should have also been able to bump into, but her assertions are mistaken. Several of these titles were not occupied by anyone at the time of the layoff and were in fact obsolete under the CBA. The obsolete Labor Grade D titles included Junior Clerk – Accounting; Junior Clerk – Group Insurance; Junior Clerk – Membership; Receptionist – Clerk; and Input Operator. Mail Clerk, a Grade C position, was also obsolete and had no incumbent to bump. With respect to the other titles Ms. Agostini identifies in the Charge, she could not have bumped into them because Ms. Agostini was not qualified to perform and did not previously hold any of those titles as would have been required by the CBA. (*See* Exhibit B, Article XI). The only other position which Ms. Agostini could have bumped into – as she was told by EmblemHealth – was the Grade C Housekeeper role in the Housekeeping Department. Ms. Agostini chose not to do so and was therefore laid off.

It should be noted that the Union was consulted and was in full agreement with the established seniority lists and the procedures pursuant to which Ms. Agostini was bumped. In addition, Ms. Agostini did not file any grievance regarding the bump or the option she had been provided. As the process Ms. Agostini was afforded complied with established Union procedures, was approved by the Union, and was wholly unrelated to any disability or requests for accommodations that Ms. Agostini may have made, it cannot serve as the basis of any claim.

## CONCLUSION

As described in detail above, the evidence is unequivocal that EmblemHealth provided Ms. Agostini with the appropriate level of interactive dialogue that is required under the law, and acted promptly to afford an accommodation as and when requested. The unrelated company-wide layoff that impacted many employees does not change the fact that EmblemHealth addressed Ms. Agostini's request for an accommodation once she made one. Moreover, Ms. Agostini could have remained employed had she decided to bump as she was permitted pursuant to the established procedures under the CBA. It was her choice not to do so. EmblemHealth was

---

[5] Further, the Imaging Clerk "sorter" with the third least amount of seniority was also initially bumped.

Mr. Kevin J. Berry
April 4, 2016
Page 9

not required, nor was it permitted, to create a new position for Ms. Agostini out of whole-cloth because she was not interested in the position that was available to her pursuant to the bumping process. There simply is no evidence that EmblemHealth has ever acted for any unlawful purpose, or with any retaliatory animus towards Ms. Agostini. Accordingly, Ms. Agostini's Charge should be dismissed for no probable cause.

Respectfully submitted,

Lauri F. Rasnick

Attachments