**EXHIBIT 18**

55 Water Street, New York, New York 12449 | www.emblemhealth.com



# AGREEMENT

Agreement Between
EmblemHealth Services LLC Inc.,
and Office and Professional
Employees International Union,
Local 153, AFL-CIO

January 1, 2012 – December 31, 2014



Byrne
Exhibit 5
8/12/2017 AB

Office and Clerical Bargaining Unit



Group Health Incorporated (GHI), GHI HMO Select, Inc. (GHI HMO), HIP Health Plan of New
York (HIP), HIP Insurance Company of New York and EmblemHealth Services Company, LLC
are EmblemHealth companies. EmblemHealth Services Company, LLC provides administrative
services to the EmblemHealth companies.

EMB_EM_BROC_13730_EH-Clerical-UnionAgreementt 5/13



D000001

| Article | TABLE OF CONTENTS | Page |
|---|---|---|

| | Preamble | 1 |
|---|---|---|
| XIII, 1 | Arbitration | 29 |
| II | Automatic Increments | 5 |
| II, 3 | Classification | 7 |
| IX, 2 | Death in Family | 24 |
| X | Discharges | 25 |
| VII, 6 | Flow Jobs | 18 |
| XIII | Grievance Procedure | 28 |
| XVIII | Group Life Insurance | 40 |
| XVIII | Health Insurance: Medical & Dental | 35 |
| VI | Holidays | 14 |
| III | Hours of Work | 8 |
| VII, 1 | Job Postings | 15 |
| IX, 2 | Jury Duty | 24 |
| XI | Layoff | 26 |
| IX | Leaves of Absence | 23 |
| IX, 1 | Maternity | 23 |
| IX, 3 | Military | 24 |
| IX, 1 | Paternity | 23 |
| IX, 1 | Sick | 23 |
| IX, 4 | Union Business | 25 |
| XIII, 4 | Lockout | 30 |
| XVI, 4 | Medical Data, Confidential | 32 |
| VII, 4 | New Occupations | 18 |
| XX | Non-Discrimination in Employment | 44 |
| IV, 1 | Overtime | 8 |
| V, 1 | Paid Time Of (PTO) | 9 |
| XIV, 2 | Part-Time Employees | 31 |
| II, 4 | Pay Day | 7 |
| XVIII, 6 | Pension Plan | 42 |
| VII, 3 | Probationary Period | 17 |
| VII | Promotions | 15 |
| VII, 4 | Reclassification | 18 |
| XI, 3 | Rehiring | 27 |
| XXII | Renewal of Agreement | 45 |
| V, 3 | Resignation | 13 |
| XVI, 5 | Safety Committee | 32 |
| II, 1 | Salary Increases, General | 3 |

D000002

VII, 2 .......... Salary Increases, Promotional.......... 17
II, 1 .......... Salary Ranges.......... 4
XII .......... Seniority Loss.......... 27
XV .......... Severance Pay.......... 31
VIII, 1 .......... Sick Leave.......... 20
XIII, 4 .......... Strike.......... 30
XIX .......... Technological Changes.......... 43
XIV, 1 .......... Temporary Employees.......... 30
XXII .......... Termination of Agreement.......... 45
VII, 7 .......... Tuition Refund.......... 18
I, 5 .......... Trial Period.......... 3
I, 4 .......... Union Dues Deduction.......... 2
XIII, 3 .......... Union Stewards.......... 30
I, 3 .......... Union Membership.......... 2
IV, 3 .......... Unreimbursed Expenses.......... 9

## PREAMBLE

AGREEMENT entered into as of the 4th day of April 2012 between the Office and Professional Employees International Union, Local 153, AFL-CIO, hereinafter referred to as the "Union" and EmblemHealth Services Company LLC, hereinafter referred to as "EHS" or the "Employer".

WHEREAS, the parties hereto desire to cooperate in establishing and maintaining conditions which will tend to secure to the employees of the Employer fair and reasonable conditions of employment, and to provide methods for fair and peaceful adjustment of all disputes which may arise between them relating to the employment of the employees, so as to secure uninterrupted operations of the business of the Employer; and

NOW THEREFORE, be it mutually agreed as follows:

## ARTICLE I

**Section 1 – Recognition.** The Employer agrees to recognize the Union as the sole collective bargaining agent for its clerical employees as enumerated in the Schedule of Classifications, excluding the following:

All executives; officers, department heads, professional employees, directors, managers, and administrative employees; assistants to officers, department heads, directors, managers, and administrative employees (who in the performance of their duties will have access to information relating to payroll, company finances or personnel); internal accounting employees; program integrity employees (Special Representative Grade IX; Staff Assistant, Sr., Grade VIII; Secretary-Steno Grade VI); senior analysts and assistant supervisors; supervisory employees having the right to hire, discharge, discipline, or to effectively recommend such action; secretaries to officers of the Employer; all confidential employees and confidential secretaries; all job classifications not included in the legacy clerical bargaining units at GHI and HIP; and all employees covered by other collective bargaining agreements.

**Section 2 – Management Rights.** The right and power to select and hire all employees, to suspend, discipline, demote or discharge them for just cause, to promote them to supervisory or other positions, to assign, transfer (with prior notification to chief steward), supervise and direct all working forces, to maintain discipline and efficiency among them, and to exercise the other customary functions of the Employer for the carrying on of business and operations, are recognized as vested exclusively in the employer. Such right and power shall not be exercised arbitrarily or unfairly as to any employee and shall not be exercised

D000003

so as to violate any provision of this Agreement. No rule, procedure, nor practice of the Employer shall be contrary to any provision of this Agreement.

Section 3 – Condition of Employment. All employees who are members of the Union at the time of the signing hereof shall retain their membership in good standing during the life of this Agreement.

After the execution of this Agreement, all employees hired in the future by the Employer shall become and remain members of the Union thirty (30) days following the beginning of their employment.

The Union shall have the right to accept or reject these employees as members. However, the only reason whereby the Union shall require that any employee be discharged, will be the refusal of such an employee to pay the regular initiation fees and membership dues uniformly required as a condition of securing and maintaining Union membership.

Section 4 – Dues Deduction, V.O.T.E. Deduction and Credit Union Deduction. The Employer will recognize a written authorization for deduction of dues and initiation fees from any employee's salary when such authorization is duly signed and presented in the form that will comply with Section 302 of the Labor Management Relations Act of 1947 as amended. The amount deducted will be in accordance with a notarized schedule of Union dues which will be submitted by the Union to the Employer.

The Union shall indemnify the Employer against any and all claims, demands, suits or other forms of liability that shall arise out of, or by reason of, action taken by the Employer for the purposes of complying with any of the provisions of this dues deduction.

The Employer shall forward the dues thus collected to the Union each month, no later than the last day of each month. The Employer agrees to deduct from an employee's salary on a monthly basis a voluntary contribution for V.O.T.E. (Voice of the Electorate) for those employees who sign and file with the Employer a V.O.T.E. Deduction Authorization form. The Union shall indemnify the Employer against any and all claims, demands, suits or other forms of liability that shall arise out of, or by reason of, action taken by the Employer for the purposes of complying with the V.O.T.E. deduction.

Provision for Credit Union check off to become effective when language is agreed upon by the parties.

Section 5 – Trial Period. Employees in Labor Grades C and D, hired after the effective date of this Agreement, shall be on a probationary period for ninety (90) days, and employees in Labor Grades E and higher, hired after the effective date of this Agreement shall be on a probationary period for six (6) months. Newly hired employees during their probationary period may be discharged for any cause whatsoever without recourse by the Union. Probationary employees on the payroll at the time of a general salary increase shall receive the scheduled increase. Probationary employees shall receive pay for holidays observed hereunder which occur during the probationary period and Article XVIII benefits as specified therein. Following the completion of the probationary period, employees will be considered regular employees and entitled to all other rights, privileges and benefits of this Agreement.

## ARTICLE II
General Salary Provisions
Section 1 – General Salary Provisions.

Effective January 1, 2012, all employees on the payroll on that date shall receive a salary increase of two percent (2%) per week.

Effective January 1, 2013, all employees on the payroll on that date shall receive a salary increase of two and one-quarter percent (2.25%) per week.

Effective January 1, 2014, all employees on the payroll on that date shall receive a salary increase of two and one-half percent (2.5%) per week.

The foregoing salary increases shall be incorporated in the maxima of each labor grade. Only the January 1, 2014 increase shall be incorporated in the minima.

HIP maximums to be grandfathered for HIP legacy employees; the foregoing increases will not apply to the grandfathered HIP legacy maximums. For the purposes of this subparagraph, "maximum" shall mean the maximum of the Labor Grade in which the employee's job classification is listed in the Schedule of Positions/Labor Grades and Associated Salary Ranges effective December 1, 2008 set forth in the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006. In the event that the maximum under this agreement for the job classification into which any HIP legacy employee has been slotted exceeds the grandfathered maximum for the employee's job classification as defined above, the maximum under this agreement shall apply.

D000004

(a) Effective and retroactive to January 1, 2012

| Labor Grade | MINIMA Weekly | MINIMA Hourly | MAXIMA Weekly | MAXIMA Hourly |
|---|---|---|---|---|
| C | 541.18 | 15.462 | 952.88 | 27.225 |
| D | 578.42 | 16.527 | 1010.22 | 28.863 |
| E | 607.65 | 17.361 | 1055.19 | 30.148 |
| F | 643.33 | 18.381 | 1125.09 | 32.145 |
| F-a | 643.33 | 18.381 | 1143.09 | 32.660 |
| G | 674.15 | 19.262 | 1172.50 | 33.500 |
| H | 706.58 | 20.188 | 1222.44 | 34.927 |
| I | 735.78 | 21.022 | 1267.28 | 36.208 |
| J | 764.98 | 21.857 | 1312.31 | 37.495 |

(b) Effective January 1, 2013

| Labor Grade | MINIMA Weekly | MINIMA Hourly | MAXIMA Weekly | MAXIMA Hourly |
|---|---|---|---|---|
| C | 541.18 | 15.462 | 974.32 | 27.838 |
| D | 578.42 | 16.527 | 1032.95 | 29.513 |
| E | 607.65 | 17.361 | 1078.93 | 30.827 |
| F | 643.33 | 18.381 | 1150.40 | 32.869 |
| F-a | 643.33 | 18.381 | 1168.81 | 33.395 |
| G | 674.15 | 19.262 | 1198.88 | 34.254 |
| H | 706.58 | 20.188 | 1249.94 | 35.713 |
| I | 735.78 | 21.022 | 1295.79 | 37.023 |
| J | 764.98 | 21.857 | 1341.84 | 38.338 |

(c) Effective January 1, 2014

| Labor Grade | MINIMA Weekly | MINIMA Hourly | MAXIMA Weekly | MAXIMA Hourly |
|---|---|---|---|---|
| C | 554.71 | 15.849 | 998.68 | 28.534 |
| D | 592.88 | 16.939 | 1058.77 | 30.251 |
| E | 622.84 | 17.795 | 1105.90 | 31.597 |
| F | 659.41 | 18.840 | 1179.16 | 33.690 |
| F-a | 659.41 | 18.840 | 1198.03 | 34.229 |
| G | 691.00 | 19.743 | 1228.85 | 35.110 |
| H | 724.24 | 20.693 | 1281.19 | 36.605 |
| I | 754.17 | 21.548 | 1328.18 | 37.948 |
| J | 784.10 | 22.403 | 1375.39 | 39.297 |

(d) (i) GHI Legacy Employees – Employees employed by GHI as of November 19, 2009 who are below the maximum of their Labor Grade will receive a seven dollar ($7.00) increase in their weekly pay on the first Monday of April and the first Monday of October of each year until the maximum is reached. The increase for employees with five (5) years or more of service shall be twelve dollars ($12.00) on the first Monday of April and the first Monday of October of each year until the maximum is reached.

(ii) HIP Legacy Employees – Employees employed by HIP as of November 19, 2009, will participate in the following Union Incentive Plan. For calendar years 2012, 2013, and 2014, the EmblemHealth Board of Directors shall determine Performance levels which will be measured as of December 31st for the corporate performance for that respective year. Based on the corporate performance results for the calendar year, each eligible employee who has not reached the maximum of their labor grade will receive an incentive payment based on the following schedule and formula. The incentive award amount shall be added to the employees' base salary until the employee reaches the maximum of their labor grade. Once the employee reaches the maximum of their labor grade any incentive amount or part thereof which he/she may be due shall be in the form of a one-time lump-sum payment. For the purposes of this subparagraph, "maximum" shall mean the maximum of the Labor Grade in which the employee's job classification is listed in the Schedule of Positions/Labor Grades and Associated Salary Ranges effective December 1, 2008 set forth in the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006. In the event that the maximum under this agreement for the job classification into which any HIP legacy employee has been slotted exceeds the grandfathered maximum for the employee's job classification as defined above, the maximum under this agreement shall apply:

| Performance Level | Goal: [e.g., Operating Income (Millions)] | Incentive Amount |
|---|---|---|
| Maximum | The range corresponding to each Performance Level shall be in accordance with approval of the EmblemHealth Board Compensation Committee. | $17.50 |
| Above Target | | $15.50 |
| Target | | $14.00 |
| Threshold | | $7.00 |
| Below | | $0 |

| Performance Level | Goal: [e.g., Membership (Thousands)] | Modifying Factor |
|---|---|---|
| Maximum | The range of any Modifying Factor corresponding to each Performance Level shall be in accordance with approval of the EmblemHealth Board Compensation Committee. | 1.25 |
| Target | | 1.0 |
| Below | | .80 |

The calculation of the individual's incentive award will be as follows:

$$\frac{\text{Time Actually Worked, PTO Time and Holiday Time During January 1 – December 31 Performance Period}}{\text{Work time Within the Applicable January 1 – December 31 Performance Period}} \quad X \quad \text{Incentive Amount Specified}$$

**Example as in HIP Local 153 Collective Bargaining Agreement effective December 1, 2006.**

The calculation of Time Worked will include only those hours actually worked at straight time, inclusive of approved PTO paid time. Any unpaid leaves of absence shall not be included as actual time worked.

The payment of incentive awards shall be made of the first payday immediately following the first Monday in March.

(iii) Employees hired after November 19, 2009 shall participate in the Union Incentive Plan as set forth in (c) (ii) above, until the maximum of their Labor Grade is reached.

**Section 2 – Shift Differential.** For HIP legacy employees only. A full-time employee who works a regular schedule of hours which is exclusive of overtime, in which a majority of such regular non-overtime hours actually worked occurs after 5:00 p.m. but prior to 8:00 a.m. (e.g. 4:00 p.m. – 12:00 midnight, or 12:00 midnight to 8:00 a.m.) shall receive, in addition to his/her applicable regular weekly salary: (a) an evening shift differential of twenty-five ($25.00) dollars per week, calculated at seventy-one ($0.71) cents per hour for all hours actually worked after 5:00 p.m. but prior to 1:00 a.m. in his/her regular workday; (b) a night shift differential of thirty-five ($35.00) dollars per week, calculated at one ($1.00) dollar per hour for all hours actually worked after 1:00 a.m. but prior to 8:00 a.m. in his/her regular workday. The shift differential for a full-time Computer Operator and Senior Computer Operator hired or rehired prior to December 1, 1994 shall be, as heretofore.

A part-time employee who works a regular schedule of hours which includes at least seven (7) hours of work in the work day and who actually performs seven (7) hours of work, exclusive of hours beyond seven (7), in which a majority of such regular hours actually worked occurs after 5:00 p.m. but prior to 8:00 a.m. shall receive, in addition to his/her applicable regular weekly salary, a prorated evening shift differential or night shift differential, as the case may be, for each such regular shift (e.g., a part-time employee who is regularly scheduled to work four (4) hours is not eligible for either an evening or night shift differential for that day). The shift differential, for a part-time Computer Operator and part-time Senior Computer Operator hired prior to December 1, 1994 shall be, as heretofore.

**Section 3 – Classification.** Any employee who is working in a classification which is reassigned to a higher labor grade shall receive the rate of the higher labor grade. Any employee working in a classification which is assigned to a lower labor grade shall not have his rate reduced during the life of this contract by reason of such continued work assignment. The Employer shall have the right to reassign the employee to another position in the employee's labor grade so long as such a transfer or reassignment is not arbitrary or discriminatory.

**Section 4 – Payment of Salaries.** All employees shall be paid weekly before lunch hour on every Thursday. Should a holiday fall on a Thursday, the payment shall be made the last preceding working day. Any overpayments to any employees for any payments made under the provisions of the Collective Bargaining Agreement shall be reviewed by the Employer with the affected employee and the employee's steward and the employee is obligated to repay the full value of the overpayment. All salaries shall be paid during work hours and before the lunch period for day shift employees. The employer will continue its past practice of adjusting underpayments to employees expeditiously.

**Section 5 –** Employees shall have fifteen (15) minutes paid time to cash their checks on the day they are paid.

**Section 6 – Other Individual, and/or Group and/or Organizational** Based **Performance Incentive Programs.** The Employer, at its sole discretion, may award individual, and/or group, and/or organizational bonus(es), based upon Performance Incentive Program(s), at times other than and in amounts beyond applicable general increases provided for in this Agreement. Any such performance incentive bonus(es)/program shall be an addition to and not a substitution for any increase specified in this Agreement. Any such Performance Incentive Program(s) shall not be subject to the Grievance and Arbitration procedure of this Agreement.

D000006

6

7

## ARTICLE III
### Workweek and Hours

**Section 1** – The regular full time work week shall be thirty-five (35) hours and the regular full time workday shall be seven (7) hours.

**Section 2** – All GHI legacy employees working on four (4) day consecutive or non-consecutive work schedule in a Monday through Friday span as of November 19, 2009 shall be continued on a four (4) day schedule Monday through Friday as long as they remain in their current job classification.

All GHI legacy employees who are presently working in a four (4) day work week in the mailroom shall continue to be scheduled on a four (4) day non-consecutive work schedule or a four (4) day consecutive work schedule at the option of the Employer, in a Monday through Friday span as long as they remain in their current job classification.

All GHI legacy employees presently working on a five (5) day workweek, who as of November 19, 2009, during and for the months of July and August have had the option of working a four (4) day non-consecutive work schedule or a four (4) day consecutive work schedule at the option of the Employer, in a Monday through Friday span, shall continue to have this option as long as they remain in their current job classification.

## ARTICLE IV
### Overtime and Unreimbursed Expenses

**Section 1** – **Overtime Compensation.** All Employees shall be entitled to be paid overtime as follows:

All work performed in excess of thirty-five (35) hours per week or on Saturday shall constitute overtime and shall be paid for at the rate of time and one-half. Work performed on a holiday shall be paid for at time and one-half each hour worked, plus holiday pay. Sick leave shall not constitute "work performed" for the purpose of calculating overtime.

HIP legacy employees authorized to work on New Years Day, Dr. Martin Luther King Jr.'s Birthday, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the Workday before Christmas Day and Christmas Day shall be compensated at two (2) times the employee's regular salary for the day, plus holiday pay.

All authorized overtime shall be computed on a daily basis and shall be compensated for at time and one-half the regular rate of pay and shall only commence after:

1) an employee on a five (5) day work week has actually worked seven (7) hours, and

2) an employee on a four (4) day work week has actually worked eight and three-quarter (8.75) hours.

Overtime shall be computed only in one-half hour units of time worked.

**Section 2** – **Sunday Work.** All work performed on Sundays shall be compensated for at double the regular rate of pay. Except for Sundays, employees on a special work week shall have the 6th day of the special work week treated as Saturday. If the 6th day is Sunday, the 7th day of the special work week shall be treated as Saturday. Employees on a special work week shall have two consecutive days off.

**Section 3** – **"Unreimbursed Expenses."** Effective upon ratification, any employee authorized to work for two (2) hours or more beyond the regularly scheduled hours for the day shall receive an unreimbursed expense allowance of seven dollars ($7.00). Any employee required to work two (2) or more hours on Saturdays, Sundays or legal holidays shall receive eight dollars ($8.00) as unreimbursed expense.

**Section 4** – **"Call in Pay."** A HIP legacy employee in a Housekeeper, Foreperson, Handyperson, or Maintenance Mechanic Position who (a) has left the Employer's workplace having completed his/her regularly scheduled workday and is subsequently called in to work, or (b) is called in to work on an unscheduled sixth or seventh day having worked his/her regular work week shall receive a guaranteed minimum of three (3) hours pay or payment for all such authorized hours worked at time and one-half his/her regular hourly salary.

## ARTICLE V
### Section 1 – Paid Time Off (PTO)

(a) Effective January 1, 2010, the employer shall establish a Paid Time Off ("PTO") program that will replace the existing provisions for paid vacation, personal and religious days. PTO may be used, subject to the conditions set forth herein, for reasons such as vacation, family care, religious or personal business reasons or other reasons, that require time off from work.

(b) (i) GHI Legacy Employees.

(A) GHI legacy employees on a five-day workweek. Employees employed by GHI as of November 19, 2009 who have completed the probationary period shall accrue and earn PTO in accordance with the following: less than three (3) years of employment, an annual total of fifteen (15) PTO days, accrued at the rate of 1.25 days per month; beginning on their third (3rd) anniversary date, an annual total of twenty (20) PTO days, accrued at the rate of 1.66 days per month; beginning on their

fifth (5th) anniversary date, an annual total of twenty-five (25) PTO days, accrued at the rate of 2.08 days per month; beginning on their twenty-fifth (25th) anniversary date, an annual total of thirty (30) PTO days, accrued at the rate of 2.5 days per month. Such employees shall receive an additional week's pay after the anniversary of their 15th, 20th and 25th year of service with the Employer and after the anniversary of each 5th year thereafter.

(B) GHI legacy employees on a four-day workweek. Employees employed by GHI as of November 19, 2009 who have completed the probationary period shall accrue and earn PTO in accordance with the following: less than three (3) years of employment, an accrual total of thirteen (13) PTO days, accrued at the rate of 1.083 days per month; beginning on their third (3rd) anniversary date, an annual total of seventeen (17) PTO days, accrued at the rate of 1.416 days per month; beginning on their fifth (5th) anniversary date, an annual total of twenty-one (21) PTO days, accrued at the rate of 1.75 days per month; beginning on their twenty-fifth (25th) anniversary date, an annual total of twenty-five (25) PTO days, accrued at the rate of 2.08 days per month. Such employees shall receive an additional week's pay after the anniversary of their 15th, 20th and 25th year of service with the Employer and after the anniversary of each 5th year thereafter.

(ii) HIP Legacy Employees.

(A) HIP legacy employees. Employees employed by HIP as of November 19, 2009 and who were hired by HIP prior to January 8, 2004 shall accrue and earn PTO in accordance with the following: less than ten (10) years of employment, an annual total of twenty-five (25) PTO days, accrued at the rate of 2.08 days per month; beginning on their tenth (10th) anniversary date, an annual total of twenty-six (26) PTO days, accrued at the rate of 2.166 days per month; beginning on their eleventh (11th) anniversary date, an annual total of twenty-seven (27) PTO days, accrued at the rate of 2.25 days per month; beginning on their twelfth (12th) anniversary date, an annual total of twenty-eight (28) PTO days, accrued at the rate of 2.33 days per month; beginning on their thirteenth (13th) anniversary date, an annual total of twenty-nine (29) PTO days, accrued at the rate of 2.42 days per month; beginning with their fourteenth (14th) anniversary date, an annual total of thirty (30) PTO days, accrued at the rate of 2.5 days per month.

(B) Employees employed by HIP as of November 19, 2009 and who were hired by HIP on or after January 8, 2004 and who have completed the probationary period shall accrue and earn PTO in accordance with the following: less than four (4) years of employment, an annual total of fifteen (15) PTO days, accrued at the rate of 1.25 days per month; beginning on their fourth (4th) anniversary date, an annual total of twenty (20) PTO days accrued at the rate of 1.66 days per month; beginning on their eighth (8th) anniversary date, an annual total of twenty-five (25) PTO days, accrued at the rate of 2.08 days per month; beginning on their sixteenth (16th) anniversary date, an annual total of twenty-six (26) PTO days, accrued at the rate of 2.16 days per month; beginning on their seventeenth (17th) anniversary date, an annual total of twenty-seven (27) PTO days, accrued at the rate of 2.25 days per month; beginning on their eighteenth (18th) anniversary date, an annual total of twenty-eight (28) PTO days, accrued at the rate of 2.33 days per month; beginning on their nineteenth (19th) anniversary date, an annual total of twenty-nine (29) PTO days, accrued at the rate of 2.42 days per month; beginning on their twentieth (20th) anniversary date, an annual total of thirty (30) PTO days, accrued at the rate of 2.5 days per month.

(iii) Each full time employee hired on or after January 1, 2010, who has completed the probationary period shall accrue and earn PTO in accordance with the following: less than ten (10) years of employment an annual total of thirteen (13) PTO days accrued at the rate of 1.083 days per month; beginning on their tenth (10th) anniversary date, an annual total of eighteen (18) PTO days accrued at the rate of 1.5 days per month; beginning on their fifteenth (15th) anniversary date, an annual total of twenty-three (23) PTO days accrued at the rate of 1.916 days per month.

(c) All vacation, personal and religious days accrued but unused as of December 31, 2009, shall be converted to PTO days effective January 1, 2010. All such converted days must be used by December 31, 2010, and any such days not used by that date shall be forfeited and no payment for them shall be made.

(d) Part time employees shall accrue PTO on a pro-rated basis.

(e) Employees shall earn PTO days monthly at the end of each completed calendar month of active employment. PTO is not earned by employees who are not actively employed such as during a lay off or leave of absence.

D000008

(f) Effective January 1, 2011, at the beginning of each calendar year, each eligible employee who has completed the probationary period will be advanced the maximum number of PTO days that the employee could earn during that calendar year. In the event an employee begins a new calendar year with a negative balance of PTO, the deficit shall be corrected by deducting the negative balance from the PTO advance available and to be accrued in the new calendar year. In the event an employee has used advanced PTO and his or her employment terminates prior to actually accruing such PTO, the employee is obligated to repay the full value of such advanced PTO to the Employer. Upon termination, the Employer shall notify the employee of the amount and full value of such advanced PTO and request that the employee make payment of the full amount. The Employer reserves the right to pursue any legal remedy to recoup the advanced PTO should repayment not be made within ten (10) days after employment terminates.

(g) Effective January 1, 2011, PTO must be taken prior to the end of the calendar year immediately subsequent to the year in which the PTO was earned. Effective January 1, 2011, a maximum of twelve (12) earned but unused PTO days may be carried over into the following calendar year. All PTO days in excess of twelve (12) days that remain unused at the end of a calendar year shall be forfeited and no payment for such days shall be made. Employees hired on or after the effective date of this agreement may carry over a maximum of ten (10) earned but unused PTO days into the following calendar year and any PTO days in excess of ten (10) that remain unused at the end of the calendar year shall be forfeited and no payment for such days shall be made.

## Section 2 – Scheduling PTO

(a) A Request for Time-Off ("Request") to take PTO must be submitted by an eligible employee to his/her manager with as much advance notice as possible. The employee must receive approval from his/her manager of his/her Request prior to making plans or taking PTO. While every attempt will be made to approve and honor an employee's Request for PTO, department management reserves the right to deny a Request; such right shall not be exercised arbitrarily or unfairly as to any employee.

(b) Preference in scheduling PTO will be given to requests for a full week or more of consecutive PTO days over requests for less than a full week of consecutive PTO days. Preference in scheduling only the first ten (10) days taken consecutively shall be given to the more senior employee and the

employee shall be permitted to take PTO beyond ten (10) consecutive days, unless in the Employer's judgment, the requested schedule will interfere with the Employer's efficient operation of the business.

(c) PTO days may be taken at any time during the year in increments of whole or half days, except that up to two (2) PTO days may be taken in one (1) hour increments.

(d) Guaranteed PTO. (i) Each employee shall be entitled to designate one guaranteed PTO day out of their annual total of PTO days at the beginning of each calendar year. Employees shall select the day of their choice on or about January 1st of each calendar year; (ii) each employee shall be guaranteed two (2) additional PTO days out of their annual total of PTO days each year on the days the employee designates, provided that the employee notifies his/her supervisor at least two (2) business days in advance. Guaranteed PTO days may be taken in whole day increments only.

(e) In the event an employee is on PTO and a death in the family occurs that is covered by Article IX, Section 2, such PTO time that coincides with paid Bereavement Leave shall be rescheduled in accordance with this Article.

(f) In the event that a Holiday, as defined in Article VI, falls during an employee's scheduled PTO, that day shall be paid as a Holiday and not charged to the employee's PTO.

## Section 3

(a) PTO shall not be used for sick leave unless the employee has exhausted all accrued and banked sick leave. PTO used for sick leave shall not constitute "work performed" for the purpose of calculating overtime.

(b) In no event shall sick leave be substituted for PTO when the employee is on PTO, except that in instances of accidental injury or illness requiring hospitalization, the employee shall be considered on sick leave for the length of time confined as a bed patient in a hospital. If, after having been discharged from the hospital, time is required for convalescence at home, it shall be charged to sick leave. Proof of injury, illness and hospitalization shall be required by the Human Resources Department.

(c) Employees discharged for causes other than dishonesty, which for the purposes of this section shall mean misappropriation of funds or property or misconduct of a similar serious nature, shall receive their accrued PTO upon discharge. Employees, who resign, provided that they give at least two (2)

D000009

weeks notice of resignation, shall receive their accrued unused PTO pay on their last scheduled day of employment. An employee who gives less than one (1) week's notice of resignation shall forfeit ten (10) days of his/her accrued PTO. An employee who gives at least one (1) week's but less than two (2) weeks notice of resignation shall forfeit five (5) days of his/her accrued PTO. Upon giving notice of resignation, employees will not be entitled to receive PTO for those two weeks.

## ARTICLE VI
### Holidays
Section 1 – Holidays. All full-time employees working on the five (5) day workweek schedule are to receive the following holidays with pay, regardless of the day of the week on which they fall:

| | |
|---|---|
| New Year's Day | Labor Day |
| Dr. Martin Luther King Jr. Day* | Thanksgiving Day |
| Washington's Birthday | Day after Thanksgiving |
| Memorial Day | Day before Christmas Day |
| Independence Day | Christmas Day |
| The Employee's Birthday** | |

Note: *Dr. Martin Luther King Jr. Day will be observed as a holiday on the day of national observance.

**The parties agree HIP legacy employees shall observe New Year's Eve as a holiday in lieu of their birthday.

The day before Christmas shall be changed to the day after Christmas in any week in which Christmas Day falls on a Thursday, it being the intention of the Parties whenever possible to provide a four-day Christmas weekend.

The employee's birthday shall in each case be treated as any other holiday for all purposes under this contract. Holidays falling on Sunday shall be observed on the following Monday. Holidays falling on Saturday shall be observed on the Friday immediately preceding. In the event that two holidays fall during the same calendar week as a Saturday holiday, the holiday falling on Saturday shall be observed on the following Monday.

Section 2 – All employees working on the four (4) day workweek schedule are to receive the following holidays with pay, regardless of the day of the week on which they fall:

| | |
|---|---|
| New Year's Day | Independence Day |
| Dr. Martin Luther King Jr. Day* | Labor Day |
| Washington's Birthday | Thanksgiving Day |
| Memorial Day | Christmas Day |

Note: *Dr. Martin Luther King Jr. Day will be observed as a holiday on the day of national observance.

Except as provided for herein, all Monday holidays will be celebrated the previous Friday by employees on the Tuesday through Friday workweek; whenever a holiday falls on a Tuesday, employees shall work Wednesday, Thursday and Friday of the holiday week and shall have Monday as a day off.

Whenever a holiday falls on a Wednesday, the holiday will be celebrated on Wednesday only. Employees on a Monday, Tuesday, Thursday and Friday workweek schedule shall observe Tuesday, and Wednesday as their days off during that workweek.

During Thanksgiving week, all employees will work Monday, Tuesday, and Wednesday and be off Thursday, Thanksgiving Day.

## ARTICLE VII
### Promotions
Section 1 – All job vacancies and new positions, except those designated as "Flow Jobs", shall be posted for five (5) work days on bulletin boards in accessible places, and the Employer shall notify the Union of any vacancies in the classifications covered by this Agreement. All job vacancies and new positions may be posted on any work day, Monday through Friday. Any employee except those on initial new hire probation, on attendance probation, or on final notice, shall have the right to apply for a posted job.

The job posting shall describe the minimum qualifications for the job. Employees who wish to apply for a posted job shall submit a written application in the Employee's handwriting on a form supplied by the Department Manager to the

Human Resources Department within five (5) days (Data Center employees six (6) days) of the posting. Applications will be supplied by the Human Resources Department. The Human Resources Department will notify an applicant within four (4) days of the date the job posting expires if the applicant has met or has not met the minimum qualifications for the job. Such applicants shall be called candidates.

All candidates will be given written tests, where necessary, in the discretion of the Employer. Practical tests may also be given, at the discretion of the Employer, if the job in question involves communication skills or other skills which cannot be adequately assessed solely by a written test. The tests must conform to the minimum qualifications described in the appropriate job description for the applicable area.

If one or more of the candidates who passes the test has ten (10) or more years of service, those candidates shall receive ten (10) points added to his/her actual test score. The candidate with the highest test score will receive the promotion. However, if the test score(s) are the same, the most senior employee in terms of adjusted seniority will receive the promotion. The Employer will break a seniority tie by utilizing the dates of the employees' applications. The employee with the earlier application date will be considered to have more seniority than the employee with the later application date. In the event that the employees have identical application dates, the Employer will utilize the time of day that the employees submitted their applications, if available, to break the seniority tie. The employee with the earlier time of day will be considered to have more seniority than the employee with the later time of day. In the event that the employees' have identical times of day on their applications, or in the event that there is no time of day recorded on one or both of the employees applications, the Employer will utilize the last two (2) digits of the employees' social security number to break the seniority tie. The employee with the higher two (2) digits of the employees' social security number shall be considered to have more seniority than the employee with the lower two (2) digit number.

Candidates scheduled for a written test shall receive a briefing on the subject matter of the test. The Chief Steward or the Chief Steward's designee, and a representative of the Human Resources Department shall attend the briefing. An Employee, with a shop steward present, may inspect his/her test paper and the Union may examine test papers of all candidates in the event of a complaint or grievance. The Employer shall agree to grade written examinations within two (2) weeks, except in extenuating circumstances.

In the event no regular employee is qualified for a position, the Employer will notify the Union of its intention to hire from outside to fill such position. If a job is not filled within three (3) weeks of a posting or vacancy the Employer will notify the Union as to the reason.

The promoted person shall be entitled to all pay and other benefits of the new position within two (2) weeks of the notice of promotion. The release of an employee to the higher classified job shall not be unreasonably withheld by the Employer.

The Employer shall maintain an up-to-date reference library and supply training aids to assist employees in obtaining promotional opportunities.

Any candidate who is proceeding on vacation while awaiting a test, the date of which has not been announced, will inform the Human Resources Department of such who will notify him/her of the test date if it is to be held during his/her absence so that the employee may, if the employee wishes, attend the test. If the employee attends, the employee shall be paid for that day or given credit for an additional vacation day.

Section 2 – Promotional Increases. All employees promoted shall receive a twenty dollar ($20.00) per week increase in salary or the minimum of the new labor grade, whichever is higher. No HIP legacy employee shall have their current minimum promotional increase reduced by reason of the foregoing.

Employees in job classifications which are upgraded shall receive an increase equal to the difference between the minimum salary of the applicable Labor Grade before the upgrading and the minimum salary of the new labor grade.

In the event an upgrading is granted, the receipt of a promotional increase by the employee shall not interrupt an increment scheduled pursuant to Article II, Section 1(d).

Section 3 – Employees promoted to a higher rated job shall be on a probationary period of ninety (90) days on such job, except that employees promoted to job in Labor Grade E or higher shall be on a probationary period of six (6) months. An employee who does not qualify during the probationary period and an employee promoted to a sales position who does not qualify during the probationary period for that position shall be reassigned to his/her former position.

A promoted employee shall have the right to return to his/her former position within thirty (30) days from the start date in the higher classified job provided his/her former position is not occupied by another employee and no offer of

D000011

employment has been made to any candidate, internal or external, for his/her former position. Any employee who elects to return to his/her former position under this provision will be prohibited from applying for another position for six (6) months from the date he/she returns to the former position.

Employees promoted more than one (1) Labor Grade shall receive a promotional increase for each Labor Grade.

**Section 4 – Reclassifications and the Establishment of New Occupations.** The Employer agrees that if a new occupation is established, or if there is a substantial change in an existing occupation requiring its re-evaluation, the new or changed occupation shall be evaluated and classified into its proper classification by the Employer within sixty (60) days.

**Section 5** – Evaluation of employees for promotion shall be on a uniform basis.

**Section 6 – "Flow Jobs."** The special agreement on "Flow Jobs" for all Grade E Approvers dated January 23, 1975 is deemed part of this Agreement and attached hereto.

**Section 7 – Tuition Refund Program**

Effective until the Fall 2012 school semester:

1. The program is available to all full time employees with three (3) or more years of service with the Employer. Employees on final written notice or attendance probation at the time of registration are not eligible to receive payments hereunder.

2. Each course must be approved in advance by the Human Resources Department. Courses of study and degree programs shall be related to present or future positions with the Employer, except that in an approved degree program, courses related to that degree are eligible for payments hereunder.

3. Employees will receive up to two hundred and fifty dollars ($250) per credit upon successful completion of the course as limited by paragraph 4 hereof. A satisfactorily completed course is one in which the employee has received a grade of "C" or better or "Pass" in the case of a Pass/Fail course.

4. Employees will receive up to two thousand dollars ($2,000) per academic year. No reimbursement will be made for registration fees, activity fees, books or periodicals.

Any employee who earns an average grade of "B" or better will receive up to two hundred and eighty dollars ($280) per credit to a total of twenty-five hundred dollars ($2,500) per academic year. This level of reimbursement will apply to the academic years utilized following the attainment of the average grade of "B" or better and will remain in effect as long as the grade is maintained by the employee.

No HIP legacy employee shall have their current tuition reimbursement levels reduced by reason of the foregoing.

Effective for the Fall 2012 school semester, and thereafter, the following shall replace the foregoing and apply to all employees in the bargaining unit:

(1) **Eligibility and Procedure.** A regular full-time employee shall be eligible to participate in the Employer's tuition assistance program upon the Employer's Human Resource Department ("HR") approval of his/her application completed and submitted to HR in advance of course registration and commencement of the applicable semester in the academic year. The employee's application shall include information regarding each job related course and/or whether such course is part of an accredited degree program. Further, the employee shall indicate on said application any request for an advance of course tuition, as described in (3) of this Section. The relatedness of each course shall be subject to the approval of HR. An academic year shall be defined as September of one year through August of the immediately following year.

(2) **Maximum Reimbursement in an Academic Year.** An eligible employee may receive reimbursement of up to a maximum of three thousand ($3,000.00) dollars. HR shall also consider an eligible employee's request to register for a course or courses which may involve reimbursement for an academic year of more than the above-specified maximum. Such decision shall be made by HR on a case-by-case basis.

(3) **Advance of Course Tuition.** A regular full-time employee may request, on his/her application for tuition assistance, approval for an advance of up to a fifty (50%) percent of course tuition, the total of which shall not exceed eight hundred ($800.00) dollars in the applicable academic year.

(4) **Reimbursement.** A regular full-time employee who has properly submitted an application, received course approval as described in (1) of this Section, and who immediately after course completion provides HR with proof of tuition payment and satisfactory completion of approved course or courses

D000012

shall receive reimbursement for applicable registration fees, textbooks and related reading material, and course tuition, less any advance of course tuition provided in conformity with (3) of this Section.

(5) **Where an Employee Achieves Specified Grades.** Where a regular full-time receives grades of "A" in three (3) courses in an academic year, he/she shall receive in the immediate next academic year, maximum reimbursement of up to three thousand seven hundred and fifty ($3,750.00) dollars and a maximum advance of fifty (50%) percent of course tuition of up to one thousand ($1000.00) dollars for such academic year. An employee who has properly submitted an application in accordance with (1) of this Section, upon satisfactory course completion reimbursement for registration fees, textbooks and related reading material, and course tuition less any advance of course tuition described in this paragraph. HR shall also consider approval of a course or courses, which may involve reimbursement of more than the above-specified maximum of three thousand seven hundred and fifty ($3,750.00) dollars in such academic year. Such decision shall be made by HR on a case-by-case basis.

## ARTICLE VIII
Sick Leave

**Section 1** – Sick leave is a benefit to be accumulated and not to be used except in cases of actual illness of an employee, or the illness of the employee's spouse, dependent child (biological or legally adopted) or legal parent as described in Section 4 of this Article, or prescheduled doctor's visits as described in Section 5 of this Article. The parties hereto agree that sick leave must never be used unless illness or the health needs of the employee or the employee's spouse, dependent child or legal parent make it necessary. An absence reported as sick leave when an employee or an employee's spouse, dependent child or legal parent is, in fact, not sick is a dishonest act and is cause for dismissal.

**Section 2** – "Rate of Accumulation." Effective on each employee's anniversary date immediately following January 1, 2010 sick leave shall be accrued at the following rates:

GHI legacy employees hired prior to January 1, 2007 with up to one (1) year employment accumulate sick leave at the rate of five and one quarter (5.25) hours for each month worked; one (1) year- Three (3) years employment-seven (7) hours for each month worked; Three (3) years and over-ten and one-half (10.5) hours for each month worked.

HIP legacy employees hired prior to January 8, 2004 accumulate sick leave at the rate of ten and one-half (10.5) hours for each month worked. HIP legacy employees hired on or after January 8, 2004 and prior to January 1, 2007 with up to four (4) years employment accumulate sick leave at the rate of 5.833 hours for each month worked; four (4) years – seven (7) years employment-seven (7) hours for each month worked; seven (7) years and over-ten and one-half (10.5) hours for each month worked.

All GHI legacy and HIP legacy employees hired after January 1, 2007 will accrue sick leave as follows:

GHI legacy employees: up to one (1) year employment five and one-quarter (5.25) hours for each month worked: one (1) – three (3) years employment seven (7) hours for each month worked: three (3) years and over eight and three-quarter (8.75) hours for each month worked.

HIP legacy employees: up to four (4) years of employment 5.833 hours for each month worked; four (4) to seven (7) years employment seven (7) hours for each month worked; seven (7) years and over eight and three-quarter (8.75) hours for each month worked.

Employees hired after November 19, 2009, shall accrue sick leave at the following rate: up to five (5) years of employment, 2.916 hours for each month worked; five (5) years through nine (9) years of employment 4.666 hours for each month worked; ten (10) years or more of employment, 5.833 hours for each month worked.

Part-time employees shall have their sick leave pro-rated accordingly.

Unused sick leave shall be banked to a maximum of 200 days and utilized for sick leave only.

**GHI Legacy Employees Only** – Accumulated sick leave in excess of eight hundred and forty (840) hours accrued subsequent to January 2, 1974 shall be credited to the employee for pension purposes only. The 200 day maximum bank shall not apply to these employees.

**Section 3** – In case of an absence, an employee must call his/her supervisor, or in the absence of the supervisor, the Human Resources Department, within one (1) hour of the employee's starting time, except in an emergency when the employee must call as soon as possible considering the circumstances. If an employee fails to comply, the employee will not receive sick leave pay for the absence to which the employee might otherwise have been entitled.

D000013

Section 4 – Family Sick Days. An employee who has completed one (1) year of service but less than four (4) years of service may utilize one (1) accrued but unused sick day in each calendar year to care for the employee's spouse, dependent child (biological or legally adopted) or legal parent who is ill. An employee who has completed four (4) years of service but less than seven (7) years of service may utilize up to two (2) accrued but unused sick days in each calendar year to care for the employee's spouse, dependent child (biological or legally adopted) or legal parent who is ill. An employee with seven (7) years or more of service may utilize up to three (3) accrued but unused sick days in each calendar year to care for the employee's spouse, dependent child (biological or legally adopted) or legal parent who is ill.

Section 5 – An employee may use up to two (2) paid sick days per year for prescheduled doctor visits. One (1) paid sick day may be used in hourly increments; one (1) paid sick day may be used in whole or half day increments. Effective April 4, 2012 an employee may use up to a total of three (3) paid sick days per year for prescheduled doctor visits. One (1) paid sick day may be used in hourly increments; two (2) paid sick days may be used in whole or half day increments. An employee must notify the Employer at least one (1) week in advance of the doctor visit in order to utilize paid sick time except in cases of medical necessity, in which case as much notice as is practicable under the circumstances must be given.

Section 6 – Documentation of Illness. The Employer, in its sole discretion, may require proof of the employee's illness, the illness of a family member, or of a prescheduled doctor visit.

Section 7 – Pay of Unused Sick Leave – GHI Legacy Employees and HIP Legacy Employees. Sick leave shall be divided between accumulated sick leave and paid sick leave. On the first anniversary of the employee's employment, the employee shall be paid up to twenty-eight (28) hours of paid sick leave. Paid sick leave will be the first sick days utilized by the employee. Accumulated sick leave shall be banked and utilized or in accordance with the provisions herein below.

Employees on their second anniversary date of hire and on each subsequent anniversary date shall be paid up to forty-nine (49) hours for unused sick leave. Paid sick leave will be the first sick days utilized by the employee. Accumulated sick leave shall be banked and utilized for sick leave or in accordance with the provisions herein above.

## ARTICLE IX
### Leaves of Absence

Section 1 – General Leave, Sick Leave and Maternity Leave. The employer agrees to permit its employees to take reasonable furloughs without pay in the event of illness which goes beyond the provisions of Article VIII.

The Employer agrees to permit employees hired before the effective date of this agreement with twelve (12) months or more of service to take leaves of absence as follows: not more than fifteen (15) months due to serious illness; not more than twelve (12) months for maternity, plus any period of disability, up to a total maximum of not more than fifteen (15) months; not more than twelve (12) months due to paternity. Leave of absence may also be granted for reasonable purposes to GHI legacy and HIP legacy incumbent employees with twelve (12) months or more of service.

For employees hired after November 19, 2009, the Employer agrees to permit employees with twelve (12) months or more of service to take leaves of absence as follows: not more than twelve (12) months due to serious illness; not more than ten (10) months for maternity, plus any period of disability, up to a total maximum of not more than twelve (12) months; not more than ten (10) months due to paternity. Leave of absence may also be granted for reasonable purposes to employees with twelve (12) months or more of service hired after the effective date of this agreement.

The Employer agrees that furloughs granted to employees shall not affect the seniority standing of said employees, but seniority and benefits there under shall not accrue while the employee is on leave, except as set forth below in Section 3. In addition, those benefits set forth in Article XVIII shall remain in effect while an employee is on leave due to illness or disability. Persons employed as substitutes for employees on leaves of absence may be classified as temporary during such substitution, in which event they shall acquire no permanent status while so employed; but any employee transferred to such temporary job shall accumulate seniority in the employee's former job.

Employees on indefinite leaves of absence or whose date of return is uncertain shall be re-employed only after giving to the Employer fifteen (15) days notice of their intention to return.

## Section 2 – Jury Duty, Bereavement Time.

(a) Jury Duty. The Employer agrees to permit its employees to have leaves of absence with pay for jury duty. An employee receiving a summons for jury duty shall immediately contact the Human Resources Department so that, where the circumstances so require, a deferral of his/her jury service can be sought by the Company. An employee on jury duty shall receive the difference between the employee's regular rate of pay and pay received as jury duty pay.

(b) Bereavement. Leave of absence of thirty-five (35) hours with pay shall be permitted to employees in the event of death in the "immediate" family ("immediate" family shall mean husband or wife, parents, children, siblings, guardians, parents-in-law, grandparents, grandchildren or domestic partner.) Leave of absence of twenty-one (21) hours with pay shall be permitted to employees in the event of death of a step parent or step child, except that employees on a four (4) day workweek pursuant to Article III, Section 2 of this Agreement, shall be provided three (3) full days of leave in the event of death of a step parent or step child. If a holiday occurs during the thirty-five (35) hours or twenty-one (21) hours herein allowed, it shall be included within the thirty-five (35) hours or twenty-one (21) hours and no additional allowance in pay or time off shall be made for the holiday. Death in family leaves shall be taken at the time of death or funeral, except in extenuating circumstances.

## Section 3 – Pre-Induction, Military Leave.
The Employer agrees to permit its employees to have leaves of absence with pay for pre-induction physical.

Leave for military service and reinstatement thereafter shall be granted in conformance with applicable federal and state law. Salary, upon reinstatement, shall be determined by former salary received by said employee plus all adjustments, i.e. general wage increases, which may have been made to the remainder of the staff during the period of such service, and which increases are in effect at the time of re-employment. If, after all adjustments have been made, said employee is below the maximum of said employee's Labor Grade, the employee shall be entitled to the automatic increments due to the employee had the employee's employment been continuous, but the increments shall not exceed the equivalent of twenty-four (24) months of employment. The original date of employment shall govern the rate of vacation entitlement as defined in Article V, Section 1.

## Section 4 – "Union Business" Leave.

The Employer agrees to grant unpaid leaves of absences, without loss of seniority, for Union business as follows:

(a) to employees selected to work for the Union, not more than two (2) leaves during the term of this Agreement. Each leave shall not exceed six (6) months and the period of the leaves shall not overlap. If the leave exceeds one (1) month no paid time off benefits shall accrue and health benefits shall be suspended unless the employee continues benefits under COBRA.

(b) to not more than two (2) employees at one time, a reasonable leave, not to exceed one (1) week, to employees who are delegates or alternates to a convention or conference of the Union.

# ARTICLE X
### Discharges

**Section 1 – Discharges.** The Employer reserves the right to discharge any employee for just cause. In instances of contemplated discharge of an employee, the employee shall receive two (2) weeks notice and the Union, and the Chief Shop Steward shall receive three (3) working days notice prior to notice to the employee. The Employer will notify the Union of the circumstances of the discharge in each case, and will discuss the merits thereof with the Union before final action is taken. No prior notification need be given in case of discharge for dishonesty or gross misconduct.

The Company agrees that where a Supervisor calls an employee in to discuss disciplinary action against the employee, the employee shall be notified of the employee's right to have the employee's Steward present.

Supervisors will be furnished with a form to be signed by the employee affirming that the employee has been advised of the employee's rights.

Except in situations where summary actions must be taken, Labor Relations should be notified before disciplinary action is effected.

No Chief Shop Steward, Assistant Chief Shop Steward, Shop Steward or Assistant Shop Steward may be discharged, except for gross misconduct or dishonesty, prior to arbitration hearing on the merits of just cause. Such arbitration hearing shall be held no later than seventy-two (72) hours following notice to the Union of the Employer's intention to discharge. Upon completion of the hearing, the Employer may suspend the Steward concerned pending receipt of the arbitrator's

D000015

award. However, the arbitrator shall issue the award within 10 business days from the date of the hearing. The parties shall notify the arbitrator of the above time limits and if the arbitrator indicates that he/she cannot comply with them, the parties will select a different arbitrator.

The Employer may, if it chooses, pay two (2) weeks salary in lieu of notice.

If an employee is suspended as a disciplinary measure or discharged, and is reinstated by an arbitration award, the employee shall not lose seniority and benefits for any period for which the employee receives back pay as a result of such award.

Discharge of an employee for failure to maintain good standing in the Union shall not be subject to the provisions of this Section.

## ARTICLE XI
### Layoffs

Section 1 – The Employer agrees to provide the Union with as much advance notice as in practicable, but in no event less than 30 calendar days notice of layoff or staff reduction.

Section 2 – Layoffs shall be made within job classifications in accordance with seniority. Employees with less than six (6) months of active service shall have no seniority rights with respect to layoffs. For the purposes of layoff, permanent part-time employees shall be grouped according to seniority separately from full time employees and shall be considered as a separate "Job Classification" within the job classification worked.

Any employee with six (6) months active service shall, in lieu of layoff, have the right to bump another employee in the same or a lower classification with less company-wide seniority, provided such employee accepts such job within two (2) work days, and has satisfactorily performed in the past the duties of the new assignment, or has the qualification for and can satisfactorily perform such duties.

Permanent part-time employees may bump a full time employee with less company-wide seniority if the employee satisfies the requirements of this section and accepts full time employment.

This process shall be called "bumping." Any such person who accepts a position in a lower Labor Grade shall receive such person's salary at the time of the bump or the maximum of the lower Labor Grade to which the employee was "bumped", whichever is lesser.

Layoffs shall be for the purpose of eliminating jobs or reducing the work force, and shall not be used as a substitute for dismissal for cause.

Section 3 – The Employer agrees to rehire in the reverse order of layoff within a twenty-four (24) month period following the layoff of an employee with more than one (1) year of service and within a six (6) month period following the layoff of an employee with less than one (1) year of service, provided the person responds to a call to report for work not more than five (5) working days from the date of such employee's receipt of recall notice.

Notice to report to work pursuant to recall will be by registered mail, return receipt requested, to an employee's last known post office address. A copy of said notice will be mailed to the Union at the same time the notice has been mailed to the employee. If such laid-off employee fails to report for work within fifteen (15) calendar days, such employee shall lose all right of preference to re-employment.

The Employer agrees that no permanent employee shall be laid off without two (2) weeks notice.

The Employer may, if it chooses, pay salary in lieu of notice.

Section 4 – Retraining. The Company will maintain an e-learning center that will be available to employees with five or more years of service who may be subject to layoff due to staff reductions. Affected employees may utilize e-learning opportunities on their own time to train for positions that they may have an interest in bumping into, but may not be qualified. Employees who choose to participate must first demonstrate basic computer skills, and must successfully complete the employer sponsored e-learning training in the time allotted. The employer agrees to provide the union with as much advance notice as is practicable, but in no event less than 30 calendar days notice of layoff or staff reduction.

Section 5 – Seniority of Chief Steward and Deputy Chief Steward. In the event of layoffs, the Chief Steward and Deputy Chief Steward shall have super seniority over all employees in his/her job classification as defined in Section 2 of this Article.

## ARTICLE XII
### Seniority

Seniority shall be defined as length of service with the Employer. Seniority shall include continuous service with GHI, HIP, and the Employer. However, for purposes of layoff only, part-time employees shall have seniority pro-rated based on scheduled hours (excluding overtime). Loss of seniority shall be for the

D000016

following reasons: voluntary quit, separation from the bargaining unit, discharge for cause and layoffs beyond the applicable recall period, and failure to respond to the recall notice or to report for work within the time limits prescribed under Article XI, Section 3.

## ARTICLE XIII
### Grievances

Section 1 – Grievance Procedure. The Employer agrees that a representative of the Union may have access to the place of business during working hours, provided the Labor Relations Department is notified upon arrival of such representative's having access to the Employer's premises. for the purpose of determining or settling grievances with management. The Employer agrees to cooperate with said representatives in ascertaining all facts bearing on any matters in question, so that an amicable adjustment can be made.

Any difference arising between the parties as to the interpretation or application or alleged violation of any of the terms of this Agreement shall be deemed a grievance to be dealt with in the following manner:

Step 1- A grievance shall be reduced to writing and filed with the employee's supervisor promptly after the occurrence or event giving rise to the grievance. The supervisor shall render a written decision within two (2) working days. If the grievance is not settled, it shall be appealed immediately to Step 2.

Step 2 – A grievance may be appealed to Step 2 and shall be signed by the employee and the employee's Steward and filed with the Director of Labor Relations within two (2) working days after the decision of the supervisor appealed from is given to the grievant. The Director of Labor Relations, or designee, shall meet with the Grievance Committee within three (3) working days following the receipt of the written grievance and shall render a decision in writing within three (3) working days following the meeting with the Grievance Committee. Both the employee's Steward and grievant shall have the right to attend the second step grievance meeting.

Step 3 – Within three (3) working days following the decision in Step 2, at the request of either party the matter shall be submitted to a special pre-arbitration conference. The Senior Vice President of Labor Relations shall meet with the Business Representative for the Union, the Chief Steward and the employee's Steward to review the grievance and the Senior Vice President of Labor Relations shall render a decision in writing within two (2) working days following the meeting.

Step 4 – If, pursuant to the procedure prescribed above, the Union and the Employer shall fail to reach an amicable settlement of the grievance or controversy, then either party may apply for arbitration by notice no later than five (5) working days after the Employer's decision in Step 3. In the event that the Union's Grievance Board will not meet before the deadline for applying for arbitration under Step 4, the Union, upon written notice to the Employer of such fact, delivered within five (5) working days after the Employer's decision in Step 3, shall have an additional twenty-five (25) working days to apply for arbitration. Suspension or discharge cases shall be initially presented in Step 3 within fifteen (15) days of its occurrence.

Ralph Berger, Martin Scheinman and George Nicolau are hereby designated as Impartial Chairmen with the understanding that the Expedited Labor Arbitration procedures of the American Arbitration Association shall be utilized unless either party insists that a particular grievance be referred on a rotation basis to one of the panel members. The Employer and the Union agree to discuss the possibility of adding additional Impartial Chairmen to this panel.

Should no Impartial Chairman be able to serve, then either party may apply for arbitration to the American Arbitration Association for the appointment of an Arbitrator, provided that the Union, in seeking arbitration, applies for the appointment of an Arbitrator to the American Arbitration Association by written notice to the Association and the Employer no later than ten (10) working days after being advised of the Impartial Chairman's inability to serve. The American Arbitration Association shall designate an Arbitrator, unless the parties shall have mutually selected one themselves. The cost of the arbitration shall be borne equally by both parties. The decision of the Arbitrator shall be final and binding upon both parties to this Agreement.

Section 2 – The parties hereto shall designate substitute representatives in such steps of the grievance procedure as they deem necessary. In the event that either the Employer or the Union is unable to provide a substitute on a specific grievance, the time required in each step of the grievance procedure may be extended by the mutual consent of the parties.

If, after Step 3 of the grievance procedure the time permitted for notice of arbitration is not followed, the grievance shall be deemed settled by the third step answer. Conversely, however, in the event that the Employer should fail to answer the grievance in the third step within the time limits therein provided, the grievance shall be regarded as having been settled in favor of the aggrieved.

D000017

The Chief Steward shall be sent two copies of all Employer grievance answers.

**Section 3** – The Employer agrees that it will grant to the Union an amount of paid time not to exceed one hundred eighty (180) hours per month to all Union Stewards or Assistant Stewards, including the Chief Shop Steward, for purpose of handling grievances or other legitimate Union activity; provided that the schedule of time for each steward shall be given to the Labor Relations Department no later than the last work day in the week preceding the week in which the Union activity allowance is to be utilized.

**Section 4** – The Union and the members thereof agree that adequate machinery has been established for the settlement of all disputes, differences and grievances between them arising out of this Agreement. The parties, therefore, agree that the Union and its members shall not, for the duration of this Agreement, strike, slow down or interfere with the orderly conduct of the Employer's business, nor shall the Union or its members picket or cause to be picketed the Employer during the term of this Agreement, to achieve any benefit or advantage relating to conditions of employment whether or not they are covered by the terms hereof.

The Employer agrees there shall be no lockout during the term of this Agreement.

## ARTICLE XIV
### Temporary and Part-Time Employees

**Section 1** – **Temporary Employees.** Temporary employees are those employees engaged to perform a temporary assignment or substitute for a permanent employee who is on leave of absence. The Employer shall post temporary jobs of eight (8) weeks or more duration. If no employee is qualified for the temporary job, the Employer may fill the job from the outside. Temporary employment shall not exceed one hundred and eighty (180) days, except where the temporary assignment is for a permanent employee who is on leave of absence that exceed one hundred and eighty (180) days, in which case the temporary assignment may last for the duration of the permanent employee's leave, or where agency contract prohibits making the temporary employee permanent in that time period or where it is impossible to obtain a permanent replacement. If it is known in advance of employment that the job will not become a permanent one, a temporary employee shall be assigned. The termination of the employment of a temporary employee shall not be subject to the grievance procedure of Article XIII. If a temporary employee becomes permanent, such employee's temporary period shall be applied to said employee's probationary period, provided that the character of the assignment remains unchanged.

Unless impractical to do so, the Union shall be notified three (3) working days in advance of the employment of all temporary employees and the name, date of expected employment, length of expected duration, job classification and department.

When a temporary job becomes a permanent vacancy, it shall be posted as such.

**Section 2** – **Part-Time Employees.** Part-time employees are those normally employed for fifteen (15) or more hours each week. Part-time employees will receive a pro-rata share of PTO, sick leave and holidays for the period of their employment. Part-time employees shall receive such welfare benefits as are set forth in Article XVIII, except that part-time employees hired January 1, 1987 and thereafter shall receive such benefits on an individual coverage basis only. The probationary period for part-time employees shall be one hundred eighty (180) days.

## ARTICLE XV
### Severance Pay

(a) Employees who are laid off for lack of work, or due to a reduction in the work force, shall receive one (1) week's severance pay for each year of service. From this sum any severance pay previously received by the employee will be deducted. Severance pay shall be calculated at the employee's regular salary in effect at the time of the layoff.

(b) Employees who are laid off for lack of work, or due to a reduction in the work force, may elect to continue health, dental and optical coverage under the provisions of the Consolidated Omnibus Budget Reconciliation Act, as amended ("COBRA"). For GHI legacy employees who are laid off after November 19, 2009, the Employer shall pay the premium cost for individual coverage and dependent children, if applicable, for a period equal to the number of weeks that he/she is entitled to receive severance pay, as calculated in accordance with the formula set forth in this section, or until he/she is eligible for benefits from another employer or by other means, whichever occurs first up to a maximum of twenty-six (26) weeks. The employee will remain responsible for applicable co-pays during the period when the Employer is paying the premium cost. Following the period during which the Employer pays the premium cost, the employee is eligible to continue such benefits coverage by his/her payment of the full premium cost and his/her full payment of the applicable administrative fee and as otherwise specified by COBRA.

D000018

(c) HIP legacy employees will be grandfathered under the HIP severance Article XII Section 5 as set forth in the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006.

## ARTICLE XVI
### Miscellaneous

**Section 1** – No employee shall be discriminated against in any manner because of activities as a member of the Union.

**Section 2** – Only business essential for the harmonious relations between the parties may be conducted on the Employer's time and premises when necessary.

**Section 3** – In the event any employee resigns or is laid off, the Employer, upon request, agrees to furnish a statement to the employee or prospective employer as to the character of service rendered by the employees involved.

**Section 4** – The Employer agrees that medical data concerning its employees received by the Employer as part of its insurance operations shall be classified as confidential, and its use restricted to such insurance operations.

No inquiry or information shall be released that would violate any applicable federal or state or city equal employment opportunity law or regulation. The area within the Company where employee medical records and data are maintained shall be private and secured and available only to employees who handle employee claims and to authorized employees who are required to have such information in the performance of their duties.

**Section 5** – The Employer agrees to meet with a Safety and Health Committee of the Union from time to time to discuss matters relating to the safety of the employees.

**Section 6** – The Employer will provide a meeting room to the Union for the purpose of its holding meetings for new employees, shop stewards' seminars or other purposes which will create a better relationship between the Union, the Employer and employees.

**Section 7** – Non-bargaining unit employees shall not perform work normally or regularly performed by employees in the bargaining unit, except that:

(a) managers and supervisors in claims adjustment units shall do such work as necessary to initiate, coordinate and monitor the work flow process and to prepare and assign the work to employees.

(b) such work may be performed for training and instructional purposes; for audit of work performance and development of new processes; for such experimental purposes as may be necessary for the efficient operation of the company; and during emergencies. Emergencies must be declared and reported to the Chief Shop Steward or the Assistant Chief Shop Steward.

**Section 8** – In no event shall there be more than one (1) Steward and one (1) Assistant Steward for each forty (40) bargaining unit employees. The Union must maintain with the Labor Relations Department a current list of its Stewards and Assistant Stewards and the names of such Stewards or Assistant Stewards must be on such list in order for the union to invoke the requirements of this section. The Assistant Department Stewards may act only in the absence of the Department Steward.

**Section 9** – The company will use its best efforts, within its operational needs, to provide tables and chairs in a designated area for use by the employees during the lunch break.

**Section 10** – The Company shall establish a Contract Supplemental Training Forum through which Service Representatives will be trained in various provisions of any new health contracts and revised provisions of standard health contracts within four (4) weeks of the initial effective date of the contract. The Forum training shall cover such topics as 1) definitions and terminology, 2) contract limitations, 3) the subscriber's rights under ERISA, 4) contract exceptions, 5) covered expenses, 6) and non-covered services.

**Section 11** – **Information to the Union.** The Employer agrees to supply the Union with the name, address, salary, date of hire and classification of each full-time and part-time employee covered by this Agreement within the thirty (30) days of his/her date of hire. Thereafter, the Union shall be notified of all resignations, retirements, deaths, and dismissals on a quarterly basis.

**Section 12** – **Uniforms.** An employee in a Housekeeper, Foreperson, Handyperson or Maintenance Mechanic Position required by the Employer to wear a specified uniform (i.e. shirt and pants) shall be provided five (5) such uniforms. Two (2) uniforms may be traded in after each employment year based upon the Employer's evaluation of replacement need. Uniforms issued by Employer are to be utilized solely for work authorized by the Employer. The Employer, at its expense, shall schedule on a weekly basis the laundering of uniforms (pick-up of soiled and return of clean) turned in by an employee. All uniforms provided by the Employer shall remain its property and each employee

D000019

upon leaving the Employer's employ, upon promotion or otherwise obtaining a Position not requiring a uniform shall turn in all uniforms provided to him/her or be required to pay an appropriate amount for their replacement.

**Section 13 – Learning Institute.** The Employer agrees that all members of the bargaining unit may participate in programs offered by the EmblemHealth Learning Institute. Employees will be able to participate in the following:

- Learning at Work – Courses offered by Learning & Development including instructor-led and online courses that enable employees to gain job-related knowledge and maximize their performance. This is on-the-job training and requires a manager's approval.

- Learning on Your Own – Employees may learn on their own initiative during non-work time to further their professional development. No manager approval is necessary when working from your work PC. Access any of our online course offerings during the hours of 7-9am, 11am-2pm (during your permitted lunch break only) and 5-9pm. Use of this learning option will be monitored. To continue to access the Learning on Your Own feature and to avoid any corrective measures, access may only be during an employee's non-work hours.

**Section 14 –** The Company agrees to provide a place where an injured, ill or disabled employee may stay pending the arrival of an ambulance or an individual to escort them. Before leaving his/her work area, the employee must obtain permission from his/her Supervisor to leave the workplace, and provide the Supervisor with the name and phone number of the individual or transportation service who will be picking up the employee and the expected time of pick up.

**Section 15 – Service Awards.** The Employer shall establish a Service Award Program to recognize HIP legacy employees who have attained substantial years of service [e.g., ten (10) years but less than fifteen (15) years of service; fifteen (15) years but less than twenty (20) years of service; twenty (20) years but less than twenty-five (25) years of service; and more than twenty-five (25) years of service].

## ARTICLE XVII
### Present Conditions of Employment

Any conditions of employment not covered by this Agreement which are beneficial to employees, and which are now in effect as a regular and authorized Company practice, shall be continued during the life of this Agreement unless there is good cause for their withdrawal. Either party may demand arbitration with respect to a dispute as to whether good cause exists.

## ARTICLE XVIII
### Welfare Benefits and Pensions
### Section 1

(a)  GHI Legacy Employees

(i)  The health insurance benefits currently in effect as provided in Article XVIII Section 1(a) of the EmblemHealth-Local 153 Collective Bargaining Agreement effective November 19, 2009 covering the Clerical Bargaining Unit ("GHI Health Benefits") including co-pays and premium cost-sharing shall continue in effect during the term of this agreement, except as amended herein, for all employees employed and covered by GHI Health Benefits as of the effective date of this agreement

GHI legacy employees shall have option to be insured under GHI Preferred Plus Dental ("GHI Preferred Plus"), at the premium difference between GHI Preferred Plus and GHI Preferred, at the employee's premium cost except as set forth in subparagraphs (ii)B and (iii)B below. Each regular full-time employee may thereafter elect, during each Employer-specified open enrollment period immediately preceding the applicable Plan Year, dental coverage for himself/herself and his/her eligible family members under either GHI Preferred, at the Employer's premium cost except as set forth in subparagraphs (ii)B and (iii)B below, or GHI Preferred Plus, at the premium difference between GHI Preferred Plus and GHI Preferred, at the employee's premium cost by payroll deduction. Where the employee elects GHI Preferred Plus he/she must provide the Employer with his/her written authorization to prior to the end of the open enrollment period to pay the applicable premium amount for GHI Preferred Plus coverage by payroll deduction from his/her weekly pay, including where he/she is on an unpaid leave, nonetheless remains obligated to make payment to the Employer for such dental coverage (i.e., GHI Preferred Plus) during his/her period of absence, in a manner determined by the Employer and, upon his/her return from absence, payment for such dental coverage by payroll deduction shall immediately resume.

(ii)  Effective January 1, 2013, All employees hired on or after May 14, 2002 covered by GHI Health Benefits will be subject to the following co-pays and Premium Cost-Sharing Plan:

D000020

A. Co-Pays

1. Home/Office/X-ray/Lab $15 per visit.

2. ER – $50 per visit – waived if admitted.

3. Prescription Drugs:  Formulary only

- Generic/Brand:  Retail/$0 generic/$20 Brand (for a 30 or 60 day supply)
- Mail Order – $0 generic/$40 Brand (for a 90 day supply)
- Non formulary: No coverage unless medically necessary. If medically necessary, the above co-pays apply.

B. Premium Cost-Sharing Plan

Premium cost sharing as follows:

| | | | |
|---|---|---|---|
| Individual | 5% | Employee/Spouse | 7% |
| Employee/Children | 5% | Family | 7.5% |
| | | (effective 1/1/14: Family | 8%) |

(iii) Effective January 1, 2013, All employees covered by GHI Health Benefits who were on the payroll as of May 13, 2002 or before will:

A. be subject a co-pay for non-medically necessary Lifestyle Drugs only as follows:

Retail – $25. Effective January 1, 2013: $40.

Mail Order – $50. Effective January 1, 2013: $80.

A list of "Lifestyle Drugs," evaluated and determined by the Company's Chief Medical Officer on an ongoing basis, is attached hereto and subject to change. However, the list of "Lifestyle Drugs" may contain only those drugs that are defined as "Lifestyle Drugs" to GHI subscribers generally.

B. contribute towards the premium cost for Preferred Dental on a pre-tax basis at the rate of 10% of the premium rates, payable on a weekly basis. The company actuary shall, on an annual basis, determine the dollar amount to which the percentage listed above will convert. Annual changes will be effective January 1 of each year.

(b)  HIP Legacy Employees

(i)  The health insurance benefits currently in effect as provided in Article XVIII Section 1(b) of the EmblemHealth-Local 153 Collective Bargaining Agreement effective November 19, 2009 covering the Clerical Bargaining Unit ("HIP Health Benefits") including co-pays and premium cost-sharing shall continue in effect during the term of this agreement, except as amended herein, for all employees employed and covered by HIP Health Benefits as of the effective date of this agreement.

(ii)  January 1, 2013, HIP Prime PPO will not be offered as an option. Employees who have elected this option shall select an option from the options described in the Health Benefits Option Attachment, with the applicable co-pays but with premium cost sharing at the same rates as in place below for Access I option.

Effective January 1, 2013, HIP Access II will not be offered as an option. All HIP legacy employees may elect coverage under the HIP Access I Plan subject to the following co-pays and premium cost sharing:

A. Co-Pays

1. Home/Office/X-ray: $15 per visit

2. ER – $50 per visit – waived if admitted

3. Prescription Drugs:  Formulary only
   Generic/Brand: Retail/$0 generic/$20 Brand (for a 30 or 60 day supply)
   Mail Order – $0 generic/$40 Brand (for a 90 day supply)
   Non formulary: No coverage unless medically necessary. If medically necessary, the above co-pays apply.

   Effective January 1, 2013, the Prescription Drug co-pay will apply to all employees covered by HIP Health Benefits

B. Premium Cost-Sharing Plan

Premium cost sharing as follows:

For HIP legacy employees hired on or after January 1, 2007:

| | | | |
|---|---|---|---|
| Individual | 5% | Employee/Spouse | 7% |
| Employee/Children | 5% | Family | 7.5% |
| | | (effective 1/1/14  Family | 8%) |

D000021

Effective January 1, 2014, for HIP legacy employees hired prior to January 1, 2007:

| | | | |
|---|---|---|---|
| Individual | 4% | Employee/Spouse | 5% |
| Employee/Children | 4% | Family | 6% |

(iii) Eligible Employees Who Retire

The retiree health coverage currently in effect as provided in Article XVI Section 1 B of the HIP 153 Collective Bargaining Agreement effective December 1, 2006, covering the Clerical Bargaining Unit ("HIP retiree health coverage") shall continue in effect for the term of this agreement for all retirees and their surviving spouses, who as of the effective date of this agreement, are receiving benefits under HIP retiree health coverage and for those employees, who as of the effective date of this agreement are covered by HIP Health Benefits and who will vest in the HIP Local 153 Pension Plan by December 1, 2009 provided the employee ultimately meets the age and service requirements for this benefit. Retirees, who as active employees were subject to premium cost sharing and co-pays, shall pay the same percentage of premium cost-sharing and co-pays that active HIP legacy employees pay, which may change from time to time.

Employees retiring on or after the effective date of this Agreement, provided the employee ultimately meets the age and service requirements for this benefit, shall receive the following coverage:

a. Pre-Medicare eligibility

- Employees enrolled in HIP Access I shall upon retirement continue coverage in that program at the same percentage of premium cost sharing (the premium shall be adjusted to reflect that dental and optical coverage are not included) and co-pays as active HIP legacy employees pay, which may change from time to time.

- Employees enrolled in any of the other health coverage options shall upon retirement be covered by the EmblemHealth PPO option at the same percentage of premium cost sharing (the premium shall be adjusted to reflect that dental and optical coverage are not included) and co-pays as active employees covered by that Plan pay, which may change from time to time.

b. Medicare Eligibility

Upon eligibility for coverage under Medicare, the following coverage shall apply:

- Eligible retirees who reside within the HIP service area shall be covered by the HIP VIP Plan for retirees, at the same percentage of premium cost sharing and co-pays as active employees pay for the EmblemHealth PPO, which may change from time to time.

- Eligible retirees who reside outside of the HIP service area shall be covered by the GHI Medicare PPO, or similar coverage, at the same percentage of premium cost sharing and co-pays as active employees pay for the EmblemHealth PPO, which may change from time to time.

(iv) Hearing Aid – The Employer shall provide a full-time employee, effective the first of the month following his/her attainment of regular employee status, reimbursement of up to a maximum of two hundred ($200.00) dollars in total per eligible family (i.e., the eligible employee and his/her eligible dependent(s)) for a hearing aid, during the life of the Contract. In instances where a husband and wife are both regular full-time employees and each eligible for plan participation, only one such eligible employee shall be able to claim eligible dependent children.

(c) Employees hired after November 19, 2009 shall become eligible for health, dental and optical benefits on the first day of the month after completing six (6) months of employment.

Such employees shall select a health coverage plan from among the three options described in the Health Benefits Options Attachment. Thereafter, each year in or about December during open enrollment, such employees shall select a health coverage plan from among the three options described in the Health Benefits Options Attachment. The company actuary shall, on an annual basis, determine the dollar amount to which the percentages listed on the chart will convert. Annual changes will be effective January 1 of each year.

Delete GHI PPO Option. Effective January 1, 2013, the following premium cost sharing shall be applied to the three (3) remaining options:

CompreHealth EPO

| | |
|---|---|
| Individual | 5% |
| Employee/Children | 5% |
| Employee/Spouse | 6% |
| Family | 8% |

D000022

EmblemHealth EPO

| | |
|---|---|
| Individual | 7% |
| Employee/Children | 7% |
| Employee/Spouse | 8% |
| Family | 10% |

EmblemHealth PPO

| | |
|---|---|
| Individual | 8% |
| Employee/Children | 8% |
| Employee/Spouse | 10% |
| Family | 11% |

(d) Employees covered by either the GHI Health Plan or the HIP Health Plan described in paragraph (a) or (b) above may elect to forego such coverage and select from among the three options in the Health Benefits Options Attachment, with the applicable co-pays and premium cost-sharing. However, once such election has been made, the employee may not thereafter elect to return to coverage under either the GHI Health Plan or the HIP Health Plan.

(e) In the event that the Employer determines, in its sole discretion, that compliance with the Patient Protection and Affordable Care Act, including any amendments thereto and/or the regulations promulgated thereunder (collectively "PPACA"), require that the Employer amend or change in any manner any of the health plans covered by this Section or to the benefits provided thereunder, the Employer will notify the Union as far as is in advance of implementation as is practicable under the circumstances, and upon request, meet with the Union to discuss the amendments and changes. Nothing herein shall prohibit or prevent the Employer from implementing any amendments or changes required by PPACA.

## Section 2

### OPTICAL

All employees will be covered by the Davis Vision Fashion Optical Plan. New hires will be covered after completing the waiting period described in Section 1 (c) above.

## Section 3

### LIFE INSURANCE

(a) All full-time employees, effective the first of the month after completing the probationary period, shall be insured under a group life insurance program in an amount equal two (2) times his/her current regular annual salary and otherwise in accordance with provisions of the group life insurance policy. The Employer agrees to pay the full premium for the group life insurance benefit.

A regular full-time employee shall, subject to the carrier's terms and conditions, be provided the opportunity to purchase, at his/her full cost, supplemental life insurance. Payment by such an employee for supplemental life insurance shall be via payroll deduction. Effective January 1, 2013, the supplemental life insurance available for purchase at the employee's full cost shall be the same for all employees: 1x to 5x of base annual earnings to a maximum of $400,000.00.

An eligible regular employee insured under the Employer's group life insurance program who separates from employment shall have the right to convert the life insurance provided to him/her by the Employer's group life insurance program to an individual policy pursuant to the terms specified by the life insurance carrier.

(b) Eligible Employees who retire:

(i) HIP legacy employees who terminate employment on or after January 1, 2010, and who meet the eligibility requirements for retiree life insurance coverage provided for under Article XVI, Section 2 B of the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006 will be entitled to retiree life insurance as set forth in that Agreement.

(ii) GHI legacy employees who terminate employment on or after January 1, 2010 and who meet the eligibility requirements for retiree life insurance coverage provided for under Article XVIII, Section 1(e) of the GHI-Local 153 Collective Bargaining Agreement effective October 5, 2005 will be entitled to the retiree life insurance benefit as set forth in that Agreement.

(iii) Employees hired on or after the effective date of this Agreement who terminate employment on or after January 1, 2010 at age sixty-five (65) or above, with at least ten (10) years of continuous service prior to the date of termination, who are fully vested under one of the Employer's Pension Plans, and who retire from the Company on pension at the time of termination shall be provided seventy-five hundred dollars ($7,500.00) of life insurance under a group life insurance program offered by the Employer. The Employer agrees to pay the full premium for such insurance.

D000023

## Section 4

Long term disability shall be provided to employees with five (5) or more years of service.

HIP legacy employees shall continue to have their long term disability benefit as provided for in Article XVI Section 5 of the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006.

## Section 5

Accidental death and dismemberment insurance shall be provided. Effective January 1, 2013, the supplemental AD&D coverage available for purchase at the employee's full cost shall be available for purchase by GHI legacy employees.

## Section 6 – Pension

(a) GHI –Legacy Employees. The Pension Plan currently in effect and described as the Local 153 - GHI Pension Plan ("GHI Pension Plan") as provided in Article XVIII Section 1(i) of the GHI – Local 153 Collective Bargaining Agreement effective October 5, 2005 covering the Clerical Bargaining Unit shall continue in effect during the life of this Agreement. All GHI employees on the payroll as of November 19, 2009 shall continue to participate in the GHI Pension Plan. No other employees shall be or become eligible to participate in the GHI Pension Plan.

(b) HIP – Legacy Employees. The HIP Local 153 Pension Plan effective December 1, 1969, a contributory plan, established between HIP and Local 153 ("HIP Pension Plan") as provided in Article XVIII of the HIP – Local 153 Collective Bargaining Agreement effective December 1, 2006 covering the Clerical Bargaining Unit shall continue in effect during the life of this Agreement. All HIP employees on the payroll as of November 19, 2009 shall continue to participate in the HIP Pension Plan. No other employees shall be or become eligible to participate in the HIP Pension Plan.

(c) For Employees hired after November 19, 2009 the Employer shall establish an EmblemHealth Cash Balance Pension Plan for Clerical Employees.

## Section 7 – Long Term Care Insurance

Effective January 1, 2013, the long term health care insurance shall be made available to all employees who elect to pay for such long term care insurance at their full expense.

## Section 8 – 401(k) Plan

Effective January 1, 2010, the Company shall establish a EmblemHealth 401 (k) Savings Plan for its clerical bargaining unit employees with a company match of up to $300 per year. Employees will be eligible to participate upon attaining the age of twenty-one (21) and completion of one (1) year of employment. Entry dates into the plan shall be January 1, April 1, June 1 and October 1 of each year.

## ARTICLE XIX
### Technological Changes

**Section 1** – In the event the Employer desires to introduce technological changes in the form of new methods of performing present operations through office machinery, the Employer agrees beforehand to inform the Union of the proposed technological changes. The Union shall be given an opportunity to confer with the Employer regarding the proposed changes, and make such suggestions as the Union deems proper in the circumstances. The Employer shall, however, have the absolute right in its discretion to install any such technological changes in office machinery, and establish a job title and job description.

**Section 2** – The Employer shall, after defining the duties of any new or changed job as a result of the installation of any such new machinery. slot the job within an appropriate Labor Grade, as defined in this Agreement. If the Union disagrees with the Labor Grade in which any new job is slotted, it may file a grievance and submit same to arbitration within five (5) days after written notice to the Union of the Labor Grade within which the new or changed job was slotted.

**Section 3** – The Employer agrees to institute a training program for those present employees who wish to accept employment for the job, affected or created by technological changes, provided said employees possess the requisite qualifications established by the Employer for the job.

**Section 4** – No employee with three (3) years of service shall be laid off from the employee's job by reason of technological changes referred to herein, provided that such employee possesses the requisite qualifications for another job.

**Section 5** – In the administration of this Article of the Agreement the Company shall continue the same practice in providing a job for an employee displaced as a result of the installation of automated machinery.

D000024

The practice is described as follows:

1) An employee so displaced will be transferred to another job which such employee is qualified to perform or which, by training, said employee may be qualified to perform.

2) If the employee is transferred to a job in a lower grade, such employee will continue to receive the wage rate and the progression increases up to the maximum of said employee's displaced job.

3) Where two or more employees are about to be transferred to jobs in different and lower labor grades, the employee with the greatest seniority will be considered for the higher labor grade if such employee is qualified to perform the work in that job, and the employee with lesser seniority will be given the lower grade job if such employee is qualified to perform that job.

4) In the event that a displaced employee is to be transferred to a job in a higher labor grade, such employee shall be paid the rate of the higher labor grade provided, however, that such transfer shall be subject to the bidding procedure and the job filled in accordance with the provisions of Article VII.

Section 6 – Any violations of the provisions of this Article may be submitted to the grievance procedure, including arbitration.

## ARTICLE XX
### Non-Discrimination

The Union and the Employer jointly agree that they will not discriminate against any employee because of his or her actual or perceived race, creed, religion, color, national origin, gender, sex, age, marital status, disability or handicap, sexual orientation, citizenship status, or because he or she is a veteran of the United States Armed Forces, or he or she has a known relationship with a person who is within one of the aforementioned protected classes.

EmblemHealth's management does not tolerate any form of discrimination on any basis listed above, or any other discriminatory conduct on the part of any of its employees. EmblemHealth's management wants and insists upon a workplace free from discrimination in every aspect and we will continue to take the strongest measures to achieve that objective.

## ARTICLE XXI

This Agreement contains all the terms and conditions agreed upon between the parties hereto; and the Union agrees that it shall not, during the term hereof, make any demands nor shall the Employer have any obligation to bargain concerning any demands for additions to, changes in, or modifications of conditions of employment, including those covered by this Agreement.

## ARTICLE XXII
### Duration and Renewal

This Agreement shall be effective as of January 1, 2012 and shall continue in full force and effect until the 31st day of December, 2014 and from year to year thereafter on the same terms, or as then or thereafter modified, unless terminated as of the expiration date or on any anniversary thereof, by either party giving the other written notice of termination by registered letter not less than ninety (90) days prior to the date of expiration or anniversary thereof. The parties agree that collective bargaining negotiations for a renewal agreement shall commence no later than October 1, 2014.

D000025

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed by their respective Officers, and their seals to be affixed the day herein first above written:

EMBLEMHEALTH LLC

Frank Branchini
President

Thomas A. Nemeth
Senior Vice President

OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL 153, AFL-CIO

Michael Goodwin
Business Manager

Carol Cramer
Shop Steward

Richard Lanigan
Secretary – Treasurer

David Ettenberg
Shop Steward

Myra Hepburn
Business Representative

Yvette Jackson
Shop Steward

Aura Almonte
Chief Shop Steward

Tomolita Monroe
Shop Steward

Guillermo Fiallo
Chief Shop Steward

Deardra Moore
Shop Steward

Nancy Flores
Assistant Chief Shop Steward

Stephanie Parris
Shop Steward

Dianne Shuler
Assistant Chief Shop Steward

Bruce Shine
Shop Steward

Eleanor Campbell
Assistant Chief Shop Steward

Suzette Vieira Peele
Shop Steward

Grace Adams-Cunningham
Shop Steward

Maurice Vosges
Shop Steward

Michael Adoniz
Shop Steward

Anthony Walters
Shop Steward

Thijuana Booth
Shop Steward

Stephen Weisman
Shop Steward

Marva Brown
Shop Steward

46

Ms. Myra Hepburn
Business Representative
Office and Professional Employees International Union
AFL-CIO Local 153
265 West 14th Street
New York, N.Y. 10011

Dear Ms. Hepburn:

The Employer shall not require any employee in the bargaining unit to evaluate the work performance of another bargaining unit employee or recommend action against such an employee in the performance of the employee's job.

Bargaining unit employees shall not be assigned to perform any duties which are ordinarily the function of supervisory personnel except in cases of work distribution and the maintenance of work distribution records.

Very truly yours,

Thomas A. Nemeth,
Senior Vice President
Labor Relations
EmblemHealth Services Company LLC

47

D000026

## SIDE LETTER ON HIP LEGACY EMPLOYEES PERFORMING MANAGEMENT WORK

The parties agree that in the event that a HIP legacy employee is asked to perform management work in the circumstances defined in Article VII, Section 9 of the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006, the differential set forth in Article VII, Section 9 shall be paid.

**EmblemHealth**                    **Local 153**


By: Thomas A. Nemeth               By: Myra Hepburn
Senior Vice President, Labor Relations     Business Representative

Ms. Myra Hepburn
Business Representative
Office & Professional Employees International Union
AFL-CIO, Local 153
265 West 14th Street
New York, N.Y. 10011


Dear Ms. Hepburn:

Effective January 1, 2010 the following policy shall apply to the application of Family Medical Leave Act (FMLA) for use of accrued sick and paid time off (PTO).

- If FMLA is being used for the employee's own sickness, the employee must use all available paid sick time as part of the leave but will not be required to use PTO time.

- If FMLA leave is taken for reasons other than the employee's own illness, the employee will be have the option of using accrued PTO time but will not be permitted or required to use sick time as part of the leave.

- FMLA leaves and leaves under the Collective Bargaining Agreement shall run concurrently as appropriate to the type of leave.

The company agrees that there shall be a uniform application of the foregoing and that the policy shall be published.


Very truly yours,


Thomas A. Nemeth
Senior Vice President
Labor Relations
EmblemHealth Services Company LLC

D000027

Mr. Michael Thompson
Senior Business Representative
Office & Professional Employees International Union
AFL-CIO, Local 153
265 West 14th Street
New York, N.Y. 10011


Dear Mr. Thompson:

Effective as soon as practicable after the ratification of the Settlement Agreement dated –May 10, 2002, the company agrees that the Attendance Year under the Attendance Policy will be triggered by an absence which can be either a half or full day absence.

The policy will be amended accordingly and redistributed to all employees.


Very truly yours,


Thomas A. Nemeth
Senior Vice President
Labor Relations
EmblemHealth Services Company LLC

## MEMORANDUM OF UNDERSTANDING ON ABSENTEEISM AND LATENESS

The Union may grieve the Company's Attendance Policy if the same is unreasonable.

Ms. Myra Hepburn
Business Representative
Office & Professional Employees International Union
AFL-CIO, Local 153
265 West 14th Street
New York, NY 10011

Dear Ms. Hepburn:

Effective January 1, 2010, the Attendance Policy shall apply to all the employees in the bargaining unit as defined in Article I, Section 1 of the Collective Bargaining Agreement.

The Attendance Policy will be amended to reflect that employees will not be immediately placed on Attendance Probation unless he/she has first been counseled regarding his/her absences.

The Attendance Policy will be amended accordingly and redistributed to all employees.


Very truly yours,


Thomas A. Nemeth
Senior Vice President
Labor Relations
EmblemHealth Services Company LLC

## SIDE LETTER OF AGREEMENT

### Re: Special Retirement Program for GHI Legacy Employees

The parties agree that the Company shall provide the continuing health insurance coverage described below to employees employed by GHI as of the effective date of this Side Letter of Agreement ("GHI Legacy Employees") who meet the following criteria:

- retires pursuant to the terms of the GHI Pension Plan on or after January 1, 2013; and

- retires before December 31, 2013; and

- is at least 62 years of age and has at least 30 years of service with GHI/ EmblemHealth at the time of retirement.

For employees who meet the foregoing requirements, the Company shall continue, at its cost, individual health insurance until the employee reaches age 65 and becomes eligible for Medicare. If, at the time of retirement, the employee had coverage for his or her spouse under the Company health insurance plan, that coverage shall also continue until the employee reaches age 65 and becomes eligible for Medicare.

It is expressly agreed by the parties that except for continuation of health insurance coverage to eligible employees as provided above, this Special Retirement Program will expire on December 31, 2013 and that no employee retiring after that date shall be eligible for benefits under the Program.

Dated:   April 4, 2012


Local 153 OPEIU                    EmblemHealth Inc.

_____                    _____

D000029

## SIDE LETTER OF AGREEMENT

Re: Albany, Syracuse and Buffalo

1. The parties agree that the following modifications shall apply to bargaining unit employees in the Albany, Syracuse and Buffalo offices.

Article II Section 1 (A)

(a) Effective and retroactive to January 1, 2012

| Labor Grade | MINIMA | | MAXIMA | |
|---|---|---|---|---|
| | Weekly | Hourly | Weekly | Hourly |
| C | 511.11 | 14.603 | 952.88 | 27.225 |
| D | 546.28 | 15.608 | 1010.22 | 28.863 |
| E | 573.89 | 16.397 | 1055.19 | 30.148 |
| F | 607.59 | 17.360 | 1125.09 | 32.145 |
| F-a | 607.59 | 17.360 | 1143.09 | 32.660 |
| G | 636.70 | 18.192 | 1172.50 | 33.500 |
| H | 667.33 | 19.066 | 1222.44 | 34.927 |
| I | 694.90 | 19.854 | 1267.28 | 36.208 |
| J | 722.48 | 20.643 | 1312.31 | 37.495 |

(b) Effective January 1, 2013

| Labor Grade | MINIMA | | MAXIMA | |
|---|---|---|---|---|
| | Weekly | Hourly | Weekly | Hourly |
| C | 511.11 | 14.603 | 974.32 | 27.838 |
| D | 546.28 | 15.608 | 1032.95 | 29.513 |
| E | 573.89 | 16.397 | 1078.93 | 30.827 |
| F | 607.59 | 17.360 | 1150.40 | 32.869 |
| F-a | 607.59 | 17.360 | 1168.81 | 33.395 |
| G | 636.70 | 18.192 | 1198.88 | 34.254 |
| H | 667.33 | 19.066 | 1249.94 | 35.713 |
| I | 694.90 | 19.854 | 1295.79 | 37.023 |
| J | 722.48 | 20.643 | 1341.84 | 38.338 |

(c) Effective January 1, 2014

| Labor Grade | MINIMA | | MAXIMA | |
|---|---|---|---|---|
| | Weekly | Hourly | Weekly | Hourly |
| C | 523.89 | 14.968 | 998.68 | 28.534 |
| D | 559.94 | 15.998 | 1058.77 | 30.251 |
| E | 588.24 | 16.807 | 1105.90 | 31.597 |
| F | 622.78 | 17.794 | 1179.16 | 33.690 |
| F-a | 622.78 | 17.794 | 1198.03 | 34.229 |
| G | 652.62 | 18.646 | 1228.85 | 35.110 |
| H | 684.01 | 19.543 | 1281.19 | 36.605 |
| I | 712.27 | 20.351 | 1328.18 | 37.948 |
| J | 740.54 | 21.158 | 1375.39 | 39.297 |

2. Article XIII Section 1- The special pre-arbitration conference and the arbitration proceeding shall take place in New York City.

3. Article VII-Promotions, Article XI-Layoffs, XII-Seniority and Article XIX-Technological Changes. Employees at each of the Company's locations in Albany, Syracuse, and Buffalo shall continue to be considered separately from EmblemHealth employees at other locations for the purpose of promotions, postings, layoffs, recall or technological changes.

Dated: April 4, 2012

Local 153 OPEIU                                    EmblemHealth Inc.

_____              _____

**EMBLEMHEALTH – LOCAL 153 OPEIU**
**VOLUNTARY SETTLEMENT AGREEMENT**

After discussion among the parties, the parties agree that employees who are rehired from the recall list into a job classification in a higher labor grade, as opposed to being recalled into their former job classifications pursuant to the recall procedure under Article XI, Section 3 of the Collective Bargaining Agreement ("CBA"), shall be entitled to a promotional increase under Article VII, Section 2 of the CBA as follows:

1. The parties agree that the Employer is under no obligation to rehire employees from the recall list into job vacancies other than as required by Article XI, Section 3 of the CBA.

2. As a courtesy, the Employer will mail to employees on the recall list copies of all job postings in job classifications other than those in which employees have recall rights. The Employer will allow employees on the recall list to apply for these vacancies and all the terms and conditions of Article VII, Section 1 of the CBA shall apply.

3. If an employee on the recall list applies for and is hired into a job classification in a labor grade that is higher than the labor grade of the job classification from which he/she was laid off, he/she will be entitled to a promotional increase pursuant to Article VII, Section 2 of the CBA. The employee will be on a probationary period pursuant to Article VII, Section 3 of the CBA. If an employee fails his/her probationary period, he/she will go back on the recall list without any extension of recall rights under Article XI, Section 3 of the CBA.

4. Once an employee passes his/her probationary period in his/her new job classification, he/she will be required to return to the Employer the portion of his/her severance payment from the layoff that exceeds the amount of weeks that the employee was out of work. The employee will be entitled to keep the remainder of the severance payment, however, such amount shall be deducted from future severance payments in the event of a subsequent layoff. Any severance amounts returned to the Employer under this paragraph will not be deducted from any future severance payment.

5. Once an employee's recall rights under Article XI, Section 3 of the CBA expire, the employee will no longer have the right to apply for open jobs under Article VII, Section 1 of the Collective Bargaining Agreement. Should such a former employee apply for an open position he/she will be treated as external candidate. If such an employee is hired, he/she shall be treated as a new hire for all purposes.

Dated:  New York, NY
        November 19, 2009

EMBLEMHEALTH INC.          O.P.E.I.U, LOCAL 153

By: _____        By: _____
    Thomas A. Nemeth, SVP       Myra Hepburn, Business Representative

                           By: _____
                               Willie Fiallo, Chief Shop Steward

D000031

## SIDE LETTER OF AGREEMENT

To the extent that any benefits for part-time HIP legacy employees are grandfathered, the provisions of Article XV Section 20 of the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006 shall apply.

## SCHEDULE OF CLASSIFICATIONS

**LABOR GRADE C**
Housekeeper
Junior Analyst
Mail Clerk

**LABOR GRADE D**
Claims Control Clerk
Clerk, COB
Clerk, Jr.
Clerk, Jr. (Acct.)
Clerk, Jr. (General Records)
Clerk, Jr. (Grp. Ins.)
Clerk, Jr. (Memb.)
Corrections Clerk
Imaging Clerk
Input Operator
Mail Clerk, Sr.
Mail/Stockroom Clerk
Receptionist-Clerk
Receptionist, Customer Service
Stato Clerk

**LABOR GRADE E**
Accounting Clerk, Jr.
Administrative Clerk
Approver
COB Analyst
Clerk, Sr. (Hosp.)
Clerk, Sr. (Memb.)
Control Clerk
Data Entry Clerk (Treasury)
File Clerk
Intake Specialist
Medical Records Clerk, Sr.
Purchasing Clerk
Senior Clerk
Senior Enrollment Clerk
Senior Typist
Suspense Operator

**LABOR GRADE F**
Approval Clerk
Approver, Sr. (Dent., Hosp., Med.)
Chief Mail Clerk
Clerk II, Sr. (Provider Ops)
Clerk III
COB Analyst, Sr. change to COB Analyst

Control Clerk (Acct.) – change to Control
&amp; Support Clerk
Control Specialist, Sr.
Correspondence Expeditor
Correspondent, Sr.
Data Entry Clerk (Credentialing)
Data Review Clerk
Handy Person
Handy Person Assistant
Intake Specialist ( Sr.)
Machine Operator (Reproduction)
Mail Desk Clerk
Mail Expeditor
Messenger/Driver
Provider Information Clerk
Secretary/Coordinator (Concurrent Rev &amp;
Adverse Determ)
Secretary II
Senior Receiving Clerk
Staff Assistant, Jr.

**LABOR GRADE F-a**
Adjuster, Claims, Sr.

**LABOR GRADE G**
Accounting Clerk III (Treasury) III, IV
(Accounts Payable)
Audit Clerk
Billing Customer Advocate
Clerk, Sr. (Memb.)
Customer Service Representative (Service)
Customer Service Representative, Bilingual
(Service)
Data Control Clerk II
Delegation Encounter Senior Examiner
Enrollment Specialist A
Group Relations Representative
Handy Person/Locksmith
Medical Clerk, Sr.
Medicare Reconciliation Spec
Member Service Rep
MH Claims Coordinator
MH Service Representative
Professional Relations Representative
Program Administration Representative
Provider Correspondence Approver
Provider Relations Review Specialist

D000032

Purchasing Procedure Specialist
Secretary/Coordinator (Provider Relations)
Senior Medical Clerk
Service Representative
Staff Assistant
Subscriber Relations Representative
Subscriber Relations Representative
 (Hospital)
Telephone Rep/Correspondent

LABOR GRADE H
Accounting Clerk II, IV (Treasury)
Accounting Control Clerk
Accounting Research Clerk III
Administration Clerk (Marketing)
Analysis Clerk (Memb.)
Billing Account Specialist
CHIP Coordinator
Coordinator, Care Management
Customer Service Advocate
Direct Debit Control Clerk
Equipment & Appliance Specialist
GAP Eligibility Specialist
Grievance & Appeals Coordinator
Help Desk Coordinator
Medicare Reconciliation Clerk
Purchasing Assistant
Purchasing Assistant Buyer
Q-Care Coordinator
Reconciliation Clerk (Memb.)
Secretary/Coordinator
Section Chief (Corp Services – Office Serv.)
Senior Accounts Payable Clerk
Senior Audit Clerk
Senior Billing Account Specialist
Sr. Customer Service Representative
Staff Assistant (Claims)
Staff Assistant, Sr.
Staff Assistant – Subscriber Walk-in Center
Subscriber Relations Representative, Sr.
Subscriber Relations Representative, Sr.
 (Hospital)
Systems Representative
Travel & Expense Audit Clerk

LABOR GRADE I
Account Service Representative (Group
 Service Rep)
Computer Operator
Data Support Assistant
Enrollment & Billing Representative
 (Memb.)
Enrollment Specialist B
Prov Rel Reimbursement Reviewer
Senior Administrative Clerk
Senior Computer Operator
Staff Assistant
Team Facilitator

LABOR GRADE J
Accounting Clerk V (Treasury)
Cash Receipts Clerk
Computer Operations Supervisor
Enrollment & Billing Representative
Payroll Supervisor
Section Chief
Senior Enrollment Specialist
Sr Reporting & User Support Analyst
Sr. Payroll Staff Assistant

## EXCEPTIONS TO THE SCHEDULE OF CLASSIFICATIONS

| Department Name | Job Title | HIP Grade |
|---|---|---|
| HIP UDC | Claims Imaging Clerk, Sr | 009 |
| Facilities Operations | Unit Chief II | 008 |
| Facilities Operations | Foreperson II | 011 |
| Corp. Services – Office Serv. | Mail Center Supervisor | 011 |
| Enrollment | Quality Assurance Coordinator | 009 |
| Corp. Services – Office Serv. | Sr. Purchasing Proced Specialist | 010 |
| Accounts Payable | Supv. Accounts Payable Audit | 010 |
| Accounts Payable | Supv. Accounts Payable | 011 |
| Marketing Communications | Production Assistant | 012 |
| Marketing Communications | Chief Production Asst | 013 |
| Corporate Accounting | Accountant XI, Sr | 011 |
| Treasury | Accountant XI, Sr | 011 |
| Corp. Acctg & Financial Rptg | Project Accountant II | 012 |
| Medical & Quality Informatics | Report Technician | 012 |
| Corp. Services – Office Serv. | Mail Center Assistant | 012 |

For as long as the incumbent employees remain in the above-referenced job classifications, these jobs will remain in the bargaining unit, but not slotted into a Labor Grade in the Schedule of Classifications. When the incumbent employee leaves a listed position, the Company will evaluate whether to continue the job in its current form, discontinue the position, or change the job. If upon evaluation of the continued or changed job the Company determines the duties of the position fall within those covered under the CBA, the job will be classified into an appropriate Labor Grade pursuant to Article VII, Section 4. If upon evaluation of the continued or changed job the Company determines the duties of the position fall outside of those covered under the CBA, the job will be classified as a non-union position accordingly. The Company agrees to meet with the Union before removing any such position from the bargaining unit to discuss the basis for its decision.

D000033

## EXCEPTIONS TO THE SCHEDULE OF CLASSIFICATIONS – GHI LEGACY NON-UNION POSITIONS

| Department Name | GHI Legacy Job Title |
|---|---|
| Government Assisted Programs (GAP) | Enrollment Specialist |
| | Enrollment Auditor |
| | Enrollment Assistant |
| | Enrollment Analyst |
| | Eligibility Specialist |
| | Recertification Specialist |
| | Eligibility Coordinator |

For as long as an incumbent GHI legacy employee remains in one of the above-referenced job classifications, these jobs will remain outside of the bargaining unit and not slotted into a Labor Grade in the Schedule of Classifications. When the incumbent employee leaves a listed position, the Company will evaluate whether to continue the job in its current form, discontinue the position, or change the job. If upon evaluation of the continued or changed job the Company determines the duties of the position fall within those covered under the CBA, the job will be classified into an appropriate Labor Grade pursuant to Article VII, Section 4. If upon evaluation of the continued or changed job the Company determines the duties of the position fall outside of those covered under the CBA, the job will be classified as a non-union position accordingly. The Company agrees to meet with the Union to discuss the classification of any such position. If the job is continued without change and the Company determines it should remain outside the bargaining unit, the issue shall be subject to the grievance and arbitration provisions of the CBA.

## MEMORANDUM OF AGREEMENT – PROGRESSIVE JOBS UNDER HIP CBA

The Employer and the Union agree that with regard to the Progressive positions listed on the attached chart, the following will apply:

- HIP legacy employees in any of the job classifications on the chart below as of the effective date of the Agreement who are not at the highest job classification in the progression for that classification, shall retain the right to progress to the next level(s) if and when they meet the current criteria for progressing to the next level(s).

- For purposes of this Memorandum, the Maximum(s) for the job classification(s) in the progressions shall be the Maximum(s) of the Labor Grade which the job classification is listed in the Schedule of Positions/ Labor Grades and Associated Salary Ranges effective December 1, 2008 set forth in the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006.

- Based on the recommendations column in the chart below, the Employer will add the job classifications to the appropriate Labor Grade in the agreed upon Schedule of Classifications, with the exception of the Senior Accountant position.

- The job classification of Senior Accountant shall be added to the agreed upon Exceptions to the Schedule of Classifications.

D000034

## AGREEMENT ON HIP LEGACY PROGRESSIVE JOBS

| Department Name | Job Title | HIP Legacy Labor Grade | Recommendation for EmblemHealth Labor Grade |
|---|---|---|---|
| Anticipated Care | Member Service Rep I | VI | G |
| | Member Service Rep II | VII | G |
| | Member Advocate Rep II | VII | G |
| | Member Advocate Rep III | VIII | G |
| Membership (Billing) | Account Specialist | VII | H |
| | Account Specialist | VIII | H |
| | Billing Account Specialist | VII | H |
| | Billing Account Specialist VIII | VIII | H |
| | E&S Account Specialist VIII | VIII | H |
| | Senior Account Specialist | IX | H |
| | Senior Account Specialist | IX | H |
| | Sr. Billing Account Specialist IX | IX | H |
| Membership (Enrollment) | Enrollment Specialist | VII | G |
| | Enrollment Specialist I | VIII | G |
| | Enrollment Specialist II | VIII | I |
| | Enrollment Specialist III | IX | I |
| Multiple Departments | Sr. Medical Clerk I | VII | G |
| | Sr. Medical Clerk II | VIII | G |

HIP legacy employees in any of the above job classifications as of the effective date of the agreement who are not at the highest job classification in the progression for that classification, shall retain the right to progress to the next level(s) if and when they meet the current criteria for progressing the next level(s). For purposes of this Agreement, the Maximums for each of the above job classifications for the incumbent HIP employees only, shall be the Maximum(s) of the Labor Grade which the job classification is listed in the Schedule of Positions/Labor Grades and Associated Salary Ranges effective December 1, 2008 set forth in the HIP-Local 153 Collective Bargaining Agreement effective December 1, 2006.

## SPECIAL AGREEMENT ON "FLOW JOBS" FOR ALL GRADE E APPROVERS

All current Labor Grade E Claims Approvers with six (6) or more months of service as Claims Approvers will be given a test. If they pass the test the first time, they will be reclassified into Labor Grade F as of the date they passed test. If they do not pass the first test but pass a subsequent test, they shall be reclassified as of the date they passed the test.

All current Labor Grade E Claims Approvers who have less than six (6) months of service will be given a test after six or more months of service as Claims Approvers. If they pass the first time they take it, they will be reclassified into Labor Grade F as of the date they have completed six (6) months of service as Claims Approvers.

1) If they do not pass the first test but pass a subsequent test, they shall be reclassified as of the date they passed the test.

2) The test shall consist of actual live claims from their current department and ninety percent (90%) shall be the qualifying mark. Applicants taking the test may have at their disposal any or all data now being utilized to approve claims. (Open book test.)

3) Tests will be given every three (3) months but an employee may not take the test more than three (3) times. The second and the third tests, if necessary, must be taken no later than six (6) months from the date of the first test, preferably at three (3) month intervals.

4) Any employee failing a test three (3) times will be reclassified, or transferred to another position more suitable for that employee, if such a position is available at the time.

5) Employees who are on second written (final) notice will not be eligible to take the test until the notice has been removed.

| For the Company | For the Union |
|---|---|
| FRANK BRANCHINI | MYRA HEPBURN |
| THOMAS A. NEMETH | |

D000035

## ADDENDUM TO SPECIAL AGREEMENT ON "FLOW JOBS" FOR ALL GRADE E APPROVERS

6) There will be an allowance of one hour and fifteen minutes for all Grade E Claims Approvers taking the "Flow Jobs" test for promotion to Grade F Claims Approvers.

7) This special agreement on "Flow Jobs" for all Grade E Claims Approvers will be subject to review by either party six months from the date of signing which was 1/23/75.

8) Whenever a Grade E Approver, who is eligible to take the "Flow Jobs" test, is permitted to take a different test than the one agreed upon in the original agreement between GHI and Local 153, and as a result is promoted to Grade F, the Company reserves the right to train any such employee up to the level of all other Grade F Claims Approvers and may assign them accordingly.

For the Company
Frank Branchini
Thomas A. Nemeth

For the Union
Myra Hepburn

---

**EmblemHealth**   Health Benefit Options for New Hires

This benefit summary is intended to highlight EmblemHealth's Benefits and should not be relied upon to fully determine coverage. A complete description of Benefits are contained in the Certificate of Coverage that would apply to this proposal.

| Plan Type | | CompreHealth EPO (a) | EH EPO (b) | EH PPO (b) |
|---|---|---|---|---|
| In-Network Benefits (Employee Cost Share): | | | | |
| | | $0 | $10 | $15 |
| | | -- | -- | -- |
| | | -- | -- | -- |
| | | -- | -- | -- |
| | | $0 | $100 | $100 |
| | | $5 | $25 | $25 |
| | | $0 | $0 | $0 |
| Prescription Cover - (Retail - a) | | $10/$10 | $10/$10 | $10/$10 |
| Prescription cover (Mail) (c) | | $20/$20 | $20/$20 | $20/$20 |
| | | Mandatory Mail | Mandatory Mail | Mandatory Mail |
| | | $0 | $10 | $10 |
| | | $0 | $50 - waived if admitted | $50 - waived if admitted |
| Out-of-Network Benefits (Employee Cost Share): | | | | |
| | | no benefit | no benefit | $500/$1,500 |
| | | no benefit | no benefit | 80% |
| | | no benefit | no benefit | $7,500/$15,000 |
| | | no benefit | no benefit | $2,000/$6,000 |
| | | -- | -- | HIAA 80th %ile |
| | | Age 26 EOM | Age 26 EOM | Age 26 EOM |

* The above X-Ray & Lab copay is a separate charge in addition to the office visit copay
* The above emergency room copay is a separate charge in addition to the physician service
* Deductible, out-of-pocket maximum is listed. Family out-of-pocket maximum depends on family tier.

| | CompreHealth EPO (a) | EH EPO (b) | EH PPO (b) |
|---|---|---|---|
| **Monthly Premium Details (including Dental & Vision)** | 1/1/2012 | 1/1/2012 | 1/1/2012 |
| Employee | $552.70 | $797.32 | $825.76 |
| EE/Child(ren) | $1,071.32 | $1,255.96 | $1,572.94 |
| EE/Spouse | $1,185.79 | $1,408.37 | $1,739.99 |
| Family | $2,669.30 | $2,599.61 | $2,478.23 |

| Employee Contribution (including Dental & Vision) | % | 1/1/2012 | % | 1/1/2012 | % | 1/1/2012 |
|---|---|---|---|---|---|---|
| Employee | 5% | $28.14 | 7% | $44.49 | 8% | $66.14 |
| EE/Child(ren) | 5% | $53.57 | 7% | $88.57 | 9% | $125.63 |
| EE/Spouse | 6% | $71.14 | 8% | $112.13 | 10% | $174.00 |
| Family | 8% | $134.91 | 10% | $259.94 | 11% | $272.61 |

The Company actuary shall, on an annual basis, determine the premium amount for each Plan.
The percentages listed will be applied to those Plan premiums to determine the employee contribution.
Annual changes will be effective January 1 of each year.

(a) NY Metro Network  only  (Bronx, Kings, Manhattan, Nassau, Queens, Richmond, Suffolk and Westchester)
(b) Includes National Network
(c) All EmblemHealth plans have a Closed Formulary.

D000036