UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ADRIANA AGOSTINI,                                    :
                                                     :
                              Plaintiff,             :        **VIA ECF**
                                                     :
                                                     :
              - v -                                  :
                                                     :
                                                     :
EMBLEMHEALTH, INC., and ALAN WEISHAUPT,              :        Case No. 16-cv-7119 (DC)
JONATHAN FRANDSEN and DANIEL BYRNE,                  :
Individually and as Employers,                       :
                                                     :
                              Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

RELEVANT FACTS ............................................................................................. 2

ARGUMENT ........................................................................................................ 6

I.    AGOSTINI'S BUMPING/LAYOFF CLAIMS ARE BARRED BY
HER FAILURE TO EXHAUST CONTRACTUAL REMEDIES IN THE CBA ............. 6

II.   SECTION 301 OF THE LMRA PREEMPTS THE NYCHRL CLAIMS ......................... 7

III.  AGOSTINI'S UNSUPPORTED DISABILITY DISCRIMINATION
AND FAILURE TO ACCOMMODATE CLAIMS SHOULD BE DISMISSED ............. 8

      A.     As Agostini Cannot Demonstrate a *Prima Face* Case or that the Company's
Reasons For Bumping and Laying Her Off Based on an Application of the
CBA Process Were Pretextual, Her Discrimination Claims Must be Dismissed ... 8

      B.     Agostini Cannot Establish a Failure to Accommodate Claim .............................. 12

      C.     Claims Based Upon Alleged Conduct Outside the Applicable Limitations
Are Barred and/or Are Precluded by Plaintiff's Election of Remedies ............... 13

IV.  AGOSTINI'S ADA AND NYCHRL
RETALIATION CLAIMS MUST BE DISMISSED ....................................................... 14

      A.     Agostini Cannot Show That She Would Not Have Been Bumped
and Laid Off But For Retaliation or That the Bumping Was Pretextual ............. 16

V.   AGOSTINI'S FMLA RETALIATION CLAIMS MUST BE DISMISSED ................... 18

      A.     Agostini Cannot Establish a *Prima Facie* Case of FMLA Retaliation ............... 18

      B.     Agostini Cannot Show That Her Bumping Pursuant
to the CBA Was Pretextual for FMLA Retaliation ............................................. 19

VI.  AGOSTINI'S HOSTILE WORK ENVIRONMENT
CLAIMS FAIL AS A MATTER OF LAW .................................................................... 20

      A.     Agostini Cannot Demonstrate She Was Subjected to
Severe or Pervasive Conduct Under the ADA and FMLA .................................. 21

      B.     The NYCHRL Harassment Claim Fails Because the Alleged Conduct
Amounts to No More than Petty Slights and Trivial Inconveniences ................. 23

      C.     There is No Basis to Hold EmblemHealth Liable for
the Alleged Hostile Work Environment Under the ADA .................................... 23

VII. AGOSTINI'S FMLA AND NYCHRL CLAIMS AGAINST
THE INDIVIDUAL DEFENDANTS FAIL AS A MATTER OF LAW ......................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alejandro v. N.Y. City Dep't of Educ.*,
  No. 15 CV 3346, 2017 U.S. Dist LEXIS 49555 (S.D.N.Y. Mar. 31, 2017)...........................20

*Alexander v. Bd. of Educ.*,
  107 F. Supp. 3d 323, 330 (S.D.N.Y. 2015),
  *aff'd*, 648 F. App'x 118 (2d Cir. 2016).........................................................................18, 19

*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002)...........................................................................................17, 22

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985)...........................................................................................................7, 8

*Ben-Levy v. Bloomberg*,
  518 F. App'x 17 (2d Cir. 2013) ...........................................................................................21

*Ben-Levy v. Bloomberg L.P.*, No. 11 Civ. 1554 (KBF),
  2012 U.S. Dist. LEXIS 90292 (S.D.N.Y. June 26, 2012),
  *aff'd*, 518 F. App'x 17 (2d Cir. 2013)................................................................................21, 22

*Benson v. Otis Elevator Co.*,
  557 F. App'x 74 (2d Cir. 2014) ...........................................................................................24

*Berlyavsky v. N.Y. City Dep't of Envtl. Prot.*,
  2015 U.S. Dist. LEXIS 133647 (E.D.N.Y. Aug. 28, 2015)..................................................15

*Brown v. Northrop Grumman Corp.*,
  No. 12 Civ. 1488, 2014 U.S. Dist. LEXIS 116188 (E.D.N.Y. Aug. 19, 2014) ..........16, 19, 20

*Campbell v. Kane, Kessler, P.C.*,
  144 F. App'x 127 (2d Cir. 2005) ...........................................................................................6

*Carter v. Verizon*, No. 13 Civ. 75759 (KPF),
  2015 U.S. Dist. LEXIS 6370 (S.D.N.Y. Jan. 20, 2015)...........................................................7

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987).................................................................................................................6

*Chang v. MetroPlus Health Plan*,
  No. 12 Civ. 3181, 2014 U.S. Dist. LEXIS 28318 (S.D.N.Y. Mar. 4, 2014),
  *aff'd*, 590 F. App'x 74 (2d Cir. 2015)................................................................... 10-11, 14, 15

*Cherry v. Byram Hills Cent. Sch. Dist.*,
No. 11 Civ. 3872, 2013 U.S. Dist. LEXIS 84040 (S.D.N.Y. June 14, 2013) ...................10, 16

*Cleveland v. Policy Mgmt. Sys. Corp.*,
526 U.S. 795 (1999) .................................................................................................................9

*Durant v. NYNEX*,
101 F. Supp. 2d 227 (S.D.N.Y. 2000) ...................................................................................21

*Edwards v. N.Y. State Unified Court Sys.*,
No. 12 Civ. 46, 2012 U.S. Dist. LEXIS 172207 (S.D.N.Y. Nov. 20, 2012) ..........................22

*El Sayed v. Hilton Hotels Corp.*,
627 F.3d 931 (2d Cir. 2010) ...................................................................................................17

*Fagundes v. Lane*, No. 12-CV-1634 (DLS)(SMG),
2014 U.S. Dist. LEXIS 4142 (E.D.N.Y. Mar. 27, 2014) ...........................................................6

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) ...............................................................................................................24

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004) ...................................................................................................24

*Feldman v. New York Blood Ctr.*,
No. 00 Civ. 8795, 2002 U.S. Dist. LEXIS 23730 (S.D.N.Y. Dec. 11, 2002) .........................12

*Ferraro v. New York City Dep't of Educ.*,
Nos. 13-cv-5837 (LDH)(JO), 15-cv-1117 (LDH)(JO),
2017 U.S. Dist. LEXIS 161799 (E.D.N.Y. Sept. 30, 2017) .....................................................15

*Graziadio v. Culinary Inst. of Am.*,
817 F.3d 415 (2d Cir. 2016) ...................................................................................................25

*Grillo v. N.Y. City Transit Auth.*,
291 F.3d 231 (2d Cir. 2002) .....................................................................................................9

*Harris v. Forklift Sys.*,
510 U.S.17 (1993) ....................................................................................................................22

*Hernandez v. Int'l Shoppes, LLC*,
100 F. Supp. 3d 232, 256 (E.D.N.Y. 2015) .........................................................................8, 25

*Hockenjos v. Metro. Transp. Auth.*,
No. 14 Civ. 1679, 2016 U.S. Dist. LEXIS 65341 (S.D.N.Y. May 18, 2016),
*aff'd*, 695 F. App'x 15 (2d Cir. 2017) ...............................................................................19, 20

*Hollander v. Am. Cyanamid Co.*,
    895 F.2d 80 (2d Cir. 1990) ............................................................................................... 15

*Kelly v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 15cv6309 (DLC),
    2017 U.S. Dist. LEXIS 43485 (S.D.N.Y. Mar. 24, 2017) ...................................................... 12

*Kim v. Goldberg*,
    862 F. Supp. 2d 311 (S.D.N.Y. 2012) .................................................................................. 20

*Kwan v. Andalex Grp., LLC*,
    737 F.3d 834 (2d Cir. 2013) ........................................................................................ 14, 16

*Macentee v. IBM (Int'l Bus. Machines)*,
    783 F. Supp. 2d 434 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 49 (2d Cir. 2012) ....................... 13

*Marine Midland Bank, N. A. v. N.Y. State Div. of Human Rights*,
    75 N.Y.2d 240 (1989) ....................................................................................................... 14

*McBride v. BIC Consumer Prods. Mfg. Co.*,
    583 F.3d 92 (2d Cir. 2009) ............................................................................................... 12

*Melman v. Montefiore Med. Ctr.*,
    98 A.D.3d 107 (1st Dep't 2012) ........................................................................................ 11

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ........................................................................................ 14-15

*Morrissey v. Verizon Commc'ns, Inc.*, No. 10 Civ. 6115 (PGG),
    2011 U.S. Dist. LEXIS 73202 (S.D.N.Y. July 7, 2011) ...................................................... 7, 8

*Murray v. Cerebral Palsy Ass'n*,
    No. 16 Civ. 662, 2017 U.S. Dist. LEXIS 213553 (S.D.N.Y. Jan. 2, 2018) ............................ 21

*Needle v. Alling & Cory, Inc.*,
    88 F. Supp. 2d 100 (W.D.N.Y. 2010) ................................................................................... 9

*Nieblas-Love v. N.Y.C. Hous. Auth.*,
    165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) ....................................................................... 24, 25

*Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*,
    No. 05 Civ. 5109, 2007 U.S. Dist. LEXIS 28274 (S.D.N.Y. Apr. 18, 2007) .......................... 17

*Peda v. New York Univ. Hosps. Ctr.*, No. 12 Civ. 0586 (PAC),
    2014 U.S. Dist. LEXIS 35261 (S.D.N.Y. Mar. 17, 2014) ..................................................... 24

*Pena-Barrero v. City of New York*,
    2017 U.S. Dist. LEXIS 47983 (S.D.N.Y. Mar. 30, 2017) ..................................................... 17

*Perry v. Ethan Allen, Inc.*,
    115 F.3d 143 (2d Cir. 1997)...........................................................................22

*Peterson v. Long Island R.R. Co.*,
    No. 10 Civ. 480, 2012 U.S. Dist. LEXIS 85054 (E.D.N.Y. June 19, 2012)............................18

*Potenza v. City of New York*,
    365 F.3d 165 (2d Cir. 2004)...........................................................................19

*Raneri v. McCarey*,
    712 F. Supp. 2d 271 (S.D.N.Y. 2010).................................................................24

*Republic Steel Corp. v. Maddox*,
    379 U.S. 650 (1965)....................................................................................6

*Russo v. New York Presbyterian Hosp.*,
    972 F. Supp. 2d 429 (E.D.N.Y. 2013)................................................................23

*Shannon v. N.Y. City Transit Auth.*,
    332 F.3d 95 (2d Cir. 2003) (ADA)......................................................................8

*Short v. Deutsche Bank Sec., Inc.*,
    79 A.D.3d 503 (1st Dep't 2010)......................................................................23

*Skolnik v. Am. Guild of Musical Artists & N.Y.C. Opera, Inc.*,
    No. 00 Civ. 2845 (BSJ), 2001 U.S. Dist. LEXIS 10621
    (S.D.N.Y. July 24, 2001)..............................................................................7

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001)........................................................................16, 17

*Smith v. UAW-GM Legal Servs. Plan*,
    No. 01-9128, 2002 U.S. App. LEXIS 26175 (2d Cir. Oct. 4, 2002).....................................16

*Thomson v. Odyssey House*, No. 14-CV-3857 (MKB),
    2015 U.S. Dist. LEXIS 125887 (E.D.N.Y. Sept. 21, 2015),
    *aff'd*, 652 F. App'x 44 (2d Cir. 2016)...............................................................22

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 388, 133 S. Ct. 2517 (2013).............................................................16-17

*Vaca v. Sipes*,
    386 U.S. 171 (1967)....................................................................................6

*Van Zant v. KLM Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996)...........................................................................21

*Vera v. Saks & Co.*,
　335 F.3d 109 (2d Cir. 2003)........................................................................6

*Vinokur v. Sovereign Bank*,
　701 F. Supp. 2d 276 (E.D.N.Y. 2010) ...............................................9, 11

*Williams v. NewYork City Hous. Auth.*,
　61 A.D.3d 62 (1st Dep't 2009) ...............................................................23

*Yetman v. Capital Dist. Transp. Auth.*,
　669 F. App'x 594 (2d Cir. 2016) .............................................................18

**Statutes**

29 U.S.C. § 185 .........................................................................................7

42 U.S.C. § 2000e-5(b) ............................................................................20

42 U.S.C. § 2000e-5(e)(1).........................................................................14

42 U.S.C. § 12117(a) ................................................................................14

**Other Authorities**

N.Y.C. Admin. Code § 8-502(a).................................................................14

N.Y.C. Admin. Code § 8-502(d)................................................................14

## PRELIMINARY STATEMENT

Adriana Agostini was one of three mail "Sorters" at EmblemHealth "bumped" out of their positions in September 2014 as the result of a pre-planned layoff.[1] Although Agostini was not one of the 45 people selected to be laid off, some of her co-workers with greater seniority who were selected for layoff exercised their collective bargaining agreement ("CBA") rights to bump her (and the two other Sorters) out of their positions. Under the CBA, when Agostini was bumped out of her Sorter position, she could have bumped into a Housekeeping position. When Agostini did not do so, she was laid off and paid around $30,000 in severance and related amounts pursuant to the CBA. Neither Agostini nor the Union filed any grievance. Agostini now claims that her layoff was discriminatory and retaliatory in violation of the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA") and the New York City Human Rights Law ("NYCHRL"). In making these claims, Agostini claims her bump and layoff violated the CBA.

The undisputed evidence, however, shows her claims are meritless.  The Company and the Union, which represented Agostini, worked together to interpret and apply the CBA, both to Agostini and other similarly-situated workers, including two other Sorters who were bumped. In any case, to the extent Agostini's claims are inextricably intertwined with the application of the CBA - which they clearly are - her claims are barred by her failure to exhaust contractual remedies; and her NYCHRL claims are preempted by governing federal labor law. Agostini cannot show pretext supporting a disability discrimination claim, as she admits that the Company had repeatedly accommodated her various medical conditions since at least 2007; and there is no

---

[1] Agostini was a member of the Office and Professional Employees International Union, Local 153 (the "Union"). At the time of her termination, Agostini worked subject to the terms and conditions set forth in a collective bargaining agreement entered into between EmblemHealth Inc. (the "Company" or "EmblemHealth") and the Union covering the period between January 1, 2012 and December 31, 2014 (the "CBA").  (*See* Pl. Tr. 164-165; Byrne Decl. ¶ 11 & Ex. D).

evidence that her most recent request to reduce her standing (which was granted) – in a job that rarely required standing – somehow motivated the Company to violate its long-standing CBA and improperly lay her off.

Nor can she demonstrate retaliation based on her having requested intermittent FMLA leaves 8-9 months earlier or for any purported protected activity.  Indeed, Agostini's retaliation claims appear to be based in large part on her (mostly time-barred) claims that certain managers wanted to terminate her because she allegedly complained about workers making too many mistakes, her having to change dates on documents (in 2011) and a manager's wife being transferred to a position instead of her (in 2010). Agostini's slapdash hostile work environment claims, primarily based on time barred or otherwise barred allegations, are equally without merit. Accordingly, the Court should grant Defendants' motion for summary judgment and dismiss Agostini's Complaint in its entirety.[2]

## RELEVANT FACTS

EmblemHealth refers the Court to its Statement of Undisputed Material Facts for a full statement of the factual record.  By way of summary for the Court, EmblemHealth notes:

Agostini began working for HIP in October 1998 as a Housekeeper.   (Pl. Tr. 169). EmblemHealth was formed through the affiliation of Health Insurance Plan Company of New York ("HIP") and Group Health Incorporated ("GHI") and in 2008, the HIP employees, including Agostini, formally became employed by EmblemHealth. In November 2009, the Union and Company entered into a master collective bargaining agreement to cover clerical employees from HIP and GHI. At the time, Agostini had the title of "Imaging Clerk" and was assigned to

---

[2] Defendants Daniel Byrne, Jonathan Frandsen and Alan Weishaupt are referred to as "Individual Defendants" and together with EmblemHealth, are referred to as "Defendants."

the Utilization Document Control ("UDC") Department, a sub-division of the Claims Support Department.  (Byrne Decl. ¶ 16; Pl. Tr. 172).

Agostini was covered by EmblemHealth's strict policies and procedures relating to equal employment opportunities, non-discrimination, non-harassment, and non-retaliation, as well as complaint procedures for employees to report incidents where the employee believed that he or she had been subjected to (or witnessed) any form of discrimination and/or harassment.  (Byrne Decl. ¶¶ 5-8, 10 & Exs. A-C).  Agostini was well aware of these Company policies and related complaint procedures.  (Pl. Tr. 92, 159-160).

Throughout her employment at EmblemHealth, and previously with HIP, Agostini was a Union member subject to the terms in governing collective bargaining agreements. One of the many provisions set forth in the CBA governed layoffs and provided that certain employees could, in lieu of a layoff, "bump another employee in the same or a lower classification with less company-wide seniority . . . ." (Pl. Tr. 169; Byrne Decl. ¶ 13 & Ex. D).  In order for an employee to bump into another employee's position, the bumping employee had to be able to perform the job duties in the new role without requiring any specialized skills or additional training. (Byrne Decl. ¶ 13; Walters Decl. ¶ 4).

Within the UDC Department, employees with the formal titles of Junior Clerk or Imaging Clerk, like Agostini, generally performed one of three job functions:

(1) **Sorters** (also referred to as tray mail), who opened mail and envelopes that arrived at the Company's facility and sorted it;
(2) **Scanners**, who received specialized training to perform work on complicated and expensive Company-owned printer/scanners; or
(3) **Transfer Clerks**, who performed manual labor, moving large and heavy carts around the Company's facility.  (Byrne Decl. ¶ 17).

Agostini performed the Sorter function.  (Byrne Decl. ¶ 18; Pl. Tr. 124).

On July 29, 2014, Agostini was assigned to do "misdirect" or "rerouting" work, which was required due to UDC Sorters improperly sorting claims which were then improperly scanned to the wrong departments.  Agostini claims that she had to stand at a copy machine for three hours while performing that assignment and that when she finished it, UDC Supervisor Maria Vera asked her to work on "EMS boxes," which would not have required Agostini to stand while working, but Agostini refused, claiming that she had pain. (*Id.* 141, 143-145).

Agostini testified that she then went to Weishaupt, then the Director of Claims Support's office. Agostini testified that Weishaupt had previously told her he had an "open door" for her. (*Id.* 93).  She told Weishaupt that there were "mistakes" happening in the department that resulted in "a lot" of rerouted work, that she was in "severe pain," that she had a "medical condition," and that she wanted "an accommodation." (*Id.* 146-147). Agostini thereafter met with Lisa Butler, then a Senior Human Resources Specialist, and complained that Weishaupt had responded in an "unprofessional" way after she requested an accommodation, and that she needed an accommodation because she had a "medical condition." (Butler Tr. 9; Pl. Tr. 148, 152). Agostini also claims she told Butler that she was being treated unfairly and retaliated against for "speaking up" about problems in the department. (Pl. Tr. at 154-155).

Butler gave Agostini a reasonable accommodation request form. On August 1, 2014, Agostini submitted the request form filled out by Whitney Turkanis, a psychotherapist.  (Pl. Tr. 206). The August 1, 2014 form did not refer to any accommodation relating to standing, at the copier or otherwise; instead, it sought "the right to work in an environment that is calm and respectful . . . to be treated fairly during daily work assignments." Because the August 1, 2014 accommodation request did not refer to the concerns about standing and was ambiguous, the Company asked for clarification. On August 11, 2014, Agostini submitted a new accommodation

request form stating, in part, that she "should not stand for longer than 15-30 minutes at a time." Agostini was not required to stand at the copier after July 29, 2014 and did not seek a further accommodation. (Pl. Tr. 262; Kennedy Decl. ¶¶ 7-9 & Exs. B, C).

Months earlier, in May 2014, EmblemHealth began planning a substantial layoff in various departments to take place in September 2014 (the "Layoff"). On August 13, 2014, the Company notified the Union that 45 positions would be eliminated from nine different departments as of September 12, 2014. Agostini was **not** among the employees whose positions were selected for the Layoff. (Byrne Decl. ¶¶ 19, 20 & Ex. F). After several meetings between representatives of EmblemHealth's Labor Relations Department and the Union, it was determined that qualified employees exercising their bumping rights could bump the least senior Imaging Clerks or Junior Clerks that performed the Sorter function, which did not require any training or specialized skills. (Byrne Decl. ¶ 23-25; Walters Decl. ¶ 6). The Company identified nineteen individuals, including Agostini, who performed the Sorter function. Of those, Agostini had the second to least amount of seniority. (Byrne Decl. ¶ 26, 27 & Ex. J). Ultimately, three Sorters with the least seniority were bumped: Agostini (15.34 years), ██████████ (7.18 years), and ████████████████ (18.98 years). (Byrne Decl. ¶ 30 & Ex. N).

On September 11, 2014, the Company (including Daniel Byrne, Vice President of Labor Relations) and two Union representatives met with Agostini, informed her that she had been bumped out of her Sorter position pursuant to the CBA, and offered her a bump into a Housekeeping position, a position she had years earlier. (Byrne Decl. ¶ 33; Pl. Tr. 222, 251).[3] As Agostini did not take steps to exercise her right to bump into the Housekeeping position, she

---

[3] Everyone in attendance at the September 11 meeting agrees that neither Byrne nor anyone else present at the meeting ever made any comments that (in sum or substance) the Housekeeping position was not available to Agostini because of her medical condition. (Byrne Decl. ¶ 34; Adams Tr. 170 to 171; Kreiswirth Decl. ¶ 8 & Ex. B; Walters Decl. ¶ 9).

was laid off along with 45 other employees effective September 12, 2014. Pursuant to the CBA, EmblemHealth paid her around $30,000. (Byrne Decl. ¶ 35 & Ex. Q). The Union did not file a grievance or any other claims on Agostini's behalf. (Byrne Decl. ¶ 37; Pl. Tr. 168). Indeed, the Union believed that the process followed to determine which employees would be laid off in September 2014 was in full compliance with the CBA, and it fully agreed with the Company's decision to bump Agostini. (Adams Tr. 274-275, 277).

## ARGUMENT

### I.   AGOSTINI'S BUMPING/LAYOFF CLAIMS ARE BARRED BY HER FAILURE TO EXHAUST CONTRACTUAL REMEDIES IN THE CBA

Because Agostini failed to seek redress through the grievance and arbitration procedure mandated by the CBA, any claim that her termination constituted an adverse action in connection with her accommodation request, requests for FMLA leave, or retaliation or harassment claims fails under the terms and conditions of the CBA and is not ripe for this Court's review.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citations omitted) (Section 301 preemptively governs claims "founded directly on rights created by [CBAs], and also claims 'substantially dependent on analysis of [a collective bargaining agreement'"). "Federal labor policy generally requires that Plaintiffs utilize CBA grievance procedures before bringing a suit in Court." *Fagundes v. Lane*, No. 12-CV-1634 (DLS)(SMG), 2014 U.S. Dist. LEXIS 4142, at *23 (E.D.N.Y. Mar. 27, 2014) (citations omitted); *see also Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652 (1965); *Campbell v. Kane, Kessler, P.C.,* 144 F. App'x 127, 130 (2d Cir. 2005); *Vera v. Saks & Co.*, 335 F.3d 109, 118 (2d Cir. 2003); *see also Vaca v. Sipes,* 386 U.S. 171, 184 (1967) ("[T]he employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement.") (citation omitted).

Although Agostini unqualifiedly concedes that she was bound by the terms of the CBA, and she was well aware of the grievance process, no grievance was filed regarding her bumping and eventual layoff. (Pl. Tr. 168). Accordingly, Agostini's claims that her bumping or layoff pursuant to the terms of the CBA was an adverse employment action that resulted in unlawful discrimination, retaliation, and harassment are barred by the failure to raise the issue under the CBA's grievance procedures, and they must be dismissed. *Skolnik v. Am. Guild of Musical Artists & N.Y.C. Opera, Inc.*, No. 00 Civ. 2845 (BSJ), 2001 U.S. Dist. LEXIS 10621, at *6-7 (S.D.N.Y. July 24, 2001) (dismissing the plaintiff union member's claim against the employer for breach of the CBA for failure to exhaust the grievance procedure set forth in the CBA).

## II.    SECTION 301 OF THE LMRA PREEMPTS THE NYCHRL CLAIMS

The NYCHRL discrimination and retaliation claims asserted in the Fourth Cause of Action are preempted by the LMRA[4] because their resolution requires interpretation of the CBA provisions governing employee seniority, layoffs, and bumping. "Courts generally hold that where a state-law discrimination claim turns on application of a collective bargaining agreement's seniority provisions, the claim is preempted by Section 301 of the LMRA." *See Morrissey v. Verizon Commc'ns, Inc.*, No. 10 Civ. 6115 (PGG), 2011 U.S. Dist. LEXIS 73202, at *12 (S.D.N.Y. July 7, 2011) (citation omitted); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985); *Carter v. Verizon*, No. 13 Civ. 75759 (KPF), 2015 U.S. Dist. LEXIS 6370, at *19-20 n.7 (S.D.N.Y. Jan. 20, 2015) (state and city law claims that an employer "breached the CBA's seniority provisions" were preempted by the LMRA).

Agostini's claims undeniably turn on interpretations of the CBA as she is asserting that EmblemHealth violated the CBA by failing to: (1) follow the CBA's seniority provisions and

---

[4] Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization … may be brought in any district court of the United States having jurisdiction of the parties…." 29 U.S.C. § 185.

"bumping protocols" when she was bumped from the Imaging Clerk position, or (2) provide Agostini with the opportunity to bump into other positions, including mailroom, secretary or housekeeping positions. (Pl. Tr. 248-253). Because Agostini's NYCHRL claims will necessarily require the Court to interpret and analyze the CBA's bumping and seniority provisions, they are preempted by Section 301 of the LMRA and must be dismissed. *Allis-Chalmers*, 471 U.S. at 210; *see also Morrissey*, 2011 U.S. Dist. LEXIS 73202, at *16-17 (finding that resolution of a plaintiff's state law age discrimination claim necessarily required an interpretation of the CBA, and was therefore preempted by Section 301 of the LMRA, where the plaintiff claimed that the defendant violated the seniority terms of the CBA in order to lay off older employees).

### III. AGOSTINI'S UNSUPPORTED DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE CLAIMS SHOULD BE DISMISSED

#### A. As Agostini Cannot Demonstrate a *Prima Face* Case or that the Company's Reasons For Bumping and Laying Her Off Based on an Application of the CBA Process Were Pretextual, Her Discrimination Claims Must be Dismissed

Agostini's claims that she was bumped and/or not permitted to accept a Housekeeping position because of an alleged disability cannot survive summary judgment. For claims brought under the ADA and NYCHRL, Agostini bears the initial burden of establishing a *prima facie* case of discrimination by pointing to record evidence that: (1) Defendants are subject to the statutes; (2) Agostini suffered from a disability within the meaning of each statute; (3) Agostini was otherwise qualified to perform her job functions with or without reasonable accommodation; and (4) Agostini suffered an adverse employment action because of her disability. *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (ADA) (citation omitted); *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 256 (E.D.N.Y. 2015) (NYCHRL).

Agostini cannot establish a *prima facie* case of discrimination because she cannot show she was "otherwise qualified" and cannot show any causal connection between her alleged

disabilities and her bumping or layoff. First, Agostini cannot show she was qualified to perform the essential functions of her job as an Imaging Clerk (or Housekeeper) because she has affirmed, under penalty of perjury, in her application for Social Security Disability benefits that she is "unable to work" because of her "disabling condition." (Rasnick Aff. Exs. J-N). *See Needle v. Alling & Cory, Inc.,* 88 F. Supp. 2d 100, 105-106 (W.D.N.Y. 2010); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999) (to survive a summary judgment motion, "an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work").

Second, Agostini cannot point to any evidence even suggesting that a causal connection existed between her alleged disabilities and her bumping from her position. Agostini has done little more than assert that she was disabled at the time of her termination, and this is clearly insufficient to establish a *prima facie* case and withstand a motion for summary judgment. *See Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231, 234-35 (2d Cir. 2002) (affirming grant of summary judgment when plaintiff had "done little more than cite to [his alleged mistreatment] and ask the court to conclude that it must have been related to" his protected characteristic) (internal citations omitted). Agostini has no evidence of any discriminatory comments nor can she show that she was treated any differently than other similarly-situated employees. Two other Sorters (neither of whom was suffering from a disability) were also "bumped" from their positions as a result of the Layoff. (Byrne Decl. ¶ 30, 47).

### 1. Agostini's Bumping Was a Result of the Application of the Applicable CBA and There is No Basis to Find Pretext

Even if Agostini could establish a *prima facie* case of disability discrimination, which she cannot, EmblemHealth has clearly met its burden to articulate a legitimate, non-discriminatory reason for her termination. *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 287, 291-92 (E.D.N.Y. 2010). The undisputed record evidence shows that after it implemented a 45-person

Layoff directly impacting departments other than Agostini's, several laid-off employees exercised their contractual bumping rights in accordance with the CBA. As a result, Agostini and two other Sorters were bumped out of their positions. The Company and the Union worked collaboratively throughout this "bumping" process, and all decisions about which employees and/or positions would be "bumped" were approved by the Union. (Adams Tr. 275-276; Byrne Decl. ¶ 32, 37). EmblemHealth's burden to demonstrate that Agostini's employment terminated for a legitimate, non-discriminatory reason is clearly satisfied through this undisputed evidence.[5]

Nor does Agostini's claim that she was told by Byrne, at the meeting on September 11, 2014 that she could not bump into the Housekeeping position because of her alleged medical condition change the analysis.  As an initial matter, Agostini concedes that she was offered a Housekeeping position at the bumping meeting, and she cannot dispute that she did not exercise her bumping rights and was not prevented from doing so in any way. (Pl. Tr. 251, 243; Kreiswirth Decl. ¶ 9; Walters Decl. ¶ 9). Moreover, while Agostini asserts that Byrne made this comment in a six-person meeting, she is the only person who supports it. The five other people there - including the Chief Union Shop Steward and the Assistant Union Chief Shop Steward (both present to represent Agostini) – and contemporaneous notes - belie that any such statement was made. (Byrne Decl. ¶ 34; Adams Tr. 170-171, 276; Kreiswirth Decl. ¶ 8 & Ex. B; Walters Decl. ¶ 9).  As Agostini did nothing to exercise her bumping rights to Housekeeping, even if Byrne had made the comment, which he did not, her claim cannot survive.  *Chang v. MetroPlus Health Plan*, No. 12 Civ. 3181, 2014 U.S. Dist. LEXIS 28318, at *22 (S.D.N.Y. Mar. 4, 2014) (without more, "stray remarks even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination"), *aff'd*, 590 F. App'x 74 (2d Cir.

---

[5] *See Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11 Civ. 3872, 2013 U.S. Dist. LEXIS 84040, at *32 (S.D.N.Y. June 14, 2013) (dismissing plaintiff's discrimination claims where defendant demonstrated that plaintiff was terminated pursuant to the seniority provisions of the CBA).

2015) (citations omitted); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 125 (1st Dep't 2012) ("stray remarks" not indicative of discrimination under NYCHRL) (citations omitted).

Thus, even if Agostini can establish a *prima facie* case, the Company has satisfied its burden under *McDonnell Douglas*, and the burden would shift back to Agostini to show that the proffered reasons are false and that it is more likely than not that discrimination was the real reason. *See Vinokur*, 701 F. Supp. 2d at 287, 292. Agostini cannot show pretext. Agostini's primary argument on pretext appears to be that she was "bumped" ahead of other workers in the same "title" with less seniority in violation of the CBA. This is both factually false and insufficient to demonstrate pretext. Pursuant to the CBA, the Union and EmblemHealth required that the laid-off employees bump into positions performing job functions that they could perform "on day one" – in other words, job functions that did not require any particular skills or training. (McGuire Tr. 53; Byrne Tr. 114-115). The position (either Imaging Clerk or Junior Clerk in the UDC Department) that performed the Sorter function was prone to be bumped into by laid off employees to bump into because, unlike other job functions performed by Imaging Clerks and Junior Clerks, the Sorter function did not require any training or specialized skills. (Byrne Decl. ¶ 24; Walters Decl. ¶ 6). Thus, when considering the possible bumps, only Sorters were considered by seniority, with the following having the least amount of seniority: ▮▮▮▮▮▮▮▮ (7.18 years), Agostini (15.34 years), and ▮▮▮▮▮▮▮▮▮▮▮ (18.98 years). (Byrne Decl. ¶ 30; Walters Decl. ¶ 7). This process was applied consistently to all employees and did not single out Agostini in any way. Indeed, all three Sorters with the least seniority were initially bumped from their positions by laid off employees. (Byrne Decl. ¶ 30).

Even if, however, Agostini could establish that EmblemHealth somehow violated the CBA in applying the "bumping" process – which was never grieved to the Company by Agostini

or the Union - this alone is insufficient to establish that the Company's stated reasons are a mere pretext for unlawful disability discrimination. (Adams Tr. 275-277). *See Feldman v. New York Blood Ctr.*, No. 00 Civ. 8795, 2002 U.S. Dist. LEXIS 23730, at *20 (S.D.N.Y. Dec. 11, 2002) (finding violation of CBA insufficient to show pretext).

### B.  Agostini Cannot Establish a Failure to Accommodate Claim

Agostini's claims that EmblemHealth refused to provide her with a reasonable accommodation or engage in an interactive process as required by the ADA and NYCHRL fail as a matter of law because Agostini cannot identify any reasonable accommodation that she requested and was denied. To establish a *prima facie* case for failure to accommodate where an accommodation has been denied, Agostini would need to show: (1) she is a person with a disability under the meaning of the ADA/NYCHRL; (2) EmblemHealth had notice of her disability; (3) with reasonable accommodation(s), she could perform the essential functions of her job; and (4) EmblemHealth failed to make such accommodations. *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009). However, where "the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is plainly reasonable." *See Kelly v. Starwood Hotels & Resorts Worldwide, Inc.,* No. 15cv6309 (DLC), 2017 U.S. Dist. LEXIS 43485, at *6-7 (S.D.N.Y. Mar. 24, 2017) (applying same standard to ADA and NYCHRL claims but noting that the "NYCHRL is to be construed liberally for the accomplishment of [its] uniquely broad and remedial purposes").

As Agostini was provided a plainly reasonable accommodation, EmblemHealth is entitled to summary judgment on any reasonable accommodation claim. Here, after learning on July 29, 2014 that Agostini was seeking an unspecified accommodation after having pain standing at the copier, she was given a reasonable accommodation request form, which she

ultimately returned with the request that she "should not stand for longer than 15-30 minutes at a time."[6] (Pl. Tr. 210; Kennedy Decl. ¶ 8 & Ex. C).[7] As Agostini conceded during her deposition, the Company granted the request; after July 29, 2014, she was not required to stand at the copier anymore. (Pl. Tr. 262). Because Agostini has acknowledged that EmblemHealth fully accommodated her request not to stand for lengthy periods of time, her failure to accommodate claim must be dismissed.

Furthermore, prior to July 29, Agostini neither sought nor made it clear that she needed an accommodation with respect to rheumatoid arthritis or depression and the mere fact that she was approved for intermittent FMLA leave through the Company's third-party administrator would not have been sufficient to put EmblemHealth on notice of a request for some other unidentified accommodation. (Kennedy Decl. ¶ 10). The law is clear that it is the "employee's responsibility to demonstrate to an employer that she needs an accommodation for reasons related to a medical condition disability." *Macentee v. IBM (Int'l Bus. Machines)*, 783 F. Supp. 2d 434, 443 (S.D.N.Y. 2011) (dismissing failure to accommodate claim), *aff'd*, 471 F. App'x 49 (2d Cir. 2012) (citation omitted).

### C.  Claims Based Upon Alleged Conduct Outside the Applicable Limitations Are Barred and/or Are Precluded by Plaintiff's Election of Remedies

In the Complaint, there are unsupported allegations that Weishaupt: (1) in April 2010 discriminatorily reprimanded her for "deficient work performance"; and (2) in March 2012 said she would have to work full-time even though she was approved to work part-time. (*See* Compl.

---

[6] It should be noted that Agostini testified that making copies was not an essential function of her job. (Pl. Tr. 79, 143) (testifying that she had a "sitting down job").

7 After the July 29, 2014 meetings with Butler and Weishaupt, Agostini initially brought in an accommodation request form that did not relate to copying or standing and stated that she was seeking a "stress free" work environment. (Pl. Tr. 206; Kennedy Decl. ¶ 7). After speaking to Agostini, with the Union representing her, about the ambiguous request that did not appear to relate to the issues from July 29, Agostini brought in the August 11 request regarding standing, which the Company understood to replace the prior August 1 accommodation request. Indeed, Agostini did not mention the August 1 request form thereafter. (Kennedy Decl. ¶ 8, 9).

¶ 32, 36). Putting aside that they are unsupported, and contrary to evidence, such allegations are barred by applicable statutes of limitations, which for ADA claims would preclude claims based upon acts of discrimination that allegedly occurred prior to August 14, 2014, and for NYCHRL claims, would preclude claims based upon alleged conduct prior to September 12, 2013.[8] *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); *Chang*, 2014 U.S. Dist. LEXIS 28318, at *14-15; N.Y.C. Admin. Code § 8-502(d) (three year statute of limitations).

In addition, at her deposition, Agostini testified about certain conduct from 2010 – such as in 2010, Frandsen's wife had been given a position instead of her - that was included in prior discrimination complaints filed at the State Division of Human Rights ("NYSDHR") in 2009 and 2010. (Pl. Tr. 347-348). Any of Agostini's allegations of discrimination and retaliation that were already considered and investigated by the NYSDHR when it rendered "no probable cause" determinations dismissing the 2009 and 2010 NYSDHR Complaints are barred by the NYCHRL election of remedies provisions. (Rasnick Aff., Exs. B, D) *See* N.Y.C. Admin. Code § 8-502(a); *Marine Midland Bank, N. A. v. N.Y. State Div. of Human Rights*, 75 N.Y.2d 240, 245 (1989).

## IV.    AGOSTINI'S ADA AND NYCHRL RETALIATION CLAIMS MUST BE DISMISSED

Based on the undisputed facts, Agostini's retaliation claims fail. To establish a *prima facie* case of retaliation, Agostini must show: (1) she engaged in protected activity, (2) the Company was aware of her protected activity, (3) the Company took adverse action against her, and (4) a causal connection exists between Agostini's protected activity and the adverse action.[9] *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843-44 (2d Cir. 2013) (analyzing ADA claims).

---

[8] For example, Agostini testified that when she returned to work part-time in 2012, Agostini "rarely" saw Weishaupt and did not speak to him, and that Byrne actually extended her part-time schedule for an additional month in 2012. (*Compare* Compl. ¶ 36 *with* Pl. Tr. 97-98).

[9] Retaliation claims under the NYCHRL are analyzed separately, and require a plaintiff to "show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was

### 2. Agostini Cannot Establish a *Prima Facie* Case of Retaliatory Termination

Agostini cannot establish a *prima facie* case of retaliatory termination. To the extent that Agostini is claiming that she was retaliated against for complaining on or before July 29, 2014 about "mistakes" "happening in the department," or for complaining in 2010 (1) about Frandsen's wife being granted a position or (2) allegedly being asked to perform work "falsifying documents", such claims cannot survive. (Pl. Tr. 154-155, 272-273, 347-348). First, complaining about a supervisor being married, about doing certain work assignments, or mistakes at work are not protected activity under the ADA or NYCHRL.[10] Further, there can be no causal connection between any acts in 2014 and her alleged complaints in 2010 to allow for any inference of retaliation. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (passage of three months too attenuated).[11]

Nor can Agostini establish a *prima facie* case of retaliation to the extent that she is basing her retaliation claims on her July 29, 2014 conversations with Weishaupt and Butler in which she said she wanted an accommodation (given pain she experienced that day) and her being bumped out of her position. There is no evidence to connect Agostini's eventual layoff with her July 29, 2014 conversations with Weishaupt and Butler, especially given that the Company began

---

reasonably likely to deter a person from engaging in [protected activity]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citations omitted). Because, however, Agostini mainly complains only about her termination – a clear adverse employment action under any statute – the NYCHRL analysis is the same as under the ADA. *See Chang*, 2014 U.S. Dist. LEXIS 28318, at *24 n.8; *Ferraro v. New York City Dep't of Educ.*, Nos. 13-cv-5837 (LDH)(JO), 15-cv-1117 (LDH)(JO), 2017 U.S. Dist. LEXIS 161799, at *55 (E.D.N.Y. Sept. 30, 2017).

[10] *See Berlyavsky v. N.Y. City Dep't of Envtl. Prot.*, 2015 U.S. Dist. LEXIS 133647, at *32-37 (E.D.N.Y. Aug. 28, 2015) (finding complaints made about "supervisors' misjudgments in carrying out substantive work," do not qualify as legally protected activity).

[11] Moreover, Agostini cannot maintain any claim that EmblemHealth retaliated against her for allegedly filing a "formal complaint" against Weishaupt given her express admission during her deposition that, contrary to her allegations in the Complaint, she never made *any* complaint against Weishaupt prior to July 29, 2014. (*Compare* Pl Tr. 259, 262 *with* Compl. ¶ 83).

planning to conduct the Layoff in May 2014, well *before* these July 29, 2014 conversations took place. (Byrne Decl. ¶ 19).[12]

###### A. Agostini Cannot Show That She Would Not Have Been Bumped and Laid Off But For Retaliation or That the Bumping Was Pretextual

Even if Agostini could establish a *prima facie* case of retaliation under the ADA and NYCHRL, which she cannot, EmblemHealth has clearly "articulate[d] some legitimate, non-retaliatory reason for the [challenged] employment action." *Kwan*, 737 F.3d at 845 (citation omitted). As set forth above, EmblemHealth - working in close consultation with Agostini's Union representatives – allowed eligible laid off employees to exercise their "bumping" rights, which resulted in Agostini (as well as two other Sorters) being "bumped" from her position in accordance with the terms and provisions of the CBA. Summary judgment is warranted under such circumstances. *See Cherry*, 2013 U.S. Dist. LEXIS 84040, at *30-31 (dismissing plaintiff's retaliation claim where defendant had demonstrated that certain positions were eliminated pursuant to a reduction in force pursuant to a CBA); *see also Smith v. UAW-GM Legal Servs. Plan*, No. 01-9128, 2002 U.S. App. LEXIS 26175, at *4 (2d Cir. Oct. 4, 2002) (granting summary judgment where defendant demonstrated that plaintiff was laid off in accordance with the applicable CBA).

Agostini cannot survive summary judgment as she cannot demonstrate that EmblemHealth's articulated legitimate reason for her termination is pretextual and that she would not have been bumped and laid off "but-for" a retaliatory motive. *Kwan*, 737 F.3d at 845-46 (footnote omitted); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 388, 133 S. Ct. 2517,

---

[12] *See Brown v. Northrop Grumman Corp.*, No. 12 Civ. 1488, 2014 U.S. Dist. LEXIS 116188, at *35 (E.D.N.Y. Aug. 19, 2014) (granting summary judgment when the decision to lay off the plaintiff was made prior to her engaging in any protected activity) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

2532-33 (2013).[13] Agostini bases her retaliation claims almost entirely on the temporal proximity between her communications with Weishaupt and Butler, and the bumping which she was told about on September 11, 2014. (Pl. Tr. 251, 263). It is well established that temporal proximity alone is simply insufficient as a matter of law to establish pretext. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *Slattery*, 248 F.3d at 95. As discussed above, Agostini was not identified to be included in the Layoff - which the Company started to plan in May of 2014. No reasonable juror could conclude that EmblemHealth could have intended (much less anticipated) that implementing a 45-person Layoff in *different departments* would set off a chain reaction resulting in Agostini's bumping by another employee. (Byrne Decl. ¶¶ 19-30).

Further, Agostini cannot establish pretext by merely disagreeing with the results of the bumping procedures, as applied by the Company and the Union. As discussed above, Agostini was treated the same as similarly-situated employees in that she was one of the three UDC Sorters with the least amount of seniority who were bumped. *See Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 Civ. 5109, 2007 U.S. Dist. LEXIS 28274, at *38 (S.D.N.Y. Apr. 18, 2007) (finding plaintiff "ha[d] not raised an inference of retaliatory animus because she could not demonstrate that she was treated differently from other similarly-situated employees.") (citation omitted); *see also Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (courts need not determine "whether employment decisions are prudent or fair."). Nor can Agostini point to any remark or comment showing retaliatory animus. Neither the purported comment by Byrne at the bumping meeting, nor the alleged statement by Weishaupt (who was not involved in the

---

[13]   Although the "but-for" causation standard does not apply to Agostini's NYCHRL retaliation claim, Agostini "must still establish that there was a causal connection between her protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for her termination was pretextual or motivated at least in part by an impermissible motive." *Pena-Barrero v. City of New York*, 2017 U.S. Dist. LEXIS 47983, at *52 (S.D.N.Y. Mar. 30, 2017) (internal quotation marks and citation omitted).  Even under this standard, Agostini has still failed to point to any evidence that would create a genuine factual issue concerning pretext, as described above.

bumping decisions) on July 29, 2014, that he didn't need to accommodate her, show retaliatory animus or are sufficient to demonstrate pretext. *See Alexander v. Bd. of Educ.*, 107 F. Supp. 3d 323, 330 (S.D.N.Y. 2015) ("[I]solated and stray remarks, without more, are insufficient to raise an inference of retaliation."), *aff'd*, 648 F. App'x 118 (2d Cir. 2016) (citation omitted). This is especially true given Agostini's testimony that she had received multiple accommodations over the years, the Company prohibits retaliation, she was told by Byrne in the past that retaliation is prohibited and was told that both Byrne and Weishaupt had open door policies for complaints. (Pl. Tr. 93, 96-97). Accordingly, Agostini's ADA and NYCHRL retaliation claim should be dismissed.

## V.   **AGOSTINI'S FMLA RETALIATION CLAIMS MUST BE DISMISSED**

Agostini's claim that she was bumped or otherwise retaliated against because of her FMLA leave, which she had applied for in January and February 2014 through EmblemHealth's third-party administer, is unsupported by any record evidence and must be dismissed.[14]

### A.   **Agostini Cannot Establish a *Prima Facie* Case of FMLA Retaliation**

To establish a *prima facie* case of FMLA retaliation, Agostini must demonstrate that: (1) she exercised rights protected under the FMLA, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under

---

[14]Agostini also vaguely asserts she was "subject to harassment and a hostile work environment" for taking FMLA leave. (Compl. ¶ 136). This claim appears to be primarily based on unsupported allegations all outside of the statute of limitations. The statute of limitations bars claims based on acts prior to September 12, 2014. *See Yetman v. Capital Dist. Transp. Auth.*, 669 F. App'x 594, 595 (2d Cir. 2016) (applying two year statute of limitations). It appears that any harassment claim would be based on purported actions in 2010 and 2012 or her work assignments and communications with management and Labor Relations on July 29, 2014 – all of which would be barred by the statute of limitations. (*See* Compl. ¶ 32, 36, 137). Even if the July 29 2014 allegations were somehow considered, there is nothing to connect her assignments, interaction with Weishaupt, or any other communication to any FMLA leave, and as such they are insufficient, standing alone, to constitute adverse employment actions. *See Peterson v. Long Island R.R. Co.*, No. 10 Civ. 480, 2012 U.S. Dist. LEXIS 85054, at *18-24 (E.D.N.Y. June 19, 2012) (granting summary judgment and dismissing FMLA retaliation claim when evidence of a plaintiff's "isolated argument" with a supervisor was insufficient to establish that plaintiff suffered harassment rising to the level of an adverse employment action under the FMLA). Further, as set forth below (Point VI), Agostini would be unable to meet governing standards for a hostile work environment claim.

18

circumstances giving rise to an inference of retaliation. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Agostini has no evidence reflecting circumstances giving rise to an inference of retaliation or a causal connection between her bumping and layoff in September 2014 and her January 2014 application for intermittent FMLA leave for mental health conditions or her February 2014 application for intermittent FMLA leave for rheumatoid arthritis. The length of time between the alleged acts and Agostini being bumped out of her position undercuts any inference of retaliation. *See Alexander*, 648 F. App'x at 121.

### B. Agostini Cannot Show That Her Bumping Pursuant to the CBA Was Pretextual for FMLA Retaliation

Even assuming, *arguendo*, that Agostini could establish a *prima facie* case of FMLA retaliation, which she cannot, EmblemHealth has proffered evidence of a legitimate, non-retaliatory reason for her layoff: as a result of a Company-wide Layoff, Agostini was bumped out of her position in accordance with the layoff and bumping procedures set forth in the CBA. *See Brown*, 2014 U.S. Dist. LEXIS 116188, at *40 (granting summary judgment dismissing FMLA retaliation claim). Because EmblemHealth presents a non-retaliatory reason for Agostini's termination, the burden would shift back to Agostini to point to record evidence that would permit a reasonable jury to conclude that EmblemHealth's articulated reason is pretextual.[15] *Hockenjos v. Metro. Transp. Auth.*, No. 14 Civ. 1679, 2016 U.S. Dist. LEXIS 65341, at *33-34 (S.D.N.Y. May 18, 2016), *aff'd*, 695 F. App'x 15 (2d Cir. 2017). Agostini has no evidence of pretext. The record shows that EmblemHealth had no issues with her taking FMLA leave. In fact, Agostini applied for, and was permitted to take, FMLA leaves repeatedly throughout her employment at EmblemHealth, each time returning to the same job with the same title, the same

---

[15] As discussed above, Agostini cannot rely on either as an "adverse action" or as evidence of pretext based on her time-barred unsupported allegation in the Complaint that in 2010 EmblemHealth attempted to "wrongfully discipline" her upon her return from prior FMLA leave. (*See* Point III.C, *supra*).

responsibilities and the same compensation. (Pl. Tr. 65-66). *See Hockenjos*, 2016 U.S. Dist. LEXIS 65341, at *36-37 ("Defendant's willingness to allow plaintiff to take FMLA leave prior to his termination also leaves little room to infer that the temporal proximity of plaintiff's termination to his FMLA leave support his retaliation claim.") (citation omitted); *Kim v. Goldberg*, 862 F. Supp. 2d 311, 319 (S.D.N.Y. 2012). Indeed, Agostini's most recent FMLA leaves had been sought by her in January and February 2014 – *eight to nine months prior to the bumping*. In any case, Agostini cannot show pretext simply by relying on alleged temporal proximity between her FMLA leave(s) and her layoff. *See Brown*, 2014 U.S. Dist LEXIS 116188, at *44 (finding temporal proximity alone did not create a triable issue of fact as to pretext on an FMLA retaliation claim); *see also Alejandro v. N.Y. City Dep't of Educ.*, No. 15 CV 3346, 2017 U.S. Dist LEXIS 49555, at *76 n.8 (S.D.N.Y. Mar. 31, 2017 (same). As such, Agostini's FMLA retaliation claim should be dismissed.

## VI.   AGOSTINI'S HOSTILE WORK ENVIRONMENT CLAIMS FAIL AS A MATTER OF LAW

To the extent that Agostini is vaguely asserting hostile work environment claims under the ADA and NYCHRL, the claims fail because they are time-barred, do not meet the governing standards, allege activity that could not, in any event, be imputed to the Company and Agostini did not exhaust her statutory remedies.[16] Plaintiff's allegations of hostile work environment are concentrated in unsupported discrete allegations dating back to 2009-2012 – outside of applicable limitations periods. (*See* Point III.C, *supra*). Her other allegations revolve around July 29, 2014 work assignments (she had to perform misdirect work standing at the copier and she believes that another employee thereafter did not have to copy when performing misdirect work

---

[16] To the extent that Agostini asserts hostile work environment claims against any Defendant based on alleged conduct in 2009 and 2010, for the reasons discussed in Point III.C, such claims would also be barred by the election of remedies.  Similarly, Agostini cannot maintain a harassment claim under the ADA where she did not exhaust her administrative remedies by asserting harassment based on any grounds in her EEOC charge. 42 U.S.C. § 2000e-5(b).

(Pl. Tr. 283-286)) and discussions (when she spoke to Weishaupt and told him she had pain, he allegedly stated that "I don't need to accommodate you" (Pl. Tr. 147), and requests for clarification of her subsequent related accommodation request. (Pl. Tr. 100-101). Finally, her remaining allegations are that Supervisor Jane Charles "slap[ped]" work on her desk" from 2009 through 2014 (Pl. Tr. 278, 280-281) and a general speculation that the Company was plotting to terminate her (Pl. Tr. 263). Giving Agostini every benefit of the doubt, there is only one alleged timely comment by Weishaupt on July 29 concerning accommodations that even arguably relates to her medical condition or an accommodation request.

### A. Agostini Cannot Demonstrate She Was Subjected to Severe or Pervasive Conduct Under the ADA and FMLA

As an initial matter, Agostini's attempt to bootstrap a hostile work environment claim onto her discrimination and retaliation claims under the ADA[17] and FMLA is entirely improper. (*See, e.g.,* Compl. ¶ 114, 136, 140 in which Agostini inserts the phrase "hostile work environment" in the midst of her discrimination and retaliation causes of action).[18] Separately, Agostini's hostile work environment claims under these statutes cannot survive summary judgment because she cannot demonstrate that her workplace "was 'permeated with discriminatory intimidation' that was sufficiently severe or pervasive to alter the conditions of her work environment." *Durant v. NYNEX*, 101 F. Supp. 2d 227, 234 (S.D.N.Y. 2000) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)); *Ben-Levy v. Bloomberg*, 518 F. App'x 17, 18-19 (2d Cir. 2013), *aff'g*, No. 11 Civ. 1554 (KBF), 2012 U.S.

---

[17] The Second Circuit has not determined whether a hostile work environment claim is cognizable under the ADA. *Murray v. Cerebral Palsy Ass'n*, No. 16 cv 662, 2017 U.S. Dist. LEXIS 213553, at *25 (S.D.N.Y. Jan. 2, 2018). Even assuming that Agostini could assert such a claim, it would fail for the reasons discussed herein.

[18] *Ben-Levy v. Bloomberg L.P.*, No. 11 Civ. 1554 (KBF), 2012 U.S. Dist. LEXIS 90292, at *34 (S.D.N.Y. June 26, 2012) (holding that plaintiff's attempts to take "his discrete claims of discrimination and retaliation, string them together and call that a 'hostile work environment'" is "not sufficient" to set forth a valid cause of action), *aff'd*, 518 F. App'x 17 (2d Cir. 2013).

Dist. LEXIS 90292 (S.D.N.Y. June 26, 2012) (affirming dismissal of ADA and FMLA hostile work environment claims). In analyzing whether there was an "objectively hostile or abusive work environment," courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Harris v. Forklift Sys.,* 510 U.S.17, 21, 23 (1993).

With respect to the frequency of the alleged conduct, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano,* 294 F.3d at 374 (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997)). Putting aside the random time-barred allegations, Agostini's claims are at best episodic as they primarily occurred on or about July 29, 2014, relating to that day's assignments, communications and the related communications concerning her accommodation. Agostini's focus on the events of a single day, July 29, 2014, in terms of her assignment and interaction with Weishaupt, further undermines the viability of her hostile work environment claims. (Pl. Tr. 135, 147).[19] *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 U.S. Dist. LEXIS 125887, at *30-32 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016). Moreover, Agostini's claims regarding her July 29 job assignment being "unfair" would be a "workplace grievance," which would not constitute an objectively severe work environment. *See Edwards v. N.Y. State Unified Court Sys.*, No. 12 Civ. 46, 2012 U.S. Dist. LEXIS 172207, at *15-16 (S.D.N.Y. Nov. 20, 2012).

Notably, Agostini does not allege to have endured any of the types of conduct that are typically considered to be objectively and/or subjectively severe, such as offensive jokes, ridicule or physical intimidation of any kind. The only act that Agostini claims happened more than once

---

[19] At her deposition, Agostini conceded that she began doing misdirect work sometime in July 2014, and possibly earlier, and that she was unaware of whether other employees received misdirect assignments. (Pl. Tr. 133, 136, 140, 191; *compare to* Compl. ¶¶ 47-60).

was that one supervisor slammed work on her desk, an allegation that has nothing to do with a disability, FMLA or protected activity, and cannot support a hostile work environment claim. *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 446, 451 (E.D.N.Y. 2013) (under both federal and city law, a plaintiff must establish that she suffered a hostile work environment "because of" her protected characteristic). Overall, because Agostini cannot establish that she endured severe or pervasive conduct sufficient to create an objectively hostile work environment, her ADA and FMLA hostile work environment claims must be dismissed.

### B. The NYCHRL Harassment Claim Fails Because the Alleged Conduct Amounts to No More than Petty Slights and Trivial Inconveniences

Even under the NYCHRL, Agostini must establish that she "has been treated less well than other employees because of her [protected characteristic]." *Williams v. NewYork City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009). The NYCHRL is not a "'general civility code,'" and does not impose liability when defendant can show that the alleged conduct amounted to no more than "'petty slights and trivial inconvenience.'"[20] As Agostini's baseless allegations constitute, at most, no more than petty slights and trivial inconveniences that bear no connection to her disability or accommodation requests, the NYCHRL hostile work environment claim should be dismissed.

### C. There is No Basis to Hold EmblemHealth Liable for the Alleged Hostile Work Environment Under the ADA

Nevertheless, even if the Court deems Plaintiff's allegations timely and sufficiently severe and pervasive, no basis exists to impute liability to EmblemHealth for the alleged hostile work environment. An employer may be presumed responsible where the alleged harasser is the plaintiff's supervisor and the harassment culminated in some tangible employment action. *See*

---

[20] *Williams*, 61 A.D.3d at 78-80 (citation omitted); *see also Short v. Deutsche Bank Sec., Inc.*, 79 A.D.3d 503, 505-506 (1st Dep't 2010) (dismissing NYCHRL hostile work environment claims).

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Here, although Weishaupt, as Head of Claims Support, was arguably Plaintiff's "supervisor" during the relevant period, Agostini cannot link her bumping and layoff to his (or any other supervisor's) allegedly harassing behavior. Moreover, Agostini did not complain about alleged harassment despite knowing of multiple avenues of complaint to do so. Indeed, on August 1, 2014, Agostini apparently made a hotline complaint anonymously complaining that male supervisors discussed terminating her. (Rasnick Aff., Ex. I). She did not, even in this anonymous complaint, assert harassment or use other known avenues to complaint. For these reasons, Agostini has failed, as a matter of law, to allege a hostile work environment claim under the ADA.

## VII.   AGOSTINI'S FMLA AND NYCHRL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL AS A MATTER OF LAW

Agostini cannot maintain a claim against Weishaupt, Frandsen, or Byrne (the "Individual Defendants") under the governing law pursuant to the FMLA and the NYCHRL. Under the NYCHRL, Agostini would need to demonstrate that the Individual Defendants "participate[d] in the conduct giving rise to [her] discrimination [or retaliation] claim."[21] Pursuant to the FMLA, Agostini would need to establish that the Individual Defendants were all "employers" pursuant to the Second Circuit's "economic reality" test, which considers whether the individual: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules

---

[21] *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation marks omitted); *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (dismissing plaintiff's NYCHRL claims where plaintiff offered nothing but "bare speculation" to link defendants' "behavior to a discriminatory (or retaliatory) motive or intent."). Because Agostini has "failed to raise a genuine factual dispute with respect to the defendants' discriminatory [or retaliatory] intent..." any claim of aiding and abetting under the NYCHRL must be also dismissed. *See Benson v. Otis Elevator Co.*, 557 F. App'x 74, 77 (2d Cir. 2014); *Peda v. New York Univ. Hosps. Ctr.*, No. 12 Civ. 0586 (PAC), 2014 U.S. Dist. LEXIS 35261, at *31 (S.D.N.Y. Mar. 17, 2014) ("A finding of some underlying discriminatory or retaliatory conduct by a principal/employer is essential to establishing liability for aiding and abetting...") (citations omitted). In addition, even if Agostini could establish that Byrne, Weishaupt or Frandsen engaged in discriminatory or retaliatory conduct against her, which she cannot, they cannot be liable as "aiders or abetters" because one cannot "aid or abet" his own conduct. *Raneri v. McCarey*, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010) ("An individual cannot aid and abet his own alleged discriminatory conduct.") (citation omitted).

or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (citation omitted). The established facts show that Agostini has no claim for individual liability, either under the NYCHRL or as an "employer" under the FMLA. As an initial matter, Agostini does not even allege sufficient facts to establish FMLA individual liability and the facts establish there is none. None of the three Individual Defendants controlled Agostini's work schedule or rate and method of pay, or could simply terminate her, as such matters were purely dictated by the CBA. Indeed, other established facts further show no basis for liability:

- **Frandsen:** Agostini does not allege that she had *any* interactions with Frandsen and at most speculates that he directed someone else assign her to perform misdirects and other work on July 29, 2014 in retaliation for the 2010 NYSDHR Complaint in which she complained that his wife got a position over her. Frandsen denies assigning her the work or that he even supervised her department (UDC) at the time. Her other assertion that he retaliated against her for complaining about misdirect mistakes in the department is also insufficient. (Pl. Tr. 154, 263, 347-348, Frandsen Tr. 42-43, 195).

- **Weishaupt:** Agostini concedes that she did not speak to him and rarely saw him in between 2010 and 2014 when he told her he had an open door for her, and the only timely interaction that she refers to occurred on July 29, 2014 (Pl. Tr. 93, 96-98, 164). At most, Agostini claims that Weishaupt and Frandsen harbored a "vendetta" against her because she "knew too much" about mistakes being made in the department (Pl. Tr. 263, 347), which – even if true – does not constitute actionable disability discrimination or retaliation.

- **Byrne:** Agostini testified that Byrne had told her the Company prohibited retaliation and she could come speak to him about any issues. (Pl. Tr. 93). Her main allegation against Byrne is that he commented she could not perform the Housekeeping job which, as Point III.A.1 sets forth above, is an allegation not supported by the record and, in any case, insufficient to show any improper conduct.

Agostini cannot point to any facts that would demonstrate that Byrne, Frandsen or Weishaupt actually participated in any actionable discrimination or retaliation and any claim to the contrary would be nothing more than "speculation and conjecture." *Nieblas-Love*, 165 F. Supp. 3d at 68. Accordingly, Agostini's disability discrimination and retaliation claims against the Individual Defendants should be dismissed in their entirety.

Dated: New York, New York
       February 9, 2018

EPSTEIN BECKER & GREEN, P.C.

By: _____
       Lauri F. Rasnick
       Shira M. Blank
       250 Park Avenue
       New York, New York 10177
       Tel: (212) 351-4500
       Fax: (212) 878-8600
       *Attorneys for Defendants*