UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
ADRIANA AGOSTINI,                      :
                                       :
                    Plaintiff,         :
        -v-                            :        16cv7119(DLC)
                                       :
EMBLEMHEALTH, INC., ALAN WEISHAUPT,    :        OPINION & ORDER
JONATHAN FRANDSEN and DANIEL BYRNE,    :
Individually and As Employers,         :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES

For the plaintiff:
Mark H. Bierman
Bierman & Associates
17 Battery Place, Suite 204
New York, New York 10004

For the defendants:
Lauri F. Rasnick
Shira M. Blank
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177

DENISE COTE, District Judge:

    Plaintiff Adriana Agostini was formerly employed by

defendant EmblemHealth, Inc. ("Emblem").  Agostini alleges that

Emblem and three of its employees, Alan Weishaupt, Jonathan

Frandsen, and Daniel Byrne (together, the "Individual

Defendants"), violated her rights under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Family

and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and

the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.  The defendants have moved for summary judgment on all of Agostini's claims under Rule 56, Fed. R. Civ. P.  Agostini has cross-moved for summary judgment as to seven of defendants' affirmative defenses.  For the reasons that follow, the defendants' motion is granted.

## Background

The following facts are taken from the parties' evidentiary submissions.  Except where specifically noted, they are undisputed.

In brief, Agostini's employment was terminated in September 2014 during a round of layoffs at Emblem.  Agostini was working at that time as an imaging clerk.  The collective bargaining agreement ("CBA") between Emblem and Agostini's union required Emblem to "bump" Agostini from her job to give the position to a union employee with more seniority.  Agostini has largely abandoned her claim regarding Emblem's action in bumping her out of her imaging clerk position.  She continues to assert, however, that Emblem acted wrongfully in not allowing her to continue her employment with Emblem by "bumping" an employee working as a housekeeper.  She also asserts that she was wrongfully required, on July 29, 2014, to work standing at a copier for several hours when her physical impairments made it

difficult for her to stand for over thirty minutes.

I. Employment History

Agostini was employed by Emblem and a predecessor entity from October 1998 through September 11, 2014. Agostini first worked as a housekeeper from October 1998 until sometime in 2002. In 2008, Agostini began working in Emblem's utilization and document control ("UDC") department, where she was employed until the time of her discharge in September 2014.

At the time Agostini was discharged, her job title was imaging clerk. She opened and sorted incoming mail. Agostini would identify the type of claim, make copies of certain documents, create batches of claims, and prepare cover sheets for the claim. The sorted mail was then collected by another employee and taken to the employees responsible for scanning the documents.

When a UDC employee processed mail and routed it to an incorrect department within Emblem, that department would send the mail back to UDC. A UDC supervisor would assign a UDC employee to make copies of the cover page and direct the mail to the correct department at Emblem. This was called "misdirect" work.

During Agostini's tenure at Emblem, she experienced several chronic health conditions that caused her to take leaves of absence. These conditions consisted mainly of back pain, from

which Agostini suffered in the mid-2000s, depression and anxiety, with which Agostini was diagnosed in 2010, rheumatoid arthritis, with which Agostini was diagnosed in January 2014, and neuroma, a condition affecting her left foot, which developed in 2014. Agostini took intermittent FMLA leave for her depression and anxiety from 2009 through the end of her employment at Emblem. And after she was diagnosed in January 2014 with rheumatoid arthritis, Agostini was approved for and took intermittent FMLA leave for that condition.

II. The Events of July 29, 2014, and Their Aftermath

On July 29, 2014, Agostini was assigned to do misdirect work for approximately three hours. Agostini was given the misdirect assignment by defendant Frandsen, who was then a manager of claims support. Because she had been required to stand at the copier for three hours, Agostini experienced significant pain in her legs and arms.

After Agostini finished the misdirect work, she began sorting claims. After about an hour, one of her supervisors told her that Frandsen had directed Agostini to unpack around eight boxes of claims. Because Agostini was in pain from the misdirect work she had performed that morning, she told her supervisor that she could not work on the boxes. The supervisor insisted that Frandsen "want[ed] [Agostini] to do this."

Instead, Agostini went to the office of defendant

Weishaupt, the Director of Claims Support at Emblem.  Agostini
informed Weishaupt that she was in "severe pain" due to her
rheumatoid arthritis and the three hours of misdirect work.  She
asked him for an accommodation, specifically "to sit at [her]
desk and do the trays that [she] would normally do."  The
parties dispute what happened next.  Agostini claims that
Weishaupt replied, "I don't need to accommodate you.  This is my
department."  Weishaupt claims that he informed Agostini that
she should speak to Emblem's labor relations department to
discuss accommodations.

After this conversation with Weishaupt, Agostini walked to
Emblem's human resources department.  By the time she arrived,
Agostini was experiencing an anxiety attack.  Agostini said that
she wished to resume her usual work and that she believed she
was being treated unfairly.  Agostini was placed in a conference
room so she could call her therapist; after making that call,
Agostini went home.  Agostini took the following two days off
work and returned on August 1.

After she returned to work on August 1, Agostini submitted
several accommodation request forms to Emblem.  The first, dated
July 31, notes that Agostini receives treatment for depression
and anxiety, and requests to "work in an environment that is
calm and respectful" and be "treated fairly during daily work
assignments."  On August 11, Agostini met with a human resources

employee and a Union shop steward regarding this request. Agostini then filled out a second accommodation request form that stated that Agostini "should not stand for longer than 15-30 minutes at a time." The Emblem accommodation request form includes the following statement: "I understand that I am responsible for submitting medical documentation to support my accommodation request." Agostini's form had no endorsement from a health care provider. An Emblem employee then requested that Agostini resubmit the form with a doctor's signature. Agostini resubmitted the form with an "Innovative Foot Care" stamp.

Agostini was then told by an Emblem employee that she would need a letter from the doctor treating her for her rheumatoid arthritis. Agostini submitted a letter from Dr. Peter Gorevic dated August 20, 2014. This letter states that Agostini "experiences inflammation all thr[ough] her body" due to her rheumatoid arthritis, and that "she has swelling of hands and feet." The letter includes Dr. Gorevic's "recommendation that [Agostini] should not stand for more than 30 minutes at a time," and further states that Agostini should be "accommodated with a chair" if "there is a need for her to stand for more than 30 minutes." Agostini was not required to stand at a copier after July 29.

III. The Layoff and Subsequent Events

In May 2014, Emblem began planning to lay off around 45

employees.  Agostini was a member of the Office and Professional
Employees International Union, Local 153 (the "Union").  Union
employment was governed by a CBA, which requires that certain
disputes be resolved through a grievance and arbitration
procedure.

The CBA also provides as follows:

> [a]ny employee with six (6) months active service
> shall, in lieu of a layoff, have <u>the right to bump
> another</u> employee in the same or a lower classification
> <u>with less company-wide seniority</u>, provided such
> employee accepts such job within two (2) work days,
> and has satisfactorily performed in the past the
> duties of the new assignment, or has the qualification
> for and can satisfactorily perform such duties.

(Emphasis supplied.)  Because the CBA allows an employee subject
to a layoff to take the place of a less-senior employee whose
job the more-senior employee can perform without additional
training, Emblem's management and Union stewards prepared a list
of employees who could be bumped out of their positions.  On the
final list of employees who could be bumped, Agostini was one of
the three least-senior sorter employees.

On September 11, 2014, a meeting was held with Agostini,
Byrne, members of Emblem's human resources department, and Union
representatives (the "September 11 Meeting").  Agostini was
informed that she was being bumped out of her imaging clerk
position by an employee with more seniority than her, who would
otherwise have been laid off.

The parties dispute what happened next.  Agostini claims
that she asked whether she could bump a different employee out
of their position.  She says that Byrne replied that she could
"bump into housekeeping," that she asked when she could start,
and that Byrne stated "[b]ut due to your medical condition, you
can't do the job."

Byrne, in contrast, claims that he explained "the
housekeeping position [w]as a viable bump" for Agostini.  He
also claims that he explained to her that she had two business
days, until September 15, 2014, to inform Emblem whether she
would accept the housekeeping position.

The parties agree that, after the exchange between Byrne
and Agostini about the housekeeping position, Agostini abruptly
left the meeting.  Agostini did not contact Emblem to accept the
bump.  She was laid off and paid a severance payment.

Agostini applied for supplemental security insurance
("SSI") and social security disability insurance ("SSDI")
benefits in November 2015.  Each application states that
Agostini became disabled on December 12, 2014, three months
after her discharge from Emblem.  Agostini's SSDI application
states that she is "unable to work because of [her] disabling
condition."  A function report completed by Agostini December 2,
2015, in support of her SSDI application, contains additional
information.  In response to a question about "[w]hat [Agostini

was] able to do before [her] illnesses, injuries, or conditions
that [she] cannot do now," Agostini wrote:  "stand for a long
period of time, carry heavy object[s] more than 10 pd. or sit
for a long period[] of time."

## Procedural History

Agostini filed a charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC") on July 20, 2015 (the
"EEOC Charge"), which was about ten months after Emblem
terminated her employment.[1]  The EEOC Charge described Agostini's
employment with Emblem, her health conditions and history of
taking FMLA leave, the events of July 29, 2014, and the
September 11 Meeting.  The EEOC Charge contended that these
events constituted disability discrimination in violation of the
ADA.  The EEOC issued a right to sue letter on June 17, 2016.

Agostini filed this lawsuit on September 12, 2016.
Following the close of discovery, defendants and plaintiff each
filed a motion for summary judgment on February 9, 2018.
Plaintiff's motion became fully submitted on March 23 and was

---

[1] Agostini had previously filed charges of discrimination with
the New York State Division of Human Rights ("NYSDHR") in 2009
and 2010.  Each time, the NYSDHR made a finding that there was
no probable cause to support Agostini's claims of employment
discrimination.  Because these charges are well outside the
applicable statutes of limitation, they are not further
discussed.

addressed to certain affirmative defenses pleaded by the defendants. Because of the resolution of the defendants' motion, there is no need to address the plaintiff's motion. Defendants' motion became fully submitted on March 27.

In support of their motion for summary judgment, defendants filed on March 9 a statement of undisputed fact pursuant to Local Rule 56.1. Plaintiff's response to this statement, filed on March 13, admitted or denied the statements of fact in defendants' statement, and included an additional 700 fact statements presented as a statement of additional facts. Defendants moved on March 14 to strike plaintiff's statement of additional fact, which was granted on March 19.

Plaintiff then moved on March 30 to strike a point made in defendants' reply brief, or for permission to file a response to the defendants' Rule 56.1 response filed with their reply papers. Defendants opposed this request on April 2. This request and the defendants' March 27 request to strike plaintiff's Rule 56.1 reply are denied because the motions for summary judgment are resolved solely with reference to the parties' evidentiary submissions.

## Discussion

"Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Jaffer v. Hirji, 887
F.3d 111, 114 (2d Cir. 2018) (citation omitted). "A genuine
issue of material fact exists if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107,
113 (2d Cir. 2017) (citation omitted).

> Where, as here, the burden of persuasion at trial
> would be on the non-moving party the party moving for
> summary judgment may satisfy his burden of production
> under Rule 56 in either of two ways: (1) by
> submitting evidence that negates an essential element
> of the non-moving party's claim, or (2) by
> demonstrating that the non-moving party's evidence is
> insufficient to establish an essential element of the
> non-moving party's claim.

Id. at 114 (citation omitted).

> When a motion for summary judgment is properly
> supported by documents or other evidentiary materials,
> the party opposing summary judgment may not merely
> rest on the allegations or denials of his pleading;
> rather his response, by affidavits or otherwise as
> provided in the Rule, must set forth specific facts
> demonstrating that there is a genuine issue for trial.

Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation
omitted).

I. Exhaustion of Contractual Remedies and Arbitration

Defendants contend that Agostini may not pursue her claims
regarding her layoff because she failed to pursue contractual
remedies under the CBA. They contend that Agostini was required
to present her grievances to the Union and to pursue arbitration
under the terms of the CBA.

Unions may negotiate a waiver of the judicial forum for their members' statutory employment discrimination claims.  See 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 258-59 (2009).  A court will not, however, "infer from a general contractual provision that the parties intended to waive a statutorily protected right unless" the waiver is "clear and unmistakable." Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 80 (1998) (citation omitted).  An arbitration provision clearly and unmistakably waives a federal forum if it either "explicitly compel[s] arbitration of statutory (as opposed to contractual) causes of action" or "incorporate[s] specific antidiscrimination statutes."  Lawrence v. Sol G. Atlas Realty Co., 841 F.3d 81, 84 (2d Cir. 2016).

The CBA that governed Agostini's employment at Emblem does not satisfy either standard described in Lawrence.  The arbitration provision does not refer to any statutory antidiscrimination statute.  Since the CBA does not clearly and unmistakably require arbitration of statutory discrimination claims, Agostini is entitled to litigate those claims in federal court.[2]

II. Preemption of NYCHRL Claim

Defendants next argue that Agostini's NYCHRL discrimination

---

[2] The defendants do not pursue their exhaustion argument in their reply brief.

and retaliation claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because resolving the claims will require interpretation of the CBA.  "[S]tate-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements."  Allis-Chambers v. Lueck, 471 U.S. 202, 213 (1985).  "[T]he mere fact that a broad contractual protection against discriminatory -- or retaliatory -- discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state-law violation dependent upon the terms of the private contract."  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 412-13 (1988).  Instead, "it is the legal character of a claim, as independent of rights under the collective-bargaining agreement (and not whether a grievance arising from precisely the same set of facts could be pursued) that decides whether a state cause of action may go forward."  Livadas v. Bradshaw, 512 U.S. 107, 123-24 (1994) (citation omitted).

In opposition to this motion, the plaintiff concedes that a court must consult the CBA to resolve her claims, but denies that she is taking issue with any interpretation of the CBA proffered by the defendants or that she is challenging in any way the determination the defendants made of her or any other

employee's seniority.  With these clarifications, there is no preemption of the plaintiff's NYCHRL claims.  Although the application of bumping procedures is relevant to the plaintiff's claims, the question presented here is whether defendants discriminated or retaliated against her.  See Foy v. Pratt & Whitney Grp., 127 F.3d 229, 234 (2d Cir. 1997).

III. Disability Discrimination and Retaliation

Agostini claims that defendants violated the ADA and the NYCHRL when they terminated her employment in the course of (1) bumping her out of her UDC position and (2) denying her a bump into a housekeeping position.  The ADA claim will be addressed first.[3]

A. ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To prevail on an ADA

---

[3] Defendants are entitled to summary judgment on Agostini's failure to accommodate claim.  Agostini brought this claim under the ADA only.  It is premised on the assertion that the defendants failed to accommodate her requests not to be assigned work requiring her to stand.  This claim is time barred, being premised on acts occurring more than 300 days before her filing of her EEOC complaint, and fails on the merits as well.  In any event, after she complained that the standing work caused her pain, she was never again required to stand to perform her work as an imaging clerk.

disability discrimination claim, a

> plaintiff must show by a preponderance of the evidence
> that: (1) his employer is subject to the ADA; (2) he
> was disabled within the meaning of the ADA; (3) he was
> otherwise qualified to perform the essential functions
> of his job, with or without reasonable accommodation;
> and (4) he suffered adverse employment action because
> of his disability.

McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)

(citation omitted).

ADA discrimination claims are subject to burden shifting

under the framework established in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973).  Once a plaintiff makes a prima

facie case of disability discrimination in either of the ways

described above, a defendant may introduce "admissible evidence

[supporting] a legitimate non-discriminatory reason for the

discharge."  Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169

(2d Cir. 2006).  A plaintiff "must then produce evidence and

carry the burden of persuasion that the proffered reason is a

pretext."  Id.

The defendants have shown that they are entitled to summary

judgment on Agostini's ADA discrimination claim.  To the extent

it is premised on Agostini being bumped out of her UDC position

due to the application of the CBA's terms, she does not contest

that there was a reduction in workforce that triggered

application of the CBA, that her seniority and other employees'

seniority were properly assessed under the CBA, and that

pursuant to its terms she was properly bumped from that job.

The defendants' motion is also granted to the extent the plaintiff's wrongful termination claim is based on the denial of her right to bump into the housekeeping position.[4]  While there is a dispute of fact over whether Agostini failed to timely accept the housekeeping position or was denied the opportunity to accept it, that dispute will not require a trial.

The defendants have relied on Agostini's own statements to Emblem and to the government to show that Agostini could not have worked as a housekeeper.  Agostini's SSI and SSDI applications from 2015 indicate she was fully disabled as of December 2014, approximately three months after the termination of her employment.  Moreover, just weeks before the termination of her employment, Agostini had told Emblem that she could not stand for longer than 30 minutes.  Despite having performed the job of housekeeper for Emblem some 17 years earlier, Agostini has not presented evidence in opposition to the motion that she was qualified to perform the essential functions of the

---

[4] The plaintiff's affidavit argues that she had more seniority than employees in the UDC department and should have been allowed to bump into their jobs.  The defendants have submitted unrebutted evidence that the plaintiff would have needed additional training to perform these jobs as they existed in 2014.  Because of that additional training requirement, the CBA's bumping procedures did not permit Agostini to bump into those positions.  In her memorandum in opposition to this motion, the plaintiff argues only that she should have been given the opportunity to bump into the housekeeper job.

housekeeping position as of September 2014. Her opposition papers ignore the physical limitations she articulated to Emblem in 2014 and in the SSI and SSDI applications.

An ADA plaintiff who also files for SSDI benefits is "not automatically estop[ped] . . . from pursuing an ADA claim," but the plaintiff "must explain why th[e] SSDI contention [that she is too disabled to work] is consistent with her ADA claim that she could perform the essential functions of her previous job, at least with reasonable accommodation" in order to "survive a defendant's motion for summary judgment." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797-98 (1999) (citation omitted). Agostini has not demonstrated that her SSI and SSDI applications are consistent with her claim in this lawsuit that she should have been offered the opportunity to work as a housekeeper at any time between September and December 2014, or after December 2014. On this record, Agostini has therefore not explained how she could have worked as a housekeeper as of September 2014, and summary judgment is granted to the defendants on her ADA discrimination claim.[5]

_____

[5] Agostini's ADA retaliation claim is also premised on the defendants' termination of her employment. She appears to assert that she was fired on September 11, 2014 in retaliation for her objection on July 29 to being required to stand to perform her work, and her subsequent accommodation requests in early August. To make out a prima facie case of retaliation in violation of the ADA, a plaintiff must show "participation in a protected activity known to the defendant," "an employment

B. NYCHRL

Agostini also asserts that the termination of her employment constituted disability discrimination in violation of the NYCHRL.  NYCHRL claims must be assessed "separately and independently from any federal . . . law claims."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).  This is because the NYCHRL must be "construed liberally for the uniquely broad and remedial purposes thereof." N.Y.C. Admin. Code § 8-130.

The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a). To prevail on a NYCHRL disability discrimination claim, a plaintiff "need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her" disability.  Mihalik, 715 F.3d at 110 (citation omitted).  A plaintiff bringing an NYCHRL disability

---

action disadvantaging the plaintiff," and "a causal connection between the protected activity and the adverse employment action."  Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004) (citation omitted).  For the reasons just described, the defendants have shown with undisputed evidence that the termination of Agostini's employment was not caused by any protected activity in which she engaged.

discrimination claim need not prove that they were qualified for employment, with or without a reasonable accommodation.  See Jacobsen v. N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824, 834-35 (2014).  Instead, the NYCHRL "places the burden on the employer to show the unavailability of any safe and reasonable accommodation."  Id. at 835.

For the reasons recited above, the defendants have shown that they are entitled to summary judgment on the termination of employment claim to the extent it is based on Agostini being bumped out of her UDC job.  Agostini does not dispute that the loss of the UDC position was pursuant to the application of the terms of the CBA.

In addition, the defendants are entitled to summary judgment on the NYCHRL claim premised on the denial of an opportunity to bump into the housekeeper position because they have shown that there was no reasonable accommodation with which Agostini could have worked as a housekeeper.  As discussed above, the record indicates that Agostini could not stand for more than 30 minutes at a time in September 2014.  This evidence satisfies the defendants' burden of showing that no accommodation was available, and Agostini has failed to identify a genuine dispute of fact on this point.[6]

---

[6] Agostini also premises her NYCHRL retaliation claim on her selection to be bumped out of her UDC position and the denial of

IV. FMLA Retaliation

Agostini claims that she was retaliated against in two ways for taking intermittent FMLA leave throughout 2014.[7]  She asserts that she was given a burdensome work assignment on July 29, 2014[8] and then her employment was terminated altogether on September 11.

As with other statutes, FMLA retaliation claims are subject to McDonnell Douglas burden shifting.

> In order to make out a prima facie case, [a plaintiff] must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.

---

a bump into a housekeeper position.  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Mihalik, 715 F.3d at 112 (citation omitted).  As with her ADA claim, Agostini does not dispute that she was chosen to be bumped out of her UDC position by application of the CBA, and accordingly the defendants are entitled to summary judgment on this claim.  Also as above, Agostini's statements establish that she could not have worked as a housekeeper in September 2014.  There is therefore no basis to infer that the defendants denied her a bump into a housekeeping position due to her having engaged in protected activity.

[7] The plaintiff had taken intermittent leave before 2014 as well, but for purposes of this motion, her use of FMLA leave in 2014 is sufficient for the analysis.

[8] Agostini does not identify precisely what burdensome work assignment is encompassed by this claim, but it appears to be the three hours of standing at a copier on July 29, 2014.

Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004)
(per curiam). "If the plaintiff makes out a prima facie case,
the defendant must demonstrate a legitimate, non-discriminatory
reason for its actions; if the defendant does so, the plaintiff
must then show that defendant's proffered explanation is
pretextual." Graziadio v. Culinary Inst. of Am., 817 F.3d 415,
429 (2d Cir. 2016).

Defendants are entitled to summary judgment regarding the
July 29, 2014 work assignment. Agostini testified that she was
approved for intermittent FMLA leave in February 2014 for her
rheumatoid arthritis and was able to take days off throughout
2014. Assuming that the July 29 standing work assignment
constitutes an adverse employment action, she has not shown a
connection between protected FMLA activity in February 2014 and
a retaliatory employment action in July 2014. The temporal
connection between Agostini applying for FMLA leave in February
2014 and being given standing work in July 2014 is too
attenuated to give rise to an inference of discriminatory
intent. It is also undisputed that Agostini was not required to
stand at work after requesting that accommodation on July 29.

Defendants are also entitled to summary judgment on
Agostini's FMLA retaliation claim insofar as it is premised on
her being bumped out of her UDC position. As with Agostini's
other claims, she has not raised a question of fact regarding

defendants' nondiscriminatory rationale for her selection to be bumped out of the UDC department, namely that the defendants were complying with the terms of the CBA.

Finally, the defendants are entitled to summary judgment on Agostini's FMLA retaliation claim to the extent it is based on her being denied a bump into a housekeeping position. As with her ADA claims, Agostini has not presented evidence to permit a jury to find that she was qualified to work as a housekeeper in September 2014.

V. Hostile Work Environment

Agostini claims that she was subjected to a hostile work environment in violation of the ADA[9] and NYCHRL.[10] It appears that this claim is premised on the events of July 29, 2014 and the defendants' requests in early August 2014 for medical documentation to support Agostini's request that she not be required to stand for longer than 15-30 minutes at a time.[11]

---

[9] "Whether the ADA provides a basis for a hostile work environment claim has not yet been decided by the Second Circuit, although it has been recognized in other circuits." Dineley v. Coach, Inc., No. 16cv3197(DLC), 2017 WL 2963499, at *7 (S.D.N.Y. July 11, 2017). This Opinion does not resolve the issue because, assuming the viability of this theory of ADA liability, defendants are entitled to summary judgment.

[10] Agostini did not plead an FMLA hostile work environment claim.

[11] Agostini's affidavit and her memorandum in opposition to the defendants' motion characterize the incidents at issue in general terms without identifying them.

To prevail on a federal hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000) (citation omitted). "This severe or pervasive standard has objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 79 (2d Cir. 2010) (citation omitted).  The statute of limitations for her ADA hostile work environment claim is 300 days, placing events after August 12, 2014 within the limitations period.  See 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1).  Events outside the statute of limitations period may be considered, however, "so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 75 (citation omitted).

Defendants are entitled to summary judgment on this claim. The events of July 29, 2014 occurred beyond the 300-day statute of limitations.  A plaintiff may rely in part on events outside the statute of limitations, but the hostile work environment must persist into the limitations period to be actionable.  See

McGullam, 609 F.3d at 75.  Agostini has offered no evidence,
however, that she was asked to do any other work she considered
too physically demanding after July 29.

As for Emblem's request made on or about August 12 for a
doctor's statement to support Agostini's request to be
accommodated with sedentary work, this request is insufficient
to create a hostile work environment.  Emblem's accommodation
form states that an employee is responsible for "submitting
medical documentation to support [their] accommodation request."
Agostini has provided no evidence that she previously supplied
Emblem with any statement by a doctor or qualified medical
provider or any other medical documentation to support her
request for this particular workplace accommodation.  A document
containing a stamp from a medical office but no name or
signature is not adequate medical documentation.  Accordingly,
defendants are entitled to summary judgment on Agostini's ADA
hostile work environment claim.

NYCHRL hostile work environment claims do not turn on
whether conduct was severe or pervasive.  See Mihalik, 715 F.3d
at 114.  Instead, "summary judgment [is] available" on such
claims "where [defendants] can prove that the alleged
discriminatory conduct in question does not represent a
borderline situation but one that could only be reasonably
interpreted by a trier of fact as representing no more than

petty slights or trivial inconveniences." <u>Williams v. N.Y.C.</u>
<u>Housing Auth.</u>, 872 N.Y.S.2d 27, 41 (1st Dep't 2009) (citation
omitted). Defendants must show that the challenged behavior
"cannot be said to fall within the broad range of conduct that
falls between severe and pervasive on the one hand and a petty
slight or trivial inconvenience on the other." <u>Hernandez v.</u>
<u>Kaisman</u>, 957 N.Y.S.2d 53, 58-59 (App. Div. 1st Dep't 2012). The
statute of limitations for NYCHRL claims is three years. N.Y.C.
Admin. Code § 8-502(d). Accordingly, events that occurred after
September 12, 2013 are within the limitations period.

The defendants are entitled to summary judgment on
Agostini's NYCHRL hostile work environment claim. Agostini
identifies three events to support this claim: the standing
work assignment Agostini was given on July 29, 2014, her
conflict that day with Weishaupt, and Emblem's requests for
documentation to support her accommodation requests in early
August.[12] Regarding the events of July 29, Agostini has not
raised a question of fact as to whether her brief conversation
with Weishaupt was more than a petty slight. The record shows
that after her conversation with Weishaupt, Agostini approached
Butler and received the accommodation she requested, namely not

---

[12] Although Agostini vaguely refers in her papers to other
conflicts with her supervisors, she has not identified record
evidence of these conflicts or when they occurred.

to work standing up.  And, as noted above, Emblem's accommodation form states that employees are required to submit medical documentation.  It is not evidence of a hostile work environment that Emblem required Agostini to comply with that requirement.

## Conclusion

Defendants' February 9, 2018 motion for summary judgment is granted.  Agostini's motion for summary judgment is denied as moot.  The Clerk of Court shall enter judgment for the defendants and close the case.


Dated:    New York, New York
          July 9, 2018

                          _____
                                 DENISE COTE
                          United States District Judge